No. 15-55449

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

NML CAPITAL, LTD.,

*Plaintiff-Appellant*,

v.

SPACE EXPLORATION TECHNOLOGIES CORP., a.k.a. SPACEX, a Delaware corporation; THE REPUBLIC OF ARGENTINA, a foreign state, including its *COMISIÓN NACIONAL DE ACTIVIDADES ESPACIALES*, a.k.a. CONAE, a political subdivision of the Argentine State; and DOES 1-10,

*Defendants-Respondents*.

From the United States District Court,
Central District of California
Case No. 2:14-cv-02262-SVW-E
The Honorable Stephen V. Wilson

## APPELLANT'S MOTION TO EXPEDITE
## BRIEFING AND HEARING ON APPEAL

HAROLD A. BARZA
BRUCE E. VAN DALSEM
IAN S. SHELTON
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone: 213.443.3000
Facsimile: 213.443.3100

THEODORE B. OLSON
MATTHEW D. MCGILL
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone: 202.955.8500
Facsimile: 202.467.0539

STEVEN A. ENGEL
DECHERT LLP
1095 Avenue of the Americas
New York, New York 10036
Telephone: 212.698.3500
Facsimile: 212.698.3599

ALEXANDER K. MIRCHEFF
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213.229.7307
Facsimile: 213.229.6307

_____

*Attorneys for Plaintiff-Appellant NML Capital, Ltd.*

**CORPORATE DISCLOSURE STATEMENT**

Pursuant to Rule 7.1 of the Federal Rules of Civil Procedure and Rule 26.1 of the Federal Rules of Appellate Procedure, Plaintiff-Appellant NML Capital, Ltd. hereby states that there is neither a parent corporation to NML Capital, Ltd., nor is there a publicly traded corporation that owns ten percent or more of its stock.

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................1

FACTUAL BACKGROUND.................................................................................2

ARGUMENT .......................................................................................................7

CONCLUSION ..................................................................................................11

PROPOSED BRIEFING SCHEDULE................................................................11

CERTIFICATE OF COMPLIANCE...................................................................14

CERTIFICATE OF SERVICE ...........................................................................15

# TABLE OF AUTHORITIES

<u>Page(s)</u>

## Cases

*Af-Cap, Inc. v. Republic of Congo*,
475 F.3d 1080 (9th Cir. 2007).............................................................................10

*Doe v. Reed*,
586 F.3d 671 (9th Cir. 2009)...................................................................8

*Flagstaff Med. Ctr., Inc. v. Sullivan*,
962 F.2d 879 (9th Cir. 1992)...................................................................8

*Humane Soc'y of U.S. v. Gutierrez*,
523 F.3d 990 (9th Cir. 2008)...................................................................8

*Ministry of Defense & Support for the Armed Forces of the Islamic Republic of
Iran v. Cubic Defense Sys., Inc.*,
495 F.3d 1024 (9th Cir. 2007)...................................................................6

*NML Capital, Ltd. v. Republic of Argentina*,
699 F.3d 246 (2d Cir. 2012)...................................................................3

*NML Capital, Ltd. v. Republic of Argentina*,
727 F.3d 230 (2d Cir. 2013)...................................................................4

*Republic of Argentina v. NML Capital, Ltd.*,
134 S. Ct. 2250 (2014) ..................................................................1, 3

## Statutes

28 U.S.C. § 1603(a) ..................................................................5

28 U.S.C. § 1605(a) ..................................................................5

28 U.S.C. § 1867(a) ..................................................................8

## Rules

9th Cir. R. 27-12 ..................................................................7, 8

## TABLE OF AUTHORITIES
### (continued)

<u>Page(s)</u>

9th Cir. R. 34-3(5)..................................................................................8

Fed. R. App. P. 2..................................................................................7

Pursuant to 28 U.S.C. § 1657 and Circuit Rules 27-12 and 34-3, Plaintiff-Appellant NML Capital, Ltd. ("NML") hereby respectfully requests that this Court expedite the briefing and hearing date for this appeal.[1]

