**15-55449**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

NML CAPITAL, LTD.,
*Plaintiff-Appellant,*

v.

SPACE EXPLORATION TECHNOLOGIES CORP., a.k.a. SPACEX;
THE REPUBLIC OF ARGENTINA, a foreign state, including its *COMISIÓN*
*NACIONAL DE ACTIVIDADES ESPACIALES*, a.k.a. CONAE,
*Defendants-Appellees.*

On Appeal from the United States District Court,
Central District of California No. 2:14-cv-02262-SVW
The Honorable Stephen V. Wilson

**Appellee The Republic of Argentina's Opposition to**
**Appellant's Motion to Expedite Briefing and Hearing on Appeal**

Donald R. Brown
Carl L. Grumer
Benjamin G. Shatz
MANATT, PHELPS & PHILLIPS, LLP
11355 W. Olympic Boulevard
Los Angeles, CA 90064-1614
(310) 312-4000 ● Fax (310) 312-4224

Matthew D. Slater
CLEARY GOTTLIEB
STEEN & HAMILTON LLP
2000 Pennsylvania Ave., NW, 9th Fl.
Washington D.C. 20006
(202) 974-1500 ● (202) 974-199

Jonathan I. Blackman
Carmine D. Boccuzzi
Michael M. Brennan
CLEARY GOTTLIEB
STEEN & HAMILTON LLP
One Liberty Plaza
New York, NY 10006
(212) 225-2000 ● (212) 225-3999

Attorneys for *Defendant-Appellee*
The Republic of Argentina

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................1

BACKGROUND ........................................................................................4

    A.    The Argentine Crisis and NML's Litigation Campaign Against the Republic..................................................................................................4

    B.    NML's Previously Rejected Creditor's Suit Against Property of CONAE ..................................................................................................7

    C.    The Present Action and the District Court's Proper Dismissal of It.....9

ARGUMENT ...........................................................................................12

    NO GOOD CAUSE EXISTS TO JUSTIFY EXPEDITION ..........................12

CONCLUSION ........................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Af-Cap Inc. v. Chevron Overseas (Congo) Ltd.*,
475 F.3d 1080 (9th Cir. 2007) ...................................................... 11, 12, 15

*Aurelius Capital Partners, LP v. Republic of Argentina*,
584 F.3d 120 (2d Cir. 2009), *cert. denied*, 130 S. Ct. 1691 (2010) ............... 6

*Conn. Bank of Commerce v. Republic of Congo*,
309 F.3d 240 (5th Cir. 2002) ....................................................... 15

*EM Ltd. v. Republic of Argentina*,
131 F. App'x 745 (2d Cir. 2005) ................................................... 5-6

*EM Ltd. v. Republic of Argentina*,
473 F.3d 463 (2d Cir. 2007) ........................................................ 6

*EM Ltd. v. Republic of Argentina*,
No. 08 Civ. 7974 (TPG), 2009 WL 3149601 (S.D.N.Y. Sept. 30, 2009),
*vacated in part on other grounds*, 2010 WL 3910604 (S.D.N.Y. Sept. 30,
2010) ............................................................................ 6

*Exp.-Imp. Bank of the Republic of China v. Grenada*,
768 F.3d 75 (2d Cir. 2014) ........................................................ 15

*Lightwater Corp. Ltd. v. Republic of Argentina*,
No. 02 Civ. 3804 (TPG), 2003 WL 1878420 (S.D.N.Y. Apr. 14, 2003) ....... 4

*NML Capital, Ltd. v. Republic of Argentina*,
No. 09 Civ. 7013 (TPG), 2011 WL 524433 (S.D.N.Y. Feb. 15, 2011) ......... 6

*NML Capital, Ltd. v. Republic of Argentina*,
No. 03 Civ. 8845 (TPG), 2011 WL 1533072 (S.D.N.Y. Apr. 22, 2011),
*vacated on other grounds*, 497 F. App'x 96 (2d Cir. 2012) ........................ 6

*NML Capital, Ltd. v. Republic of Argentina*,
No. 04-0197 (CKK), 2005 U.S. Dist. LEXIS 47027 (D. D.C. Aug. 3, 2005) 6