## INTRODUCTION

The Republic of Argentina ("Argentina") has adamantly refused to pay NML any portion of the over $1.7 billion in money judgments NML holds against Argentina. *See Republic of Argentina v. NML Capital, Ltd.*, 134 S. Ct. 2250, 2253 (2014). While Argentina has transferred many of its assets out of the United States to avoid its creditors, *id.* at 2258, it now holds valuable contractual rights in California as a party to launch services contracts (the "Launch Services Contracts") with Space Exploration Technologies Corp. ("SpaceX"): the rights to have SpaceX launch satellites for Argentina in September 2015 and in September 2016, and provide associated commercial launch services. The district court erroneously dismissed NML's action to attach Argentina's rights in the Launch Services

---

[1] Plaintiff-Appellant filed a Transcript Designation and Ordering Form in the district court on June 30, 2014. D.E. 35 (C.D. Cal. June 30, 2015). All of the transcripts on the Transcript Designation and Ordering Form were previously ordered during the course of the case, and all are e-filed on the district court's docket. *See* D.E. 41 (C.D. Cal. Aug. 19, 2014).

Pursuant to Ninth Circuit Rule 27-12, Plaintiff-Appellant has determined the position of opposing counsel on this motion to expedite briefing and hearing on appeal. Defendants declined to stipulate to the motion.

Contracts, and NML has now appealed. Because the launch dates are drawing near, NML respectfully requests an expedited appeal.

The facts here unquestionably satisfy the "good cause" standard for expedition embraced in this Court's Rule 27-12, and elsewhere. Under the default briefing schedule, briefing will not conclude until October 2015—*after* the launch of Argentina's first satellite in September 2015. And, even if any extended litigation before this Court would not moot NML's appeal outright, failure to expedite could frustrate NML's ability to market and sell Argentina's rights under the Launch Services Contracts, as it could require many months to locate and close a sale with a potential purchaser.

The district court judgment presents a pure question of law, and the record in this matter is not voluminous. Accordingly, NML respectfully requests that this Court hear the case on an expedited basis.

## FACTUAL BACKGROUND

NML has money judgments against Argentina, issued in the District Court for the Southern District of New York, totaling, with interest, more than $1.7 billion. Pl.'s Compl. for Creditor's Suit ¶¶ 1, 11-14, D.E. 1 (C.D. Cal. Mar. 25, 2014) ("Compl."). The judgments arise from Argentina's 2001 default on billions of dollars of bonds. *Id.* ¶ 1; Order Granting Defs.' Mot. to Dismiss at 2-3, D.E. 51 (C.D. Cal. Mar. 6, 2015) ("Order").

In issuing these bonds, Argentina expressly waived its immunity from suit. Order at 3 (citing Compl. ¶ 16). Specifically, in Section 22 of the 1994 Fiscal Agency Agreement ("FAA"), which governs the bonds on which NML's judgments are based (the "FAA Bonds"), Argentina "irrevocably waive[d] and agree[d] not to plead any immunity from the jurisdiction of any [] court to which it might otherwise be entitled" in connection with any action to enforce a judgment based on the FAA Bonds. Compl. ¶ 16 (alterations in original; internal quotation marks omitted). That waiver applies to this action. In the FAA, Argentina also waived any immunity that might otherwise apply to its "revenues, assets or properties" in an action to enforce a judgment against it. *Id.* (internal quotation marks omitted).

Since Argentina defaulted on the FAA Bonds, it has refused to pay creditors' judgments, including NML's. Compl. ¶ 2. Instead, Argentina spirited its assets out of the United States to frustrate creditors' efforts to collect on these judgments. *Republic of Argentina*, 134 S. Ct. at 2258; *see also* Compl. ¶ 2. As the Second Circuit recently noted in two opinions in favor of NML, "Argentina will simply refuse to pay any judgments," *NML Capital, Ltd. v. Republic of Argentina*, 699 F.3d 246, 262 (2d Cir. 2012), *cert. denied*, 134 S. Ct. 201 (2013), and "Argentina's officials have publicly and repeatedly announced their intention to defy any rulings of this Court and the district court with which they disagree," *NML Capital, Ltd. v.*

3

*Republic of Argentina*, 727 F.3d 230, 238 (2d Cir. 2013), *cert. denied*, 134 S. Ct. 2819 (2014).