*NML Capital, Ltd. v. Space Exploration Techs. Corp.*,
No. 14 Civ. 2262 (SVW), 2015 WL 1334291 (C.D. Cal. Mar. 6, 2015) ....... 2, 11-12, 15

ii

*NML Capital, Ltd. v. Spaceport Sys. Int'l, L.P.*,
788 F. Supp. 2d 1111 (C.D. Cal. 2011) ........................................................ *passim*

*Sampson v. Murray*
415 U.S. 61 (1974) .................................................................................... 16

**Rules and Statutes**

28 U.S.C. § 1610 ........................................................................................ 5

28 U.S.C. § 1610(a) .................................................................................... 8

9th Cir. R. 27-12 ........................................................................................ 12

Fed. R. App. P. 27(d) ................................................................................ 18

Fed. R. App. P. 32(a)(5) ............................................................................ 18

**Other Authorities**

Press Release, Office of the High Commissioner for Human Rights, *'Vulture Funds' – UN expert on foreign debt welcomes landmark law to address profiteering* (Apr. 20, 2010), *available at* http://tinyurl.com/kytghpa ........... 5

Jonathan C. Lippert, Note, *Vulture Funds: The Reason Why Congolese Debt May Force a Revision of the Foreign Sovereign Immunities Act*, 21 N.Y. Int'l L. Rev. 1, 2, 27 (2008) ............................................................................ 5

Republic of Argentina, Annual Report (Form 18-K) (Sept. 30, 2011), *available at* http://tinyurl.com/oajqnhv ........................................................ 5

iii

Defendant-Appellee the Republic of Argentina (the "Republic") opposes Plaintiff-Appellant NML Capital Ltd.'s ("NML") motion to expedite briefing and hearing on this appeal, which arises from the dismissal of NML's "complaint for creditor's suit" seeking to execute on contractual rights owed to the Republic's space agency, *Comisión Nacional de Actividades Espaciales* ("CONAE"), by Space Exploration Technologies ("SpaceX") to launch two CONAE satellites in September 2015 and in 2016.

## PRELIMINARY STATEMENT

This Court should deny NML's request that the Court expend limited judicial resources on an expedited appeal. During the ten months that its complaint was pending below, not *once* did NML communicate to the district court any need for an expedited ruling. When the district court ultimately dismissed the case, NML then waited over two weeks to file a notice of appeal. It was not until almost one week later, *i.e.* three weeks after the order here was entered, that NML finally asked this Court to rush to hear its appeal, ostensibly due to mootness concerns.

Despite having all this time to prepare its request, NML neglected to inform the Court that the order below was the *second* rejection by the district court of NML's novel theory that its judgment creditor status permits it to interfere with the launch of immune sovereign satellites owned by CONAE, the Argentine space agency, that will gather and distribute scientific data for humanitarian purposes.

*See NML Capital, Ltd. v. Space Exploration Techs. Corp.*, No. 14 Civ. 2262 (SVW), 2015 WL 1334291, at *6-7 (C.D. Cal. Mar. 6, 2015) ("*NML II*") (CONAE contract rights to launch satellites immune under Section 1610(a) of Foreign Sovereign Immunities Act ("FSIA")); *NML Capital, Ltd. v. Spaceport Sys. Int'l, L.P.*, 788 F. Supp. 2d 1111, 1115-16, 1127 (C.D. Cal. 2011) ("*NML I*") (CONAE's satellites themselves immune under Section 1610(a)).  The first such rejection, in *NML I*, occurred almost four years ago, 788 F. Supp. 2d at 1127, and NML did not even appeal at all, much less seek expedited appeal based on a self-created "emergency."

The Court should reject NML's motion.  *First*, NML's strategic decision to proceed in this manner plainly does not constitute "good cause" justifying the significant expense of Court and party resources that are inherent in expedition. NML could have sought to prevent any purported mootness in the district court had it desired to do so.  That NML instead elected to seek relief from this Court – while showing no hint of urgency until its belated motion here – should not mean that the Court and appellees must bear the consequences of NML's tactical decision.