* * *

To satisfy its judgments, NML seeks Argentine property used for commercial activity in the United States. It found such property in the Central District of California. Through its National Space Activities Commission, or "CONAE" (which stands for *Comisión Nacional de Actividades Espaciales*), Argentina acquired contractual rights to launch at least two satellites aboard SpaceX Falcon 9 launch vehicles from SpaceX's launch facility at California's Vandenberg Air Force Base in September 2015 and September 2016. Order at 3 (citing Compl. ¶ 30, Ex. D). CONAE intends to launch satellites to observe climatological and environmental phenomena in service of the Argentine government's National Space Program. *Id.* (citing Compl. ¶ 30). Notwithstanding the purpose for which CONAE plans to launch these satellites, CONAE's—*i.e.*, Argentina's—rights under the Launch Services Contracts are purely commercial; private companies regularly contract with SpaceX for launch services, just as Argentina has done here via CONAE (which, as the district court held, Order at 6-10, is a political subdivision of the Republic of Argentina). *See* Compl. ¶¶ 32-33.

On March 25, 2014, NML brought this action to partially satisfy its judgments against Argentina by attaching (in hopes of later selling) Argentina's

contractual rights under the Launch Services Contracts with SpaceX, and related property. Compl. ¶¶ 1-4. A satellite launch requires extensive preparations, including services from the launch services provider to ensure that the satellite will work as intended with the launch vehicle. Decl. of Keith Volkert ¶¶ 6-7, D.E. 43-2 (C.D. Cal. Feb. 9, 2015) ("Volkert Decl."). Accordingly, NML seeks to attach the rights to all "launch services" under the contracts, including but not limited to the right to launch the satellites. Compl. ¶¶ 3, 6, 7, 30-34. NML intends to sell Argentina's rights in the Launch Services Contracts to one or more third parties interested in using CONAE's launch slots, and apply the proceeds towards satisfaction of its judgments. *Id.* ¶ 39. Due to the complexities of launching a satellite, NML may require several months to market and sell those rights.

Because CONAE's functions are predominantly governmental, CONAE is a "political subdivision" of the Argentine State under the FSIA; Argentina's "waiver speaks for [CONAE] as well," Order at 10; and NML therefore alleged that the district court not only had jurisdiction over CONAE under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1603(a), 1605(a), Compl. ¶ 9, but also grounds to permit NML to levy on property nominally held by CONAE, *id.* ¶¶ 16-26. NML further alleged that Argentina's rights under the Launch Services Contracts were being "used for a commercial activity in the United States," and thus available for attachment under the FSIA, 28 U.S.C. § 1610, because Argentina

is exercising its rights under the Launch Services Contracts to use SpaceX's launch services, Compl. ¶¶ 30-31; *see also* Pl.'s Mem. of Points & Authorities in Opp'n at 16-17, D.E. 30 (C.D. Cal. June 5, 2014) ("Opp'n")—an activity in which private companies regularly engage, Compl. ¶¶ 32-33.

Argentina and SpaceX both moved to dismiss and, on March 6, 2015, the district court granted the motions. Order at 13. The district court first concluded that it has jurisdiction over CONAE under the FSIA. The court explained that, because CONAE is an administrative agency with no financial independence and directly controlled by the Argentine government, CONAE is a "political subdivision" of Argentina, rather than a legally distinct "agency or instrumentality," under the "core functions test" adopted by this Circuit in *Ministry of Defense & Support for the Armed Forces of the Islamic Republic of Iran v. Cubic Defense Systems, Inc.*, 495 F.3d 1024, 1035 (9th Cir. 2007), *rev'd sub nom. on other grounds*, *Ministry of Defense & Support for the Armed Forces of the Islamic Republic of Iran v. Elahi*, 556 U.S. 366 (2009) ("*Cubic*"). Order at 1-2, 8-10. Accordingly, as a political subdivision of Argentina, CONAE is included in Argentina's waiver of jurisdictional immunity. *Id.* at 10.

However, the district court concluded that Argentina's rights under the Launch Services Contracts are not subject to attachment under 28 U.S.C. § 1610 because Argentina is not "us[ing]" the Launch Services Contracts. Order at 10-12.

The district court found that Argentina's employment of the valuable commercial right to services for launching its satellites did not constitute a "use" of the Launch Services Contracts, and indeed, Argentina would not use its contractual rights "until the launch process begins." *Id.* at 12. As a result, the district court found the Launch Services Contracts immune from attachment and execution and dismissed NML's complaint. *Id.* at 13.