*Second*, the purported "urgency" claimed by NML rings hollow.  According to NML, it needs to (i) prevail on appeal, (ii) return to the district court and prevail on the numerous remaining issues in its creditor's suit, including showing that the contract here is assignable (which it cannot do), and then (iii) somehow market and

sell CONAE's unique contract rights in time for the satellite launches, which are approximately six and eighteen months away. But as NML and its purported "expert" below acknowledge, NML's intended plan to sell the contract rights would *alone* take more than eighteen to twenty-four months, because NML would need to market the rights to a limited subset of purchasers and then those purchasers would have to coordinate satellite launches with SpaceX (assuming SpaceX could even be forced to provide launch services to an entity found by NML). And NML itself contends that as time progresses, the supposed "marketability" of these rights purportedly decreases correspondingly, because they become more uniquely tailored to CONAE's specific satellites. In short, the timeline on which NML premises its expedition request shows the request to be unworkable, particularly in light of NML's repeated failure to demonstrate that CONAE's property is even subject to execution in the first place.

*Third*, "good cause" for expedition is all the more lacking because the ruling challenged by NML did no more than apply, in a straightforward manner, this Court's precedent concerning execution immunity under the FSIA, consistent with the decisions of at least two other appellate courts, and thus has little chance of being disturbed on appeal. As noted above, NML fails to mention that this was the second time that the district court rejected NML's novel theories supporting its improper effort to seize sovereign satellite property. In the first instance, NML did

3

not appeal, and its decision to do so this time around in connection with an equally sound district court determination does not warrant this Court's expedited review.

## BACKGROUND

### A. The Argentine Crisis and NML's Litigation Campaign Against the Republic

NML, a Cayman Islands hedge fund that speculates in defaulted Argentine sovereign debt, is a judgment creditor of the Republic. NML acquired beneficial interests in Republic-issued debt at a deep discount both immediately before, and well after, the Republic suspended payments on its unsustainable external debt as a consequence of the worst economic crisis of its modern history, in which it suffered a cumulative fall in output almost twice that experienced by the United States during the Great Depression. *See Lightwater Corp. Ltd. v. Republic of Argentina*, No. 02 Civ. 3804, 2003 WL 1878420, at *2 (S.D.N.Y. Apr. 14, 2003).

By the end of 2001, this crisis made it impossible for the Republic to service its overwhelming debt burden – some $80 billion in public external debt alone – while maintaining basic governmental services necessary for the health, welfare, and safety of the Argentine populace. Unable to service its debt, the Republic was forced to defer interest and principal payments to debt holders and to seek a voluntary restructuring of its debt burden.

Like other so-called "vulture funds,"[1] NML has sought to take advantage of the absence of bankruptcy protection in the sovereign context by bringing lawsuits against the Republic for the face value of defaulted sovereign debt, obtaining judgments on which interest continues to run indefinitely, and aggressively trying to execute on them, notwithstanding that the FSIA largely renders foreign-state property immune.[2] Following this business strategy, NML refused to participate in the Republic's 2005 and 2010 voluntary, global debt exchange offers, which together resulted in the successful restructuring of approximately 92% of the Republic's non-performing debt. *See* Republic of Argentina, Annual Report (Form 18-K), at 16 (Sept. 30, 2011), *available at* http://tinyurl.com/oajqnhv; *EM Ltd. v.*

---

[1] *See, e.g.*, Jonathan C. Lippert, Note, *Vulture Funds: The Reason Why Congolese Debt May Force a Revision of the Foreign Sovereign Immunities Act*, 21 N.Y. Int'l L. Rev. 1, 2, 27 (2008) (vulture funds seek "extraordinary profits at the expense of U.S. companies, the U.S. economy and U.S. foreign relations . . . potentially affecting debt restructuring in all emerging markets"); Press Release, Office of the High Commissioner for Human Rights, *'Vulture Funds' – UN expert on foreign debt welcomes landmark law to address profiteering* (Apr. 20, 2010), *available at* http://tinyurl.com/kytghpa.

[2] NML harps on the fact that the Republic has not paid its judgments. *See* NML Mot. to Expedite at 1-3. Of course, that fact is irrelevant to the propriety or legality of any particular execution effort, *see* 28 U.S.C. § 1610, which by definition is premised on the nonpayment of a judgment. The many courts that have rejected NML's execution efforts as precluded by the FSIA have fully recognized this basic principle, even though NML would like to ignore it.

*Republic of Argentina*, 131 F. App'x 745, 746-47 (2d Cir. 2005) (affirming vacatur of NML attachment of interests in bonds tendered in 2005 exchange offer).