NML timely filed its notice of appeal on March 24, 2015. D.E. 52 (C.D. Cal. Mar. 24, 2015). Under the current briefing schedule, NML would file its opening brief by August 31, 2015; Appellees would file their response briefs by September 30, 2015; and NML would file an optional reply fourteen days thereafter. CA9 D.E. 1-4. In other words, the current briefing schedule would conclude *after* CONAE's first scheduled launch—in September 2015—under the Launch Services Contracts.

## ARGUMENT

NML can demonstrate substantial good cause to justify expedited briefing for this time-sensitive case. Circuit Rule 27-12 provides that "[m]otions to expedite briefing and hearing . . . *will be granted upon a showing of good cause*." 9th Cir. R. 27-12 (emphasis added); *see also* Fed. R. App. P. 2 ("On its own or a party's motion, a court of appeals may—to expedite its decision or for other good cause—suspend any provision of these rules in a particular case and order

proceedings as it directs . . . ."). "'Good cause' includes, but is not limited to, situations in which . . . in the absence of expedited treatment, *irreparable harm may occur or the appeal may become moot*." 9th Cir. R. 27-12(3) (emphasis added). Circuit Rule 34-3 similarly accords priority to "[a]ppeals entitled to priority on the basis of good cause under 28 U.S.C. § 1657." 9th Cir. R. 34-3(5). Pursuant to 28 U.S.C. § 1657, "each court of the United States . . . *shall expedite* the consideration of any action . . . *if good cause therefor is shown*." 28 U.S.C. § 1867(a) (emphasis added).

This Court has found good cause to expedite appeals in a variety of cases where urgent action was needed to avoid irreparable harm to the parties. For example, this Court will expedite an action when the very thing that a party comes to court to protect will be destroyed absent relief, *see Humane Soc'y of U.S. v. Gutierrez*, 523 F.3d 990, 992 (9th Cir. 2008) (expediting appeal of denial of preliminary injunction against states' lethal taking of sea lions), or when the right at issue is time-bound, *see Doe v. Reed*, 586 F.3d 671, 676 (9th Cir. 2009) (explaining that the court had ordered expedited briefing in a First Amendment challenge to a state statute governing publication of referenda supporters' names in the lead-up to elections); *see also Flagstaff Med. Ctr., Inc. v. Sullivan*, 962 F.2d 879, 884 (9th Cir. 1992) (expediting appeal by indigent patients denied medical care due to challenged regulations of a government agency).

There is good cause to expedite NML's appeal here. NML is seeking to execute judgments against contractual rights with an expiration date: Argentina is set to launch its first satellite in September 2015—six months from now—and its second in September 2016. Unless this Court rules in the near future, even a favorable ruling may effectively deprive NML of any benefit from its attachments. This is true for at least two reasons.

First, absent expedition, Argentina likely would moot NML's appeal as to the September 2015 launch. The current briefing schedule would have briefing conclude in October 2015—at least two weeks *after* Argentina is scheduled to launch its first satellite. As a result, failure to expedite this appeal would likely deprive NML of the opportunity to obtain any value from Argentina's rights in at least one of the Launch Services Contracts, regardless of whether NML was entitled to attach them.

Second, a non-expedited briefing schedule also could decrease significantly NML's ability to market and sell the Launch Services Contracts. Satellite launch services are a highly specialized product that only a very limited subset of purchasers—mostly large commercial customers—would be both interested in and able to buy. *See* Compl. ¶ 32, Exs. D-E; Volkert Decl. ¶ 9. A potential purchaser would need to know that it has sufficient lead time to prepare for a satellite launch before it would even consider buying out Argentina's rights in the Launch Services

Contracts. Preparations normally begin 18-24 months before the launch date, with the launch services provider working actively with the satellite owner to ensure the compatibility of the satellite and the launch vehicle. Volkert Decl. ¶ 6. Therefore, to extract any value from the Launch Services Contracts for either the September 2015 or September 2016 launches, NML will need a significant amount of time to locate a suitable purchaser for Argentina's Launch Services Rights.[2]

Time is thus of the essence in adjudicating this appeal. If this appeal is decided in the ordinary course, Argentina may launch at least one satellite before briefing concludes, mooting part of NML's appeal. And, even if not mooted, an appeal in the ordinary course risks significantly reducing the value of the Launch Services Contracts. Accordingly, expedited briefing is required to avoid irreparably harming NML and possibly mooting NML's appeal.