Instead, NML has pursued attachment and execution efforts, most of which the courts have properly rejected, against assorted separate agencies and instrumentalities of the Republic,[3] as well as property not used for a commercial activity,[4] including clearly immune diplomatic and military property.[5]  These numerous past enforcement efforts include its failed attempt, in 2011, to execute on CONAE's satellite property.  *NML I*, 788 F. Supp. 2d 1111.

---

[3]  *EM Ltd. v. Republic of Argentina*, 473 F.3d 463, 472 (2d Cir. 2007) (affirming vacatur of attachment of central bank reserves at the Federal Reserve Bank of New York); *NML Capital, Ltd. v. Republic of Argentina*, No. 03 Civ. 8845 (TPG), 2011 WL 1533072, at *6 (S.D.N.Y. Apr. 22, 2011) (denying attachment because, *inter alia*, property belonged to wholly government-owned Argentine satellite company), *vacated on other grounds*, 497 F. App'x 96 (2d Cir. 2012); *NML Capital, Ltd. v. Republic of Argentina*, No. 09 Civ. 7013 (TPG), 2011 WL 524433 (S.D.N.Y. Feb. 15, 2011); *EM Ltd. v. Republic of Argentina*, No. 08 Civ. 7974 (TPG), 2009 WL 3149601, at *6 (S.D.N.Y. Sept. 30, 2009) (rejecting attempt to seize property of autarkic "legally and financially independent entity created 'to promote scientific research concerning agriculture and cattle ranching'"), *vacated in part on other grounds*, 2010 WL 3910604 (S.D.N.Y. Sept. 30, 2010).

[4] *Aurelius Capital Partners, LP v. Republic of Argentina*, 584 F.3d 120, 124-25 (2d Cir. 2009) (rejecting attempt to attach and restrain assets of the Argentine social security system), *cert. denied*, 130 S. Ct. 1691 (2010).

[5] *See, e.g.*, *NML Capital, Ltd. v. Republic of Argentina*, No. 04-0197 (CKK), 2005 U.S. Dist. LEXIS 47027, at *2 n.2 (D. D.C. Aug. 3, 2005) (quashing *ex parte* writs of attachment of diplomatic property).

**B. NML's Previously Rejected Creditor's Suit Against Property of CONAE**

CONAE was established "in 1991 through a presidential decree" and, as Argentina's space agency, is "obligated 'to undertake, design, execute, control, manage and administer space projects and undertakings . . . for peaceful purposes.'" *NML I*, 788 F. Supp. 2d at 1115 (internal citation omitted). In April 2011, NML sought improperly to interfere with a third-party's launch of a satellite mission involving CONAE, NASA, and the space agencies of France, Italy, and Canada, by bringing a creditor's suit, coupled with a TRO application, against the Republic and the third-party satellite-launching company, Spaceport Systems International. *See generally NML I*, 788 F. Supp. 2d at 1116.

By its attachment suit and TRO application, NML sought to seize the satellite and disrupt its launch, notwithstanding that the activity at issue was clearly *not* commercial. As the United States made clear in its Statement of Interest opposing NML's first action, not only did NML target "property [that] is immune from attachment under the [FSIA]," but also, its request, if granted, "would [have] severely disrupt[ed] the [satellite] mission for all parties, frustrate[d] NASA's substantial investment in the program, and severely disserve[d] the public interest." Statement of Interest of the United States of America at 1, *NML I*, No. 11 Civ. 03507 (C.D. Cal. May 3, 2011), ECF No. 33.

CONAE, in keeping with its status as a national space agency, was launching the satellite "to conduct a scientific and humanitarian mission, whereby data on the earth's ocean [would] be collected from space and [would] be disseminated for free to the scientific community." *NML I*, 788 F. Supp. 2d at 1123-24. The goals of the mission, which sought to gather and analyze data on the oceans' salinity levels, were to "'[m]onitor [ ] natural disasters, fires, volcanic events, agriculture, land use, and other environmental variables' and to learn '[t]he relationship between regional soil moisture and essential climate variables . . . on the appearance and spread of diseases.'" *Id.* at 1116 (internal citation omitted).