---

[2] This need for lead time supports NML's argument that Argentina currently is using its rights under the Launch Services Contract for a commercial activity. Opp'n at 18; *see also* Compl. ¶¶ 30-34. In *Af-Cap, Inc. v. Republic of Congo*, 475 F.3d 1080 (9th Cir. 2007), this Court held that the term "used for" in 28 U.S.C. § 1610 means that the State's property "is put into action, put into service, availed or employed for a commercial activity." *Id.* at 1091 (emphasis omitted). Argentina's rights under the Launch Services Contracts meet this standard because Argentina is availing itself of its Launch Services Rights presently to prepare to launch satellites using SpaceX's rockets and launch operations in the United States. Opp'n at 18; *see also* Compl. ¶¶ 30-34. In order to use launch services rights at all, an entity must actively employ these rights—including the rights to *preparations* for a launch (*see* Volkert Decl. ¶ 6)—for a lengthy period before the launch.

10

## CONCLUSION

NML respectfully requests that this Court grant this motion for expedited briefing and hearing of this appeal and set the briefing and hearing schedule as proposed in this motion.

## PROPOSED BRIEFING SCHEDULE

Pursuant to Ninth Circuit Rule 27-12, NML seeks an acceleration of the current briefing schedule and also requests that oral argument be scheduled promptly after all briefs are submitted or as soon thereafter as the Court finds convenient. To facilitate expedited treatment, NML is amenable to oral argument at any Ninth Circuit courthouse.

The below chart indicates (1) the date currently set and (2) the proposed expedited date:

| | Date Currently Set | Proposed Expedited Date |
|---|---|---|
| Appellant's opening brief and excerpts of record shall be served and filed pursuant to Fed. R. App. P. 32 and 9th Cir. R. 32-1. | August 31, 2015 | April 20, 2015 |
| Appellees' answering brief and excerpts of record shall be served and filed pursuant to Fed. R. App. P. 32 and 9th Cir. R. 32-1. | September 30, 2015 | May 20, 2015 |
| Appellant's optional reply brief shall be filed and served within fourteen | Within 14 days of Appellees' Answering Brief (October 14, | May 30, 2015 |

| days of service of the appellees' brief, pursuant to Fed. R. App. P. 32 and 9th Cir. R. 32-1. | 2015) | |

Dated: March 27, 2015                    Respectfully submitted,

HAROLD A. BARZA                          /s/ *Alexander K. Mircheff*
BRUCE E. VAN DALSEM                      THEODORE B. OLSON
IAN S. SHELTON                           MATTHEW D. MCGILL
QUINN EMANUEL URQUHART &                 GIBSON, DUNN & CRUTCHER LLP
SULLIVAN, LLP                            1050 Connecticut Avenue, N.W.
865 South Figueroa Street, 10th Floor    Washington, DC 20036-5306
Los Angeles, California 90017            Telephone:    202.955.8500
Telephone: 213.443.3000                  Facsimile:    202.467.0539
Facsimile: 213.443.3100

STEVEN A. ENGEL                          ALEXANDER K. MIRCHEFF
DECHERT LLP                              GIBSON, DUNN & CRUTCHER LLP
1095 Avenue of the Americas              333 South Grand Avenue
New York, New York 10036                 Los Angeles, CA 90071-3197
Telephone: 212.698.3500                  Telephone: 213.229.7307
Facsimile: 212.698.3599                  Facsimile: 213.229.6307


*Attorneys for Plaintiff-Appellant NML Capital, Ltd.*

13

**CERTIFICATE OF COMPLIANCE**

I certify that pursuant to Fed. R. App. P. 32(a)(7)(C) and Ninth Circuit Rule

32-1, the attached motion is proportionately spaced, has a typeface of 14 points,

and complies with the page limitations set forth in Fed. R. App. P. 27(d).

/s/ *Alexander K. Mircheff*
Alexander K. Mircheff

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing Appellant's Motion to Expedite Briefing and Hearing on Appeal with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on March 27, 2015.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ *Alexander K. Mircheff*_____
Alexander K. Mircheff