The district court correctly denied NML's effort to disrupt that launch as violative of FSIA Section 1610(a), which immunizes from execution all foreign state property that is not located in the United States and "used for" a commercial activity in the United States. 28 U.S.C. § 1610(a). The court rejected NML's numerous strained arguments and shifting definition of the "property" it targeted, because however characterized, no CONAE property could be said to be "used for" a commercial activity in the United States. *NML I*, 788 F. Supp. 2d at 1121.

In the decision, the district court properly applied the Ninth Circuit's "narrow construction" of Section 1610(a)'s "used for" requirement and held that execution was barred because any "use" of the satellite would take place in space, where it would be used to gather data, and not in California, where it was being

8

tested and prepared for launch at the Vandenberg Air Force Base. *Id*. at 1120-22. The court also held that execution was improper in any event, because CONAE's "conduct[, which] encompasse[d] both pre-launch activities . . . and post-launch activities, mainly the gathering of information from space" and the Republic's "cooperat[ion] with nation-states to advance human understanding of the earth's ocean salinity. . . . whereby data on the earth's ocean will be collected from space and will be disseminated for free to the scientific community," was "sovereign" rather than "commercial" in nature. *Id*. at 1122, 1124.

The district court also rejected NML's request for injunctive relief as against the public interest, holding that "the public interest in enforcing judgments" was outweighed in this context by "other public interests, such as: (1) advancement of the general welfare and security of the nation through aeronautical and space activities; (2) the expansion of human knowledge of the earth; and (3) promoting cooperation between the United States and other nations in the peaceful exploration of '[s]pace: the final frontier.'" *Id*. at 1126 (internal citation omitted).

## C. The Present Action and the District Court's Proper Dismissal of It

Notwithstanding the district court's unequivocal, unappealed rejection, on numerous grounds, of NML's prior attempt to seize a CONAE satellite and disrupt its launch, NML on March 25, 2014, filed *another* creditor's suit against a third-party satellite-launching company seeking to attach CONAE's property and disrupt

yet *another* launch of a CONAE satellite. Compl. ¶ 3. Like NML's last complaint, the new complaint alleged in conclusory form "[that] CONAE is part of the Argentine state, such that a judgment against Argentina is a judgment against CONAE," *id.* ¶ 17; *see also id.* ¶¶ 18-36, and that the satellite property at issue is being "used for a commercial activity in the United States," *id.* ¶ 34; *see also id.* ¶¶ 27-33.

Recognizing that any effort to execute upon the satellite or its components was foreclosed by the district court's unappealed decision in *NML I*, NML redefined the "property" it targeted yet again, vaguely alleging in the complaint that the property upon which it seeks to execute is not CONAE satellites, but rather CONAE's rights under its contracts with SpaceX to provide launch services in connection with upcoming launches of CONAE satellites. *Id.* ¶ 29. That is, notwithstanding that the physical satellites are immune from execution because they are not "used for" a commercial activity in the United States, NML alleged that it can nonetheless execute on CONAE's purported derivative contract rights to launch them. In support of this counterintuitive theory, NML alleged that CONAE's contract rights are "used for" a commercial activity in the United States because "the nature of the [] Contracts is commercial" and CONAE "acquired" and "maintains" those rights "in connection with those contracts." *Id.* ¶ 33.

10

The Republic moved to dismiss the complaint on May 15, 2014, arguing, *inter alia*, that the complaint failed to plausibly allege that the targeted property falls under an exception to FSIA immunity. Oral argument on the motion was held on June 30, 2014, during which NML did not request that the district judge expedite his decision on the motion. Following oral argument, NML similarly took no steps to seek an expedited decision from the district court, and in fact elected not to file a request that the district court issue a ruling on the motion under the Central District of California's Local Rule 83-9.2.

On March 6, 2015, the district court correctly rejected NML's FSIA allegations and granted the Republic's motion to dismiss, finding that CONAE's contract rights are not being "used" for any activity in the United States, and are therefore beyond the scope of execution of the FSIA. *NML II*, 2015 WL 1334291, at *6-7. The district court found unavailing NML's argument that the rights were being "used for" commercial activity in the United States because they were acquired in a commercial transaction and reiterated that this Court has made clear that "[w]hat matters under the statute is what the property is 'used for,' not how it was generated or produced." *Id.* at *6 (*quoting Af-Cap Inc. v. Chevron Overseas (Congo) Ltd.*, 475 F.3d 1080, 1087 (9th Cir. 2007)).

The district court also rejected NML's argument that the rights were being "used for" keeping SpaceX's launch slots open, and found that SpaceX's conduct

"is nothing more than maintenance in connection with a commercial activity, which is insufficient under *Af-Cap*, 475 F.3d at 1091." *Id.* at *7. The district court reasoned that "to fit SpaceX's conduct within the definition of 'use' [would require] lexicographical distension of an everyday word." *Id.*

After the decision of the district court was entered, NML waited over two weeks to file its notice of appeal, and it was not until three weeks after that decision that NML sought an expedited appeal from this Court. *See* NML's Mot. to Expedite, Mar. 27, 2015, ECF No. 7.

## ARGUMENT

## NO GOOD CAUSE EXISTS TO JUSTIFY EXPEDITION

The Court should reject NML's motion to expedite this appeal because NML cannot establish the requisite good cause. *See* 9th Cir. R. 27-12 ("Motions to expedite briefing and hearing . . . will be granted upon a showing of good cause.").

*First*, NML's own actions throughout this case defeat its belated claim for expedition. At no time after NML filed its complaint below did it suggest to the district court that it needed expedited consideration of the Republic's and SpaceX's motions to dismiss, including in its opposition to those motions, during the June 30, 2014 oral argument, and over the eight month period between argument and the date the court issued its order, March 6, 2015. Although NML raised in November 2014 the potential of filing with the district court a "Request for Ruling" under

Local Rule 83-9.2, after no order had entered 130 days after argument, NML ultimately decided – for unknown reasons – to abandon that idea. NML thus had numerous opportunities to notify the district court of any purported "urgency" in connection with the Republic's motion, but, for its own strategic purposes, elected not do so.

Nor did NML indicate any sense of urgency when the district court finally did enter its order. As noted above, NML did not file its notice of appeal until *over two weeks after* the order was issued. And it was not until *three weeks* from the date of the district court's decision that NML finally claimed a need for this Court to expend resources to hear its appeal on an expedited basis.[6] On this record, the Court should reject NML's belated request for briefing and consideration of its appeal to take place at break-neck speed.

*Second*, NML's claim of "urgency" is belied by its own purported "expert" below. *See* Decl. of Keith Volkert ¶ 6, *NML Capital, Ltd. v. Space Exploration Techs. Corp.*, No. 14 Civ. 2262 (SVW) (C.D. Cal. Feb. 9, 2015), ECF No. 43-2 (hereinafter the "Volkert Decl."). Relying on its "expert," NML claims that, without expedition, NML will lose the ability to market and sell the unique

---

[6] Having waited three weeks to file its motion for an expedited appeal, NML now proposes "expedition" that provides itself seven weeks, and appellees four weeks, to submit their briefing. NML's Mot. to Expedite at 11.

contract rights it targets because satellite launch services "are a highly specialized product that only a very limited subset of purchasers . . . would be both interested in and able to buy," and that a "potential purchaser would need to know that it has sufficient lead time to prepare for a satellite launch before it would even consider buying" such rights. NML's Mot. to Expedite at 9-10 (citing Volkert Decl. ¶¶ 6, 9). According to NML's "expert," preparations for satellite launches "normally begin eighteen to twenty-four months prior to the opening of the scheduled launch period," and require the satellite owner's participation in the process during that time. Volkert Decl. ¶ 6.

This timeline itself defeats NML's arguments for expedition. The first launch is scheduled in six months, and the latter in eighteen months, so the much longer preliminary process that NML describes could not possibly occur in time to allow it to "market and sell the contract rights" to a new purchaser who would then need to work with SpaceX so that the launch is tailored for the specifications of that new purchaser's satellite. This is especially true given that even if NML *is* successful on appeal (which, as discussed below, it will not be), lengthy further proceedings in the district court (and potentially this Court) would then be

necessary – including concerning whether the contract at issue is assignable, which it is not.[7]

*Third*, NML has no "good cause" for expedition because the district court's legally sound FSIA ruling applied this Court's precedent in a straightforward manner, and will almost certainly be upheld on appeal. *NML II*, 2015 WL 1334291, at *6-7 (NML's request "would violate both the Ninth Circuit's adoption of a narrow definition [of 'used for'], *Af-Cap*, 475 F.3d at 1091, as well as the Court's obligation [under Ninth Circuit law] to apply a straightforward denotation" of "used for"). Indeed, that precedent is consistent with the decisions of two other appellate courts, further demonstrating the lack of any authority upon which NML can rely here. *See Exp.-Imp. Bank of the Republic of China v. Grenada*, 768 F.3d 75, 90-91 (2d Cir. 2014) (adopting *Af-Cap* "used for" standard); *Conn. Bank of Commerce v. Republic of Congo*, 309 F.3d 240, 249, 260-61 (5th Cir. 2002) (setting narrow "used for" standard that this Court adopted in *Af-Cap*).

---

[7] This is not the first time NML has tried to create a false appearance of urgency for tactical reasons. For example, a judge in the District Court for the District of Columbia recently rejected NML's "draconian" request – brought in an "emergency" motion to compel a deposition – to seize the passport of a non-party Argentine citizen (and former World Bank director) to prevent him from returning home to Argentina upon the conclusion of his business in the United States. Order, *NML Capital, Ltd. v. Republic of Argentina*, No. 14-mc-1237 (RCL) (Nov. 6, 2014), ECF No. 11.

At bottom, NML's motion below was no more than a rehashing of the erroneous novel theory that the district court properly rejected in 2011, which NML did not even bother to appeal. *NML I*, 788 F. Supp. 2d at 1115-16. Together, the district court's two decisions in *NML I* and *NML II* make clear that CONAE simply does not have property being "used for" commercial activity in the United States in connection with its satellite program, and that NML's continued interference with this sovereign activity is wholly improper. The scarce resources of this Court should not be expended under these circumstances, particularly where the targets of NML's improper execution effort are satellites that will be used for the general benefit of all humankind.

*Finally*, NML is wrong to suggest that "good cause" for expedition exists due to the purported threat of irreparable harm. The only harm NML could potentially suffer here is monetary in nature – which is by definition not irreparable. *See Sampson v. Murray*, 415 U.S. 61, 90 (1974) ("Mere injuries, however substantial, in terms of money, time and energy necessarily expended . . . are not enough.") (*quoting Virginia Petroleum Jobbers Ass'n v. Fed. Power Comm'n*, 259 F.2d 921, 925 (D.C. Cir. 1958)).

All of the cases that NML cites in support of its assertion to the contrary involve injunctive relief, or arise in the context of an emergency stay pending appeal. *See* NML Mot. to Expedite at 8. NML did not seek an injunction in the

district court, but rather to execute upon unique contract rights that it claims it can somehow sell.[8]  It is black-letter law that NML's inability to collect money from such a sale (to the extent such a sale is even possible), is not irreparable harm, but purely economic in nature.  *See id.*  NML accordingly has no basis to claim that there is "good cause" to expedite its appeal, and its motion should be rejected.

## CONCLUSION

For the foregoing reasons, this Court should deny NML's motion to expedite briefing and hearing on appeal.

Dated: New York, New York
     April 3, 2015

Respectfully submitted,

CLEARY GOTTLIEB STEEN & HAMILTON LLP

By:    /s/ Carmine Boccuzzi
      Jonathan I. Blackman (jblackman@cgsh.com)
      Carmine D. Boccuzzi (cboccuzzi@cgsh.com)
      Michael M. Brennan (mbrennan@cgsh.com)

One Liberty Plaza
New York, New York 10006
(212) 225-2000

*Attorneys for the Republic of Argentina*

---

[8] Of course, when NML did seek an injunction in *NML I*, the district court rejected that application finding, *inter alia*, that any such injunction would be against the public interest.  *See NML I*, 788 F. Supp. 2d at 1126.

17

## CERTIFICATE OF COMPLIANCE

I hereby certify that:

1.    This brief complies with the page limitations set forth in Fed. R. App. P. 27(d);

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

Dated:  New York, New York
         April 3, 2015

CLEARY GOTTLIEB STEEN & HAMILTON LLP


By: _____/s/ Carmine Boccuzzi_____
Carmine D. Boccuzzi (cboccuzzi@cgsh.com)

One Liberty Plaza
New York, New York 10006
(212) 225-2000

*Attorneys for the Republic of Argentina*

## CERTIFICATE OF SERVICE

I hereby certify that on April 3, 2015 I electronically filed the foregoing notice with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

*s/ Bess Hubbard*