No. 15-55449

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

NML CAPITAL, LTD.,

*Plaintiff-Appellant*,

v.

SPACE EXPLORATION TECHNOLOGIES CORP.,
a.k.a. SPACEX, a Delaware corporation;
and THE REPUBLIC OF ARGENTINA, a foreign state,
including its *COMISIÓN NACIONAL DE ACTIVIDADES ESPACIALES*,
a political subdivision of the Argentine State, a.k.a. CONAE,

*Defendants-Appellees*.

On Appeal from the United States District Court
for the Central District of California
Case No. 2:14-cv-02262-SVW-Ex
The Honorable Stephen V. Wilson

## APPELLANT'S EXCERPTS OF RECORD
## VOLUME II

HAROLD A. BARZA
BRUCE E. VAN DALSEM
IAN S. SHELTON
QUINN EMANUEL URQUHART &
  SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: 213.443.3000
Facsimile: 213.443.3100

THEODORE B. OLSON
MATTHEW D. MCGILL
SCOTT P. MARTIN
CHRISTOPHER B. LEACH
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone: 202.955.8500
Facsimile: 202.467.0539

*Counsel for Plaintiff-Appellant NML Capital, Ltd.*
[*additional counsel listed on inside cover*]

STEVEN A. ENGEL
DECHERT LLP
1095 Avenue of the Americas
New York, NY 10036
Telephone: 212.698.3500
Facsimile: 212.698.3599

ALEXANDER K. MIRCHEFF
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213.229.7307
Facsimile: 213.229.6307

# INDEX TO EXCERPTS OF RECORD

| NAME OF DOCUMENT | RECORD LOCATION | PAGE |
|---|---|---|
| **VOLUME ONE** | | |
| Amended and Corrected Order Granting Defendants' Motion to Dismiss (Mar. 6, 2015) | Dkt. 51 | ER 1 |
| In Chambers Order Denying as Moot Plaintiff's Motion for Leave to Serve Discovery Prior to Conducting a Rule 26(f) Conference (Mar. 5, 2015) | Dkt. 50 | ER 14 |
| **VOLUME TWO** | | |
| Notice of Appeal (Mar. 24, 2015) (Exhibits Omitted) | Dkt. 52 | ER 15 |
| Plaintiff's Notice of Motion and Motion for Leave to Serve Discovery Prior to Rule 26(f) Conference (Feb. 9, 2015) (Excerpts) | Dkt. 43 | ER 17 |
| Declaration of Keith Volkert (Feb. 9, 2015) (Excerpts) | Dkt. 43-2 | ER 26 |
| Exhibit 5 to Plaintiff's Motion for Leave to Serve Discovery Prior to Rule 26(f) Conference (Feb. 9, 2015) (Excerpts) | Dkt. 43-7 | ER 29 |
| Transcript of Proceedings re: Motions to Dismiss (June 30, 2014) (Excerpts) | Dkt. 41 | ER 32 |
| Defendant Republic of Argentina's Notice of Motion and Motion to Dismiss Complaint under F.R.C.P. 12(b)(1) and (6) (May 15, 2014) | Dkt. 18 | ER 38 |
| Declaration of Conrado F. Varotto, 2014 (May 15, 2014) | Dkt. 18-4 | ER 41 |
| Declaration of Conrado F. Varotto, 2011 (May 15, 2014) (Excerpts) | Dkt. 18-5 | ER 44 |

| | | |
|---|---|---|
| Declaration of Oleh Jachno (May 15, 2014) (Excerpts) | Dkt. 18-6 | ER 48 |
| Defendant Space Exploration Technologies Corporation's Notice of Motion and Motion to Dismiss and Notice of Joinder in the Republic of Argentina's Motion to Dismiss Complaint under F.R.C.P. 12(b)(1) and (6) (May 15, 2014) | Dkt. 17 | ER 52 |
| Complaint (Mar. 25, 2014) | Dkt. 1 | ER 55 |
| Docket Sheet | n/a | ER 105 |

QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Harold A. Barza (Bar No. 80888)
  halbarza@quinnemanuel.com
  Bruce E. Van Dalsem (Bar No. 124128)
  brucevandalsem@quinnemanuel.com
  Ian S. Shelton (Bar No. 264863)
  ianshelton@quinnemanuel.com
  Matthew S. Hosen (Bar No. 291631)
  matthosen@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017
Tel:   (213) 443-3000
Fax:   (213) 443-3100

*Of Counsel:*

DECHERT LLP
  Robert A. Cohen (admitted *pro hac vice*)
  robert.cohen@dechert.com
1095 Avenue of the Americas
New York, New York 10036
Tel:   (212) 698-3500
Fax:   (212) 698-3599

Attorneys for Plaintiff NML Capital, Ltd.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NML CAPITAL, LTD., | CASE NO. 14-CV-02262-SVW-Ex |
| Plaintiff, | **PLAINTIFF NML CAPITAL, LTD.'S NOTICE OF APPEAL** |
| vs. | Hon. Stephen V. Wilson |
| SPACE EXPLORATION TECHNOLOGIES CORP., aka SPACEX, a Delaware corporation; THE REPUBLIC OF ARGENTINA, a foreign state, including its *COMISIÓN NACIONAL DE ACTIVIDADES ESPACIALES*, aka CONAE, a political subdivision of the Argentine State; and DOES 1-10, | Complaint Filed:  March 25, 2014 |
| Defendants. | |

1    TO THE CLERK OF THE COURT AND ALL PARTIES OF RECORD:

2    NOTICE IS HEREBY GIVEN that Plaintiff NML Capital, Ltd. ("NML")

3  hereby appeals to the United States Court of Appeals for the Ninth Circuit from the

4  Order dismissing the case without prejudice entered on March 6, 2015 (Dkt. 51), the

5  Order denying as moot NML's motion for leave to serve discovery prior to

6  conducting a Rule 26(f) conference entered on March 5, 2015 (Dkt. 50), as well as

7  any and all interlocutory rulings, decisions and orders that gave rise to the denial of

8  discovery and the dismissal of the case without prejudice. A true and accurate copy

9  of the Order dismissing the case without prejudice is attached as Exhibit A. A true

10  and accurate copy of the Order denying as moot NML's motion for leave to serve

11  discovery prior to conducting a Rule 26(f) conference is attached as Exhibit B.

12    Pursuant to Ninth Circuit Rule 3-2, a Representation Statement identifying all

13  parties to the action, along with the names, addresses, and telephone numbers of

14  their respective counsel, is attached as Exhibit C.

15

16  DATED:  March 24, 2015          QUINN EMANUEL URQUHART &
                                     SULLIVAN, LLP
17                                     Harold A. Barza
18                                     Bruce E. Van Dalsem
                                       Ian S. Shelton
19                                     Matthew S. Hosen
20

21                                By
22
23                                   _____
                                     Harold A. Barza
24
25                                   Attorneys for Plaintiff-Appellant
                                     NML Capital, Ltd.
26

27

28

---

-1-                          Case No. 14-CV-02262-SVW-Ex
NOTICE OF APPEAL

1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
     Harold A. Barza (Bar No. 80888)
2    halbarza@quinnemanuel.com
     Bruce E. Van Dalsem (Bar No. 124128)
3    brucevandalsem@quinnemanuel.com
     Ian S. Shelton (Bar No. 264863)
4    ianshelton@quinnemanuel.com
     Matthew S. Hosen (Bar No. 291631)
5    matthosen@quinnemanuel.com
   865 South Figueroa Street, 10th Floor
6  Los Angeles, California 90017-2543
   Telephone: (213) 443-3000
7  Facsimile: (213) 443-3100

8  *Of Counsel*:

9  DECHERT LLP
     Robert A. Cohen (admitted *pro hac vice*)
10   robert.cohen@dechert.com
   1095 Avenue of the Americas
11 New York, New York 10036
   Telephone: (212) 698-3500
12 Facsimile: (212) 698-3599

13 Attorneys for Plaintiff NML Capital, Ltd.

14             UNITED STATES DISTRICT COURT

15             CENTRAL DISTRICT OF CALIFORNIA

16

17 NML CAPITAL, LTD.,                        CASE NO. 14 CV 02262-SVW-Ex

18         Plaintiff,                        Hon. Stephen V. Wilson

19     vs.                                   **PLAINTIFF NML CAPITAL,
                                             LTD.'S NOTICE OF MOTION
20 SPACE EXPLORATION                         AND MOTION FOR LEAVE TO
   TECHNOLOGIES CORP., aka                   SERVE DISCOVERY PRIOR TO
21 SPACEX, a Delaware corporation; THE       RULE 26(f) CONFERENCE**
   REPUBLIC OF ARGENTINA, a foreign
22 state, including its *COMISION*
   *NACIONAL DE ACTIVIDADES*                 Hearing date: March 9, 2015
23 *ESPACIALES*, aka CONAE, a political
   subdivision of the Argentine State; and   Hearing time: 1:30 p.m.
24 DOES 1-10,
                                             Hearing location: Courtroom No. 6
25         Defendants.
                                             Before: Hon. Stephen V. Wilson
26

27

28

## <u>NOTICE OF MOTION</u>

PLEASE TAKE NOTICE that on March 9, 2015, at 1:30 p.m., before the Honorable Stephen V. Wilson, plaintiff NML Capital, Ltd. ("NML") will, and hereby does, move pursuant to Local Rule 6-1 and Federal Rules of Civil Procedure 26(d)(1), 34(b)(2) and 45, for an order granting NML leave to take limited discovery before the parties have met and conferred pursuant to Rule 26(f), Fed.R.Civ.P. The proposed discovery, attached hereto as Exhibits 5 through 9 to the declaration of Harold Barza, is directed to defendants Space Exploration Technologies Corp. ("SpaceX") and the Republic of Argentina ("Argentina") (collectively, "Defendants"). No third party discovery is requested. This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on January 28, 2015.

Argentina, through its national space agency, the *Comisión Nacional de Actividades Espaciales* (the "CONAE"), has contracted with SpaceX to launch Argentine-owned satellites into space on two different dates using rockets and launch equipment owned and operated by SpaceX (the "Launch Services Rights"). NML brought this creditor's suit on March 26, 2014, to execute on these Launch Services Rights, and thus far, Defendants have refused NML's requests to engage in a Rule 26(f) conference to develop a proposed discovery plan, on the improper ground that such a conference is premature because the Court has not yet ruled on Argentina's Motion to Dismiss. Given the substantial amount of lead time associated with preparing for a commercial satellite launch, it is critical that NML begin marketing the Launch Services Rights associated with both launches as soon as possible. To do so, obtaining certain information about the launches from the Defendants is critical because the value of these Launch Services Rights will diminish with the passage of time. Accordingly, good cause exists to permit NML to serve discovery before the parties hold their Rule 26(f) conference.

01998.23618/6494157.2

-1-
PLAINTIFF NML CAPITAL, LTD.'S NOTICE OF MOTION AND MOTION FOR LEAVE TO SERVE DISCOVERY PRIOR TO RULE 26(f) CONFERENCE

ER 18

1    This motion is based on the accompanying Memorandum of Points and

2  Authorities, and Declarations of Harold A. Barza and Keith J. Volkert, the pleadings

3  and other papers on file in this action, any evidence and argument presented at the

4  hearing on Motion to Dismiss and any matters of which the Court may take judicial

5  notice.

6

7

8  DATED: February 9, 2015            QUINN EMANUEL URQUHART &
                                       SULLIVAN, LLP
9

10

11                                  By _____

12                                     Harold A. Barza

13                                     Bruce E. Van Dalsem
                                       Ian S. Shelton
14                                     Matthew S. Hosen
                                       Attorneys for Plaintiff NML Capital, Ltd.
15

16

17

18

19

20

21

22

23

24

25

26

27

28

01998.23618/6494157.1

-2-
PLAINTIFF NML CAPITAL, LTD.'S NOTICE OF MOTION AND MOTION FOR LEAVE TO SERVE
DISCOVERY PRIOR TO RULE 26(f) CONFERENCE

ER 19

# MEMORANDUM OF POINTS AND AUTHORITIES

## Preliminary Statement

Plaintiff NML respectfully requests that the Court grant leave for it to serve limited discovery prior to the parties conducting a Rule 26(f) conference. Such relief may be granted upon a showing of good cause and good cause exists for the following reasons:

*First*, Defendants have refused to participate in a Rule 26(f) conference because of the pendency of their Motion to Dismiss. The pendency of that motion is not an appropriate reason to refuse to participate in a Rule 26(f) conference;

*Second*, by improperly refusing to participate in a Rule 26(f) conference, Defendants have unilaterally imposed a stay of discovery because under the applicable rules, discovery may not be served until such a conference has been held;

*Third*, the two launches that are the subject of this action are scheduled to occur in September 2015 and September 2016, respectively. Unless NML's claims are resolved sufficiently in advance of both launches so that the contractual rights owned by CONAE may be marshaled and sold, the value of the Launch Services Rights might be forever lost; and

*Fourth*, in order to effectively levy on the Launch Services Rights, NML needs basic and limited discovery from the Defendants. The proposed discovery is for a proper purpose and is narrowly tailored.[1]

---

[1] In order to apply the proceeds of the sale of the Launch Services Rights to its judgments, NML must obtain a judgment on its creditor's suit. C.C.P. § 708.280(b); Fed. R. Civ. P. 69. The proposed discovery is necessary so that NML may promptly move for summary judgment and/or the appointment of a receiver to marshal and sell the subject assets (the "Sale Motion"). For example, NML seeks the contract(s) between SpaceX and CONAE upon which it seeks to execute. NML's informal request to produce the contract(s) has been refused. (Letter of July 21, 2014, Exh. 2 to Barza Dec.)

-1-

PLAINTIFF NML CAPITAL, LTD.'S NOTICE OF MOTION AND MOTION FOR LEAVE TO SERVE
DISCOVERY PRIOR TO RULE 26(f) CONFERENCE

# FACTUAL BACKGROUND

### A.    NML's Claims In This Action

NML obtained judgments against Argentina in the Southern District of New York totaling over $1.7 billion. (*See e.g.*, Dkt 1, Exhibits A and B.) Argentina refuses to pay the judgments, so NML must attempt to locate Argentine assets and execute upon them. In this proceeding, NML seeks to partially satisfy its judgments by executing on CONAE's valuable commercial Launch Services Rights to be provided by SpaceX. This action is a creditor's suit authorized by California Code of Civil Procedure § 708.280 and Rule 69, F.R.Civ.P. against the holder of those Argentine assets, defendant SpaceX. NML seeks to levy on CONAE's rights to use SpaceX's rockets and launch services at Vanderberg Air Force Base in September 2015 and September 2016, sell them to another qualified customer, and apply the proceeds to its judgments.

### B.    Defendants' Refusal To Participate In A Rule 26(f) Conference

This action was filed on March 26, 2014. (Dkt. 1.) On May 15, 2014, Argentina filed a motion to dismiss pursuant to Rule 12(b)(1) and (6) and SpaceX joined in the motion. (Dkt. 17, 18.) NML filed its opposition on June 5, 2014 and Argentina filed its reply on June 16, 2014. (Dkt. 30, 31.) The Motion to Dismiss was heard on June 30, 2014 and remains pending. (Dkt. 39.)

On July 4, 2014, NML's counsel requested a Rule 26(f) conference with Defendants' counsel to develop a proposed discovery plan. (E-mail chain from July 4-11, 2014, Exh. 1 to Barza Decl. at 6 ("Counsel, Per FRCP 26(f), we would like to have a conference early next week to discuss discovery going forward. Please let us know your availability at your earliest convenience.").) On July 11, 2014, counsel for Defendant Argentina refused NML's request because the Motion to Dismiss was pending. (*Id.* at 5. ("I write in response to your request that the parties convene a Rule 26(f) conference. In light of the motion to dismiss that is currently sub judice, we think it is premature to consider whether to convene a Rule

1   26(f) conference.").)  Counsel for all parties attended a telephonic conference on

2   July 17, 2014, a summary of which is memorialized in a July 21, 2014 letter from

3   NML's counsel to Defendants' counsel.  (Letter of July 21, 2014, Exh. 2 to Barza

4   Dep.)  During the telephonic conference, Defendants' counsel stated they were

5   unwilling to attend a Rule 26(f) conference until after the Court ruled on the Motion

6   to Dismiss.  (*Id.* at 8.)  Also during this telephonic conference, NML requested that

7   Defendants produce the launch services contract(s) under seal.  (*Id*. at 9.)

8   Defendants' counsel refused to do so.  (*Id.*; *see also* letter of July 28, 2014, Exh. 3 to

9   Barza Dep.)

10       In January of this year, realizing that time was of the essence for it to be able

11   to effectively execute on the Launch Services Rights because of the approaching

12   launch dates, NML's counsel wrote to Defendants' counsel, on January 21, 2015,

13   asking Defendants to agree to the conduct of limited discovery, consisting of a set of

14   Interrogatories and Requests for Production to each Defendant, and one 30(b)(6)

15   deposition of SpaceX. (E-mail of January 21, 2015, Exh. 4 to Barza Dep.)  The

16   email was accompanied by the actual proposed discovery requests consisting of

17   Interrogatories, Requests for Production and a 30(b)(6) notice directed to SpaceX.

18   (Proposed Interrogatories, Requests for Production, and 30(b)(6) notice, Exhs. 5-9 to

19   Barza Dep.) The parties met and conferred telephonically on January 28, 2015,

20   regarding NML's request to conduct this limited discovery, but Defendants are

21   unwilling to agree to conduct any discovery prior the Court's ruling on the Motion

22   to Dismiss.  (Barza Decl, ¶ 5.)

23       To date, neither Argentina nor SpaceX has produced the launch services

24   contract(s) at issue, NML has not seen the launch services contract(s), and neither

25   defendant has agreed to a 26(f) conference.  (Barza Decl, ¶ 2.)

26      **C.**    **NML's Need To Expeditiously Prosecute This Case**

27       If NML prevails on its claims in this case, it will be entitled to sell the Launch

28   Services Rights and apply the proceeds to partially satisfy its judgments against

1 Argentina. (C.C.P. § 708.280.) Due to the complexities involved in launching a

2 satellite into orbit, marketing and selling contractual rights to launch services

3 requires months of preparation. (Volkert Decl., ¶¶ 6-7.) Satellites are designed for

4 particular orbits, and a potential buyer's satellite may need to satisfy the weight and

5 space capacities of the SpaceX rocket. (*Id.*, ¶ 6.)

6       Given the substantial amount of lead time associated with launching a

7 commercial satellite, discovery should not be delayed any longer. The first launch

8 is scheduled to occur a mere seven months from now, and the second launch is

9 scheduled to occur in nineteen months. Preparations for a satellite launch campaign

10 normally begin *eighteen to twenty-four months* prior to the opening of the scheduled

11 launch period. (*Id.*) Fifteen months before launch, the satellite's parameters, such

12 as its mass, and desired orbital parameters, such as the size, shape and orientation of

13 the desired orbit, are usually delivered to the launch service provider, in addition to

14 other information. (*Id.*) The launch service provider uses data to assess the

15 compatibility of the satellite with the launch vehicle and, if needed, adjustments are

16 made to the launch vehicle or satellite. (*Id.*) In order to complete this critical

17 compatibility assessment, the launch service provider will typically communicate

18 with the holder of the launch service rights on a regular basis, beginning at around

19 fifteen months before launch, regarding various technical issues that may require

20 redesigning the satellite. (*Id.*) If the satellite is found to be compatible with the

21 launch vehicle, then the time required to prepare for the satellite launch can be less

22 than six months. (*Id.*, ¶ 7.)

23       While NML's ability to sell the Launch Services Rights has been impaired by

24 the passage of time, NML has reason to believe that execution and sale is still

25 possible due to the current shortage of launch slots and the desirability of the orbit.

26 (*Id.*, ¶¶ 4, 9.) Assuming a purchaser's satellite had parameters similar to

27 Argentina's satellite, there should be sufficient time for the purchaser and SpaceX to

28 prepare for a September 2015 launch if execution occurred in the near future. (*Id.*,

¶¶ 4, 10.) However, immediate discovery is necessary to allow a sale of the Launch Services Rights related to the September 2015 launch to occur.

According to SpaceX, the contract(s) between CONAE and SpaceX are fully binding. (Reporter's Transcript, 6/30/14, Dkt. 41 at 6:3-21.) Argentina has also confirmed that the "Launch Services Contract at issue in this litigation remains in full force and effect." (Letter of July 28, 2014, Exh. 3 to Barza Decl.). The first launch is scheduled to occur in September 2015, and the second to occur in September 2016, both from Vandenberg Air Force Base. (Volkert Decl., ¶ 4.)

If discovery is delayed any longer, it is likely that NML will be unable to obtain a judgment in this action sufficiently in advance of the first launch in September 2015 to enable it to timely levy on and sell its Launch Services Rights so a receiver can sell them. And given the typical eighteen to twenty-four month window associated with a normal satellite launch campaign, any further delay in discovery may well impair the value of—and NML's ability to sell—the Launch Services Rights associated with the second launch in September 2016.

## ARGUMENT

## I.   THE COURT MAY PERMIT DISCOVERY PRIOR TO A RULE 26(f) CONFERENCE UPON A SHOWING OF GOOD CAUSE

Federal Rule of Civil Procedure 26(d)(1) provides that a party may not seek discovery before the 26(f) conference except "[w]hen authorized by these rules, by stipulation, or by court order." Discovery prior to a Rule 26(f) conference is justified upon a showing of "good cause." *Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 276-77 (N.D. Cal. 2002); *UMG Recordings, Inc. v. Does*, 2008 WL 4104214, *4 (N.D. Cal. Sept. 3, 2008) ("[i]n the Ninth Circuit, courts use the 'good cause' standard to determine whether discovery should be allowed to proceed prior to a Rule 26(f) conference."). Discovery prior to a Rule 26(f) conference will be ordered where the need for such discovery "in consideration of the administration of justice, outweighs the prejudice to the responding party." (*Id.*; *Zynga Game*

1 | Fed. R. Civ. P. 12(b)(6) would stay discovery, the Rules would contain a provision
2 | to that effect.").

3 |      In the absence of the requested relief, solely due to the passage of time,
4 | NML will lose its opportunity to seek to execute on the Launch Services Rights for
5 | the first launch in September 2015, and its ability to seek to execute on the Launch
6 | Services Rights for the second launch in September 2016 will likely be impaired.
7 | Under these circumstances, good cause exists to permit NML to serve discovery
8 | prior to the parties' Rule 26(f) conference.

9 | **Conclusion**

10 |      For the foregoing reasons, the NML respectfully request that the Court grant
11 | this motion.

12 |

13 | DATED: February 9, 2015      QUINN EMANUEL URQUHART &
14 |      SULLIVAN, LLP

15 |

16 |

17 |      By _Harold Barza_
     Harold A. Barza
18 |      Bruce E. Van Dalsem
     Ian S. Shelton
19 |      Matthew S. Hosen
20 |      Attorneys for Plaintiff NML Capital, Ltd.

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

01998.23618/6494157.1

-9-

PLAINTIFF NML CAPITAL, LTD.'S NOTICE OF MOTION AND MOTION FOR LEAVE TO SERVE
DISCOVERY PRIOR TO RULE 26(f) CONFERENCE

1 | QUINN EMANUEL URQUHART & SULLIVAN, LLP
   Harold A. Barza (Bar No. 80888)
2 |    halbarza@quinnemanuel.com
   Bruce E. Van Dalsem (Bar No. 124128)
3 |    brucevandalsem@quinnemanuel.com
   Ian S. Shelton (Bar No. 264863)
4 |    ianshelton@quinnemanuel.com
   Matthew S. Hosen (Bar No. 291631)
5 |    matthosen@quinnemanuel.com
865 South Figueroa Street, 10th Floor
6 | Los Angeles, California 90017-2543
Telephone: (213) 443-3000
7 | Facsimile: (213) 443-3100

8 | *Of Counsel:*

9 | DECHERT LLP
   Robert A. Cohen (admitted *pro hac vice*)
10 |    robert.cohen@dechert.com
1095 Avenue of the Americas
11 | New York, NY 10036
Telephone: (212) 698-3500
12 | Facsimile: (212) 698-3599

13 | Attorneys for Plaintiff NML Capital, Ltd.

14 |

15 | **UNITED STATES DISTRICT COURT**

16 | **CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| NML CAPITAL, LTD., | CASE NO. 14 CV 02262-SVW-Ex |
| Plaintiff, | Hon. Stephen V. Wilson |
| vs. | **DECLARATION OF KEITH VOLKERT** |
| SPACE EXPLORATION TECHNOLOGIES CORP., aka SPACEX, a Delaware corporation; THE REPUBLIC OF ARGENTINA, a foreign state, including its *COMISIÓN NACIONAL DE ACTIVIDADES ESPACIALES*, aka CONAE, a political subdivision of the Argentine State; and DOES 1-10, | Filed concurrently with (1) Notice of Motion and Motion for Leave to Serve Discovery Prior to Rule 26(f) Conference and (2) Declaration of Harold A. Barza |
| Defendants. | Hearing Date: March 9, 2015<br>Time: 1:30 p.m.<br>Courtroom: 6 |
| | Complaint Filed: March 25, 2014 |

5.     To prepare to make this declaration, I reviewed the publically available SpaceX flight manifest posted on *http://www.spacex.com/missions* and the publically available CEOS Database on *http://database.eohandbook.com/database/missiontable.aspx*.

6.     Preparations for a satellite launch normally begin eighteen to twenty-four months prior to the opening of the scheduled launch period (the launch period is a three-month time period, as customary in the industry, in which the launch services provider agrees to launch a launch services right holder's satellite). Normally, at around fifteen months before launch, the satellite's parameters, such as its mass, and desired orbital parameters for final orbit placement for low earth orbit missions, are delivered to the launch services provider. Additionally, around this time, the launch services provider is given additional information, such as: finite element models (FEM), which are used in complex computations to predict effects on the satellite caused by a variety of sources, such as vibrations from the launch vehicle's engine during liftoff; a thermal model of the satellite which identifies specific satellite hardware that may be adversely affected by temperature; and, a physical representation or computer aided design (CAD) model to verify clearances inside the launch vehicle fairing (a cone-shaped compartment at the front of a rocket which protects the rocket's payload during launch). The reason that these inputs are delivered fifteen months prior to launch is so that the launch services provider can assess the compatibility of the satellite with the launch vehicle and, if needed, cause any adjustments to be made to the launch vehicle or satellite. To make this compatibility assessment, the launch services provider will communicate with the holder of the launch services rights on a regular basis, beginning at around fifteen months before

launch, regarding various technical issues that can arise that may require redesigning the satellite.

7.     If after analyzing the satellite and orbital parameters the satellite is found to be compatible with the launch vehicle, then the time required to prepare for the satellite launch can be six months or less. Thus, determining that the satellite is compatible with the launch vehicle is one of the most important milestones for a holder of launch services rights to accomplish. In order for a potential purchaser of launch services rights to determine whether the satellite it seeks to launch is compatible with the applicable launch vehicle, the purchaser would need to be informed as to the spatial and acceleration limitations imposed on its satellite by the launch vehicle.

8.     Prior to the start of the launch period, it is common for a launch services provider to substitute the launch vehicle originally contracted for with another launch vehicle due to compatibility or schedule issues with the satellite, or for other reasons. Launch vehicles, such as the Falcon 9 rocket, are fairly standardized and can be used to launch a variety of satellites with only minor alternations to the launch vehicle.

9.     The Vandenberg Air Force Base launch site is used to launch satellites into polar, low Earth orbits via SpaceX's Falcon 9 rockets. There are several potential uses for polar orbits, including oil and gas exploration, weather monitoring, and Earth mapping. Additionally, the number of launch services providers that will launch privately-owned or U.S. government satellites into polar orbits is extremely limited. Thus, there is likely market demand for launch services rights that entitle the holder to a launch at the Vandenberg Air Force Base.

# EXHIBIT 5

1 │ QUINN EMANUEL URQUHART & SULLIVAN, LLP
   Harold A. Barza (Bar No. 80888)
2    halbarza@quinnemanuel.com
   Bruce E. Van Dalsem (Bar No. 124128)
3    brucevandalsem@quinnemanuel.com
   Ian S. Shelton (Bar No. 264863)
4    ianshelton@quinnemanuel.com
   Matthew S. Hosen (Bar No. 291631)
5    matthosen@quinnemanuel.com
   865 South Figueroa Street, 10th Floor
6  Los Angeles, California 90017-2543
   Telephone: (213) 443-3000
7  Facsimile: (213) 443-3100

8 │ *Of Counsel*:

9 │ DECHERT LLP
   Robert A. Cohen (admitted *pro hac vice*)
10   robert.cohen@dechert.com
   1095 Avenue of the Americas
11 New York, New York 10036
   Telephone: (212) 698-3500
12 Facsimile: (212) 698-3599

13 │ Attorneys for Plaintiff NML Capital, Ltd.

14 │                    UNITED STATES DISTRICT COURT

15 │                    CENTRAL DISTRICT OF CALIFORNIA

16 │

17 │ NML CAPITAL, LTD.,                          CASE NO. 14 CV 02262-SVW-Ex

18 │            Plaintiff,                       Hon. Stephen V. Wilson

19 │      vs.                                    **PLAINTIFF'S FIRST REQUEST
                                                 FOR PRODUCTION TO
20 │ SPACE EXPLORATION                           DEFENDANT REPUBLIC OF
   TECHNOLOGIES CORP., aka                       ARGENTINA**
21 │ SPACEX, a Delaware corporation; THE
   REPUBLIC OF ARGENTINA, a foreign
22 │ state, including its *COMISION
   NACIONAL DE ACTIVIDADES
23 │ ESPACIALES*, aka CONAE, a political
   subdivision of the Argentine State; and
24 │ DOES 1-10,

25 │            Defendants.

26 │

27 │

28 │
01998.23618/6453415.1
                                                 **EXHIBIT 5**
                                                 **PAGE 12**

**REQUEST FOR PRODUCTION NO. 6:**

Each LAUNCH SERVICES CONTRACT, in its originally executed form and ANY amended form.

**REQUEST FOR PRODUCTION NO. 7:**

ALL DOCUMENTS REFERRING OR RELATING TO amendments to ANY LAUNCH SERVICES CONTRACT.

**REQUEST FOR PRODUCTION NO. 8:**

DOCUMENTS sufficient to show ALL payments made by Argentina to SPACEX in consideration of ANY LAUNCH SERVICES CONTRACT.

**REQUEST FOR PRODUCTION NO. 9:**

DOCUMENTS REFERRING OR RELATING TO ALL payments made by CONAE to SPACEX in consideration of ANY LAUNCH SERVICES CONTRACT.

**REQUEST FOR PRODUCTION NO. 10:**

DOCUMENTS REFERRING OR RELATING TO ALL payments and/or refunds made by SPACEX to Argentina and/or CONAE.

**REQUEST FOR PRODUCTION NO. 11:**

All DOCUMENTS that constitute or reference ANY technical models provided by YOU to SPACEX, including, but not limited to, finite element models, structural models, mass models, fuel models, and thermal models.

**REQUEST FOR PRODUCTION NO. 12:**

01998.23618/6453415.1
8
15453440.5.LITIGATION
PLAINTIFF'S FIRST REQUEST FOR PRODUCTION TO DEFENDANT REPUBLIC OF ARGENTINA

**EXHIBIT 5
PAGE 20**

ER 31

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

---

THE HONORABLE STEPHEN V. WILSON, U.S. DISTRICT JUDGE PRESIDING

NML CAPITAL LIMITED, ET AL.,    )
                                )
          Plaintiff,            )
                                )
    vs.                         )        No. CV 14-2262-SVW
                                )
                                )
SPACE EXPLORATION TECHNOLOGIES, )
CORP., ET AL.,                  )
                                )
          Defendants.           )
_____)

REPORTER'S TRANSCRIPT OF PROCEEDINGS

LOS ANGELES, CALIFORNIA

MONDAY, JUNE 30, 2014

_____

DEBORAH K. GACKLE, CSR, RPR
United States Courthouse
312 North Spring Street, Room 402A
Los Angeles, California 90012
(213) 620-1149

U.S. DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
COURT REPORTER DEBORAH K. GACKLE

 1  Republic of Argentina.

 2          Who speaks for --

 3          MR. SLATER:  Your Honor, Matthew Slater.  I'll be

 4  speaking on behalf of the republic.

 5          THE COURT:  Yes.  Now, the contract with SpaceX, I

 6  want to get a better understanding of exactly what's involved.

 7          My understanding is that it was a contract to reserve

 8  a spot with SpaceX to launch a satellite for Argentina; is that

 9  correct?

10          MR. SLATER:  Your Honor, let me preface this by

11  saying I have not seen the contract, but my understanding is

12  slightly different --

13          THE COURT:  How is it that you haven't seen the

14  contract?

15          MR. SLATER:  I'm saying I personally have not.

16          THE COURT:  Who has seen it?

17          MR. SLATER:  Other counsel have --

18          THE COURT:  I want to speak to the -- would you take

19  the lectern and identify yourself.

20          MR. DONOVAN:  Your Honor, Bill Donovan for SpaceX.

21          THE COURT:  Okay.  Yes.  Can you tell me -- and, of

22  course, this is subject to my examination, but at least I want

23  to get your interpretation -- is that agreement between SpaceX

24  and Argentina an agreement where, for a fee from Argentina to

25  SpaceX, SpaceX reserved a use of its rocket for launching a

```
 1   satellite for Argentina?

 2            MR. DONOVAN:  That's correct.

 3            THE COURT:  And when the rocket actually is launched

 4   for the satellite, is there an additional fee?  In other words,

 5   the fee that Argentina paid, was that just to reserve the right

 6   to launch the rocket, or was it a fee that encompassed, sort

 7   of -- what's the term? -- I can't think of the term, but was it

 8   to allow Argentina to actually use the rocket?

 9            MR. DONOVAN:  Correct, Your Honor.  My understanding

10   is the intent was to actually pay a fee, not just to reserve

11   the right but actually launch the satellites.

12            THE COURT:  Is that in the contract?  Was there any

13   mechanism whereby the Republic of Argentina could change its

14   mind, withdraw?

15            MR. DONOVAN:  I believe the answer is no, Your Honor.

16            THE COURT:  Do you know that for a --

17            MR. DONOVAN:  I don't have the contract in front of

18   me; some of the lawyers for the Republic may.

19            THE COURT:  Yes, but your sense of it is that it was

20   a binding agreement.

21            MR. DONOVAN:  Absolutely.

22            THE COURT:  I see.  And no further monies were due

23   and payable at a later time.

24            MR. DONOVAN:  There may be additional monies that are

25   due and payable under the contract, but the contract is
```

1    explicit that the rights are given just to Argentina and no

2    other entity, and it's not assignable.

3            THE COURT:  I see.  Stay there for a second.  Thank

4    you.

5            Let me turn back to the Republic of Argentina.

6            MR. SLATER:  Yes, Your Honor.

7            THE COURT:  Was Argentina to use the satellite

8    strictly for governmental purposes?  In other words, for

9    accumulating data, weather information, whatever, for the

10   benefit of the Republic of Argentina and its citizens, or was

11   there a private purpose?

12           MR. SLATER:  No, this was -- again, as in the case

13   with the Space*port* case, a cooperative venture with other

14   foreign governments for governmental purposes.

15           THE COURT:  I see.  Okay.  Thank you.

16           Let me turn now to NML.  Some of the issues are

17   already decided, so we need not review them.

18           The two issues that are of concern are the

19   applicability of the so-called core test and whether there are

20   disputed facts involved in that test and what the disputed

21   facts may be.  And the other question, of course, is "used for

22   commercial purposes," and the question that the court has is,

23   first, if the satellite itself was to be used for governmental

24   purposes, how could it possibly meet the test of being used for

25   commercial purposes in the United States?  Now, of course I am

```
 1    aware of the reference in the Supreme Court case to the Army
 2    contract for boots and so forth, but looking at the statute
 3    itself, the question I have, in part, is can the statute be
 4    read to require a commercial purpose -- a commercial use, and
 5    is the term "purpose" in the statute included so as to limit
 6    the ability of a party to label something a commercial use when
 7    it isn't a commercial use or vice versa?  And then, of course,
 8    the second part is -- the cases say it has to be used for
 9    commercial purposes in the United States, and the agreement is
10    for a use in the future, arguably.  That is the launching of
11    the satellites in 2015 and 2016.
12            So how could that background meet the test of having
13    been used for commercial purpose in the United States?  Of
14    course, I realize you don't have to -- wouldn't have to reach
15    the commercial purpose test if the court found that the -- that
16    core test wasn't met.  But let's pass on the core test for the
17    minute and go to the commercial purpose test.
18            MR. BARZA:  Yes, Your Honor.  Thank you.
19            I think there are two threads that you were raising
20    for me to address, and the first one is a temporal point:  Do
21    they have to be using it now as opposed to in the future, and I
22    would submit that they are using it right now.  They're holding
23    active executory contract rights to do a launch in 2015, but
24    that gives them certain rights right now that they are
25    exercising.  One of those is a restriction on SpaceX's ability
```

1  to offer that launch site to someone else.  Also, we understand

2  there are ongoing interactions between SpaceX and Argentina,

3  and I think discovery would show that.

4        THE COURT:  What would it show it?

5        MR. BARZA:  I believe there are ongoing activities

6  between them related to the launch:  The exchange of

7  information, talking about launch sites, weights, things like

8  that, and I think that's an ongoing use of those contractual

9  rights, and discovery, I think, would show that.  Further, I

10 think holding those rights now maintaining that slot is an

11 active use.

12       In addition, there are cases indicating that you

13 don't have to be using the asset every minute to qualify for

14 commercial use.  There's a case we cite from the Second Circuit

15 by Judge Cabranes.  It's the NML case, I think from 2012.  That

16 involved an attachment of an account that was held by an

17 Argentinian subdivision that was using it to buy scientific

18 equipment in the states for shipment to people overseas, and

19 Judge Griesa in the district court held that that was a

20 commercial use because they were using the funds in the account

21 to buy things, and the Second Circuit affirmed that, and it's

22 one of the cases cited.

23       THE COURT:  What about the -- at least facial

24 disconnect between the use of the satellite for governmental

25 purposes and the notion that that still could be used for

1   DONALD R. BROWN (Bar No. CA 156548)
    E-mail: dbrown@manatt.com
2   CARL L. GRUMER (Bar No. CA 066045)
    E-mail: cgrumer@manatt.com
3   MANATT, PHELPS & PHILLIPS, LLP
    11355 West Olympic Boulevard
4   Los Angeles, CA 90064-1614
    Telephone: (310) 312-4000
5   Facsimile: (310) 312-4224

6   JONATHAN I. BLACKMAN (*Pro Hac Vice* to be filed)
    E-mail: jblackman@cgsh.com
7   CARMINE D. BOCCUZZI (*Pro Hac Vice* to be filed)
    E-mail: cboccuzzi@cgsh.com
8   MICHAEL M. BRENNAN (*Pro Hac Vice* to be filed)
    E-mail: mbrennan@cgsh.com
9   CLEARY GOTTLIEB STEEN & HAMILTON LLP
    One Liberty Plaza
10  New York, NY 10006
    Telephone: (212) 225-2000
11  Facsimile: (212) 225-3999

12  Attorneys for *Defendant*
    THE REPUBLIC OF ARGENTINA
13

14                  UNITED STATES DISTRICT COURT

15                       CENTRAL DISTRICT

16

17  NML CAPITAL, LTD.,                    No. 14 CV 02262-SVW-Ex

18              Plaintiff,                [*Hon. Stephen V. Wilson*]

19      vs.                              **NOTICE OF MOTION AND**
                                         **MOTION BY THE REPUBLIC OF**
20  SPACE EXPLORATION                    **ARGENTINA TO DISMISS**
    TECHNOLOGIES CORP., aka              **COMPLAINT UNDER F.R.C.P**
21  SPACEX, a Delaware corporation;      **12(b)(1) AND (6); MEMORANDUM**
    THE REPUBLIC OF ARGENTINA, a         **OF POINTS AND AUTHORITIES**
22  foreign state, including its *COMISIÓN*
    *NACIONAL DE ACTIVIDADES*            [Filed concurrently with Declarations of
23  *ESPACIALES*, aka CONAE, a political  Conrado F. Varotto and Donald R.
    subdivision of the Argentine State; and  Brown]
24  DOES 1-10,
                                         Hearing Date:    June 30, 2014
25              Defendants.              Time:            1:30 p.m.
                                         Courtroom:       6
26
                                         Compl. filed:    March 25, 2014
27

28

MANATT, PHELPS &
PHILLIPS, LLP                                   REP. OF ARGENTINA NOTICE OF
ATTORNEYS AT LAW                               MOTION TO DISMISS, 12(b)(1) AND (6)
LOS ANGELES

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on June 30, 2014, at 1:30 p.m., or as soon thereafter as the matter may be heard, in Courtroom 6 of the United States Courthouse, 312 N. Spring Street, Los Angeles, California, defendant the Republic of Argentina (the "Republic") will, and hereby does, move under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) to dismiss the Complaint of plaintiff NML Capital, Ltd. ("NML") with prejudice on the following grounds.

First, NML's Complaint, which seeks to apply toward the satisfaction of NML's judgments against the Republic the purported rights in a launch services contract of the Republic's space agency, Comisión Nacional de Actividades Espaciales ("CONAE"), does not adequately allege that CONAE, an "agency or instrumentality" under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. Section 1603(b), is liable for the Republic's debts or that an exception to CONAE's jurisdictional immunity exists. Second, even if CONAE were liable for the Republic's debts and subject to jurisdiction here, the Complaint fails to allege the existence of any CONAE property that is subject to execution under FSIA Section 1610(a), *i.e.*, CONAE property in the United States that CONAE is using for a commercial activity in the United States. The Complaint thus fails to allege a basis for the Court to award NML its requested relief.

This Motion is made following the conference of counsel pursuant to L.R. 7-3 that took place May 8 and 12, 2014. During that conference, the parties discussed the grounds for this Motion, and NML's counsel indicated that they would oppose the relief requested.

This Motion is based upon this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, NML's Complaint, the concurrently filed Declarations of Conrado F. Varotto and Donald R. Brown and the exhibits thereto, and all such further oral and documentary evidence and argument as may be presented to the Court at or before the hearing on this motion.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

1

REP. OF ARGENTINA NOTICE OF
MOTION TO DISMISS, 12(b)(1) AND (6)

ER 39

1

2
Dated: May 15, 2014           MANATT, PHELPS & PHILLIPS, LLP

3

4
By: /s/ Donald R. Brown

Donald R. Brown

5
Attorneys for *Defendant*
THE REPUBLIC OF ARGENTINA

6

7
CLEARY GOTTLIEB STEEN &
HAMILTON LLP

8
Jonathan I. Blackman
Carmine D. Boccuzzi

9
Michael M. Brennan
Attorneys for *Defendant*
THE REPUBLIC OF ARGENTINA

10

11

12
312250420.1

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2      REP. OF ARGENTINA NOTICE OF
MOTION TO DISMISS, 12(b)(1) AND (6)

1    DONALD R. BROWN (Bar No. CA 156548)
     E-mail: dbrown@manatt.com
2    CARL L. GRUMER (Bar No. CA 066045)
     E-mail: cgrumer@manatt.com
3    MANATT, PHELPS & PHILLIPS, LLP
     11355 West Olympic Boulevard
4    Los Angeles, CA 90064-1614
     Telephone: (310) 312-4000
5    Facsimile: (310) 312-4224

6

7    JONATHAN I. BLACKMAN (*Pro Hac Vice to be filed*)
     E-mail: jblackman@cgsh.com
     CARMINE D. BOCCUZZI (*Pro Hac Vice to be filed*)
8    E-mail: cboccuzzi@cgsh.com
     MICHAEL M. BRENNAN (*Pro Hac Vice to be filed*)
9    E-mail: mbrennan@cgsh.com
     CLEARY GOTTLIEB STEEN & HAMILTON
10   One Liberty Plaza
     New York, NY 10006
11   Telephone: (212) 225-2000
     Facsimile: (212) 225-3999

12

     Attorneys for *Defendant*
13   THE REPUBLIC OF ARGENTINA

14

15                 UNITED STATES DISTRICT COURT

                       CENTRAL DISTRICT
16

17

| | |
|---|---|
| 18   NML CAPITAL, LTD., | No. 14 CV 02262-SVW-Ex |
| 19          Plaintiff, | [*Hon. Stephen V. Wilson*] |
| 20    vs. | **DECLARATION OF CONRADO F. VAROTTO** |
| 21   SPACE EXPLORATION TECHNOLOGIES CORP., aka | [Filed concurrently with (1) Not. of Mot. and Mot. to Dismiss, and (2) Declaration of Donald R. Brown] |
| 22   SPACEX, a Delaware corporation; THE REPUBLIC OF ARGENTINA, a | |
| 23   foreign state, including its *COMISIÓN NACIONAL DE ACTIVIDADES* | Hearing Date:   June 30, 2014 |
| 24   *ESPACIALES*, aka CONAE, a political subdivision of the Argentine State; and | Time:          1:30 p.m. Courtroom:   6 |
| 25   DOES 1-10, | |
| 26         Defendants. | Compl. filed:    March 25, 2014 |

27

28

1   **DECLARATION OF CONRADO F. VAROTTO**

2   I, Conrado F. Varotto, declare as follows:

3   1.   I am the Executive and Technical Director of the Comisión

4   Nacional de Actividades Espaciales ("CONAE"), the Argentine agency in charge,

5   inter alia, of planning, executing and evaluating Argentina's national space program

6   for the peaceful use of space science and technology. As the Executive and

7   Technical Director of CONAE, my responsibilities are those of a typical CEO,

8   which include day-to-day executive and administrative tasks (such as hiring

9   personnel and approving contracts) and all actions necessary to fulfill CONAE's

10  purpose. I have personal knowledge of the facts set forth in this Declaration, and I

11  could and would competently testify to them if called as a witness.

12  2.   This submission is made in support of the Republic's Motion to

13  Dismiss NML Capital's Complaint for Creditor's Suit.

14  3.   I attach to this Declaration as Exhibit A the declaration I

15  submitted in connection with NML's attempt in this Court, in 2011, to seize

16  CONAE's immune sovereign satellite property, which was part of an

17  intergovernmental mission to collect scientific data concerning the Earth's oceans

18  salinity levels for distribution at no cost to the general public for the benefit of

19  mankind. *See NML Capital, Ltd. v. Spaceport Sys. Int'l, L.P.*, 788 F. Supp. 2d 1111

20  (C.D. Cal. 2011). Like the prior mission, the satellite property at issue in this action

21  is part of an intergovernmental effort, in this instance with Italy's space agency

22  Agenzia Spaziale Italiana ("ASI").

23  4.   Specifically, in the present mission, CONAE plans to integrate

24  two Argentine Microwaves Observation System ("SAOCOM") satellites into the

25  Italo-Argentine Satellite System for Emergency Management ("SIASGE"), for the

26  purpose of supplying information to facilitate environmental monitoring, land and

27  water resource management, and the prevention and management of natural and

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

1   DECLARATION OF CONRADO F.
VAROTTO

[NEWYORK 2896254_1]

ER 42

1   human-caused disasters, including floods, earthquakes, oil spills, and volcano

2   eruptions. The SAOCOM satellites will generate scientific data, including surface

3   soil moisture maps, crop-yield simulations, and flood and wheat head blight

4   forecasts. This data, which CONAE will distribute at no cost to the agricultural

5   sector and the general public, will have practical applications in areas ranging from

6   the agricultural sector to the prevention of loss of life and property in the event of

7   natural disasters.

8         5.    The mission represents the culmination of many years of

9   international cooperation, including among Argentina, Belgium, and Italy. Any

10   interference with the launch or CONAE's property risks rendering this tremendous

11   effort null, at great cost to all parties involved.

12         6.    I also attach as Exhibit B the declaration of Oleh Jachno, at the

13   time a lawyer for CONAE, which was submitted in the prior proceeding and

14   describes CONAE's structure and separate legal status from the Republic of

15   Argentina. CONAE's status and structure as an autarkic independent entity remain

16   the same, except that CONAE, which was previously under the supervision of the

17   Ministry of Foreign Affairs, now operates under the supervision of Ministry of

18   Planning and Infrastructure.

19

20         I declare under penalty of perjury under the laws of the United States

21   of America that the foregoing is true and correct.

22         Executed on May 15, 2014, in Buenos Aires, Argentina.

23

24

25                       CONRADO F. VAROTTO

26

27

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

[NEWYORK 2896254_1]

2       DECLARATION OF CONRADO F.
VAROTTO

# EXHIBIT A

Case 2:14-cv-02262-SVW-E Document 18-3 Filed 05/13/14 Page 296 of 406 Page ID #:132
Case 15-55448, 05/26/2015, ID: 9550383, DktEntry: 19-2, Page 35 of 106

Case 2:11-cv-03507-SJO-RZ   Document 29-2   Filed 05/02/11   Page 1 of 6   Page ID #:551

1   MANATT, PHELPS & PHILLIPS, LLP
    DONALD R. BROWN (Bar No. CA 156548)
2   E-mail: dbrown@manatt.com
    CARL L. GRUMER (Bar No. CA 066045)
3   E-mail: cgrumer@manatt.com
    VIRAL MEHTA (Bar No. CA 261852)
4   E-mail: vmehta@manatt.com
    11355 West Olympic Boulevard
5   Los Angeles, CA  90064-1614
    Telephone: (310) 312-4000
6   Facsimile: (310) 312-4224

7   CLEARY GOTTLIEB STEEN & HAMILTON LLP
    JONATHAN I. BLACKMAN (*Pro Hac Vice* filed)
8   E-mail: jblackman@cgsh.com
    CARMINE D. BOCCUZZI (*Pro Hac Vice* filed)
9   E-mail: cboccuzzi@cgsh.com
    SARA A. SANCHEZ (*Pro Hac Vice* filed)
10  E-mail: ssanchez@cgsh.com
    One Liberty Plaza,
11  New York, NY 10006
    Telephone: (212) 225-2000
12  Facsimile: (212) 225-3999

13  Attorneys for *Defendant*
    THE REPUBLIC OF ARGENTINA

14

15              UNITED STATES DISTRICT COURT

16              CENTRAL DISTRICT OF CALIFORNIA

17  NML CAPITAL, LTD.,                  No.  CV11-03507-SJO (RZx)

18              Plaintiff,              **Hon. S. James Otero**

19      vs.                            **DECLARATION OF CONRADO
                                       VAROTTO IN SUPPORT OF
20  SPACEPORT SYSTEMS                  DEFENDANT THE REPUBLIC OF
    INTERNATIONAL, L.P., a Delaware    ARGENTINA'S OPPOSITION TO
21  limited partnership; THE REPUBLIC  PLAINTIFF'S APPLICATION FOR
    OF ARGENTINA, a foreign state; and RIGHT TO ATTACH ORDER AND
22  DOES 1-10,                         WRIT OF ATTACHMENT**

23              Defendants.            [Filed concurrently with: (1) Notice of
                                       Opp. and Claim of Exemp.; (2) Memo.
24                                     of Points & Auth.; (3) Declarations of
                                       Oleh Jachno and Donald R. Brown]
25
                                       Hearing date: May 23, 2011
26                                     Time:          10:00 a.m.
                                       Courtroom:     1
27
28                                     Complaint filed: April 25, 2011

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

300248908.1                                    DECLARATION OF CONRADO VAROTTO

ER 45

1  value, commercial or otherwise, other than for the scientific use for which it was

2  specifically designed.

3       9.    The Aquarius/SAC-D satellite was flown from the airport of São

4  Jose dos Campos, Brazil, where it was being tested, to Vandenberg Air Force Base

5  in the United States, California, on two U.S. Air Force C17 aircraft provided by

6  NASA, at which point NASA took possession of the satellite. The satellite is

7  currently at the Vandenberg Air Force Base, where technicians working for NASA

8  are conducting tests and preparing it for launch. NASA's Launch Services Program

9  at the Kennedy Space Center in Florida is managing the launch. The satellite is

10  scheduled to be moved by NASA on May 18, 2011 from its current location at

11  Vanderberg Air Force Base to the launch site at the base, in continued preparation

12  for launch. CONAE is not using the Aquarius/SAC-D satellite for any activity in

13  the United States, and I understand that it has no right to do so.

14       10.    It is vital for the success of the mission that the Aquarius/SAC-

15  D satellite be launched into orbit on the scheduled launch date which has been set

16  for June 9. Failure to meet the launch schedule would have a devastating impact on

17  the mission and will result in millions of dollars in losses to all the national space

18  agencies involved in the project, including NASA. An instrumental part of the

19  design of a satellite depends on the characteristics of the launching vehicle. The

20  Aquarius/SAC-D satellite is programmed to be launched into orbit on June 9 by the

21  Delta II launch system. This is one of the last scheduled launches for Delta II.

22  According to NASA's Launch Manifest, there are two missions scheduled to be

23  launched with the Delta II in August and October, but using a different

24  configuration, after which the Delta Il will be dismantled and replaced by another

25  NASA launch vehicle. Preventing the launch at the scheduled date would require

26  keeping the Delta II launch system which, even if it were possible (which is not

27  certain), would result in extremely high costs that the mission cannot afford. This

28  would put the viability of the mission at serious risk, with irreparable loss to the

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

300249023.1          4

DECLARATION OF CONRADO VAROTTO

ER 46

1   entire scientific community.  The mission requirements impose a short five minute
2   launch window every day.  If the launch date is delayed for any reason other than
3   the normal contingencies of the launch of a satellite, it will result in complications
4   that the mission will, most likely, be unable to afford to resolve.

5

6           I declare under penalty of perjury under the laws of the United States
7   of America that the foregoing is true and correct.
8       Executed on May 2, 2011, in Buenos Aires, Argentina.

9

10                                          _____
11                                          Conrado F. Varotto

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

360240623.1                          5

                        DECLARATION OF CONRADO VAROTTO

ER 47

# EXHIBIT B

Case 2:14-cv-02262-SVW-E Document 18-3 Filed 05/15/14 Page 39 of 106 Page ID #:139
Case 2:15-55449 05/26/2015 ID: 9550383 DktEntry: 19-2 Page 39 of 106

Case 2:11-cv-03507-SJO-RZ   Document 29-1   Filed 05/02/11   Page 1 of 6   Page ID #:545

1   MANATT, PHELPS & PHILLIPS, LLP
    DONALD R. BROWN (Bar No. CA 156548)
2   E-mail: dbrown@manatt.com
    CARL L. GRUMER (Bar No. CA 066045)
3   E-mail: cgrumer@manatt.com
    VIRAL MEHTA (Bar No. CA 261852)
4   E-mail: vmehta@manatt.com
    11355 West Olympic Boulevard
5   Los Angeles, CA  90064-1614
    Telephone: (310) 312-4000
6   Facsimile: (310) 312-4224

7   CLEARY GOTTLIEB STEEN & HAMILTON LLP
    JONATHAN I. BLACKMAN (*Pro Hac Vice* filed)
8   E-mail: jblackman@cgsh.com
    CARMINE D. BOCCUZZI (*Pro Hac Vice* filed)
9   E-mail: cboccuzzi@cgsh.com
    SARA A. SANCHEZ (*Pro Hac Vice* filed)
10  E-mail: ssanchez@cgsh.com
    One Liberty Plaza,
11  New York, NY 10006
    Telephone: (212) 225-2000
12  Facsimile: (212) 225-3999

13  Attorneys for *Defendant*
    THE REPUBLIC OF ARGENTINA

14

15              **UNITED STATES DISTRICT COURT**

16              **CENTRAL DISTRICT OF CALIFORNIA**

17  NML CAPITAL, LTD.,                    No.  CV11-03507-SJO (RZx)

18              Plaintiff,                **Hon. S. James Otero**

19      vs.                              **DECLARATION OF OLEH
                                         JACHNO IN SUPPORT OF**
20  SPACEPORT SYSTEMS                    **DEFENDANT THE REPUBLIC OF**
    INTERNATIONAL, L.P., a Delaware      **ARGENTINA'S OPPOSITION TO**
21  limited partnership; THE REPUBLIC    **PLAINTIFF'S APPLICATION FOR**
    OF ARGENTINA, a foreign state; and   **RIGHT TO ATTACH ORDER AND**
22  DOES 1-10,                           **WRIT OF ATTACHMENT**

23              Defendants.              [Filed concurrently with: (1) Notice of
                                         Opp. and Claim of Exemp.; (2) Memo.
24                                       of Points & Auth.; (3) Declarations of
                                         Conrado Varotto and Donald R. Brown]
25
                                         Hearing date: May 23, 2011
26                                       Time:          10:00 a.m.
                                         Courtroom:     1
27
28                                       Complaint filed: April 25, 2011

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

300248906.1                                      DECLARATION OF OLEH JACHNO

ER 49

1  
2  
3  
4  
5  
6  
7  
8  
9  
10  
11  
12  
13  
14  
15  
16  
17  
18  
19  
20  
21  
22  
23  
24  
25  
26  
27  
28  

### DECLARATION OF OLEH JACHNO

I, Oleh Jachno, declare as follows:

1.      I am a lawyer employed by the Comisión Nacional de Actividades Espaciales ("CONAE"), the Argentine space agency in charge of planning, executing and evaluating the national space program of the Republic of Argentina (the "Republic" or "Argentina"). CONAE promotes the peaceful use of space science and technology and coordinates research, development and the transfer of space technology. I have been serving as head of CONAE's legal unit since 2003. I have personal knowledge of the facts set forth in this Declaration, and could and would competently testify to them if called as a witness.

2.      I submit this Declaration to provide the Court with a description of CONAE's legal status and structure, in support of the Republic's Memorandum of Law in Opposition to Plaintiffs' Application for Right to Attach Order and Writ of Attachment.

3.      CONAE was created by a Republic decree in 1991 as an entity with functional independence to promote and perform scientific research in the area of space technology and with the mission of developing Argentina's national space program. From its creation, CONAE has been an autarkic entity with its own legal personality separate from the Republic, and it therefore has financial and operational independence. Decree 995/1991, which created CONAE, specifically provides that CONAE was established "with full administrative and financial autarky." Under Argentine law, CONAE has full legal capacity to enter into contracts on its own behalf, and it can sue and be sued. CONAE has in fact entered into numerous contracts during its twenty years of existence and been involved in lawsuits on its own behalf.

4.      CONAE is governed by a board of directors comprised of nine members (the "Board"). The president and vice-president of the Board are the Minister of Foreign Affairs, International Commerce and Worship and the

MANATT, PHELPS &  
PHILLIPS, LLP  
ATTORNEYS AT LAW  
LOS ANGELES

300248804.1

DECLARATION OF OLEH JACHNO

ER 50

1   Secretary of Foreign Affairs, respectively, and six additional Board members are

2   nominated by different areas of the National Public Administration and appointed

3   by the President of Argentina. These members of the Board appoint the ninth

4   member, who also performs the duties of Executive and Technical Director and can

5   only be removed upon good cause. The Board has broad administrative and

6   supervisory powers, including the power to approve CONAE's internal regulations

7   as well as its annual budget. The Executive and Technical Director is in charge of

8   CONAE's day-to-day operations, including administering CONAE's property and

9   hiring its administrative and scientific personnel. The Executive and Technical

10   Director is CONAE's acting legal representative. The current Executive and

11   Technical Director is Dr. Conrado Franco Varotto, a scientist with extensive

12   experience in the field of space development and research.

13       5.    CONAE employs more than 177 individuals, including scientists,

14   researchers and postgraduate trainees who are pursuing a wide range of projects,

15   including projects relating to environmental pollution, control of oil spills, and

16   studying the spread of disease.

17       I declare under penalty of perjury under the laws of the United States of

18   America that the foregoing is true and correct.

19       Executed on May 2, 2011, in Buenos Aires, Argentina.

20

21

22           Oleh Jachno

23

24

25

26

27

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

30024880498.1

2

DECLARATION OF OLEH JACHNO

1 COOLEY LLP
WILLIAM P. DONOVAN, JR. (SBN 155881)
2 wdonovan@cooley.com
JOSEPH B. WOODRING (SBN 272940)
3 jwoodring@cooley.com
1333 2nd Street, Suite 400
4 Santa Monica, CA 90401
Telephone: (310) 883-6400
5 Facsimile: (310) 883-6500

6 MATTHEW D. CAPLAN (SBN 260388)
mcaplan@cooley.com
7 101 California Street, 5th Floor
San Francisco, CA 94111-5800
8 Telephone: (415) 693-2000
Facsimile: (415) 693-2222
9

10 Attorneys for Defendant
SPACE EXPLORATION TECHNOLOGIES CORP.
11

12 UNITED STATES DISTRICT COURT

13 CENTRAL DISTRICT OF CALIFORNIA

14

| | |
|---|---|
| 15 NML CAPITAL, LTD., | Case No. CV 14-02262-SVW (Ex) |
| 16       Plaintiff, | [*Assigned to the Hon. Stephen V. Wilson*] |
| 17       v. | **SPACE EXPLORATION TECHNOLOGIES CORPORATION'S NOTICE OF MOTION AND MOTION TO DISMISS, AND NOTICE OF JOINDER IN THE REPUBLIC OF ARGENTINA'S MOTION TO DISMISS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1), AND 12(b)(6)** |
| 18 SPACE EXPLORATION TECHNOLOGIES CORP., et al., | |
| 20       Defendants. | |
| 23 | |
| 24 | Date: June 30, 2014 |
| 25 | Time: 1:30 p.m.<br>Ctrm: 6 |
| 26 | |

27

28

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES
106978139 v2/NAACTIVE

SPACEX'S MOTION TO DISMISS
CV 14-02262-SVW (Ex)

ER 52

1     **TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF**

2 **RECORD, PLEASE TAKE NOTICE THAT** on June 30, 2014 at 1:30 p.m., or as

3 soon thereafter as the matter may be heard in Courtroom 6 of the above-entitled

4 Court, located at 312 North Spring Street, Los Angeles, CA 90012-4701, defendant

5 Space Exploration Technologies Corporation ("SpaceX")  will and hereby does

6 move this Court to dismiss NML Capital, Ltd.'s ("NML") Complaint with

7 prejudice pursuant to Federal Rules of Civil Procedure 12(b)(1), and 12(b)(6).  In

8 doing so, SpaceX hereby joins in and adopts defendant The Republic of

9 Argentina's ("Argentina") motion to dismiss NML's Complaint, including

10 Argentina's memorandum of points and authorities, which is also currently set to be

11 heard in Courtroom 6 of the United States District Court for the Central District of

12 California, 312 North Spring Street, Los Angeles, California on June 30, 2014 at

13 1:30 p.m.  Argentina's motion will be filed today, May 15, 2014.

14     SpaceX has been sued as a co-defendant of Argentina, a sovereign foreign

15 state, and the *Comisión Nacional de Actividades Espaciales* of Argentina

16 ("CONAE"), and NML brings its claim for execution on the alleged contracts

17 between CONAE and SpaceX (the "Contracts") against all defendants.  (Cpt. ¶¶ 3,

18 7, 37.)  SpaceX hereby incorporates by reference the arguments raised in

19 Argentina's motion to dismiss and the supporting memorandum, and respectfully

20 requests that the Court dismiss the case with prejudice for lack of subject matter

21 jurisdiction under the Foreign Sovereign Immunities Act ("FSIA") for the reasons

22 stated in that motion.

23     As demonstrated in Argentina's motion to dismiss, the Complaint is barred

24 by the FSIA both because NML improperly seeks to reach the alleged property of

25 CONAE, and because the Contracts are immune from execution under the FSIA.

26 The FSIA's bar as to Argentina and CONAE necessarily leads to dismissal of this

27 action against SpaceX, too, as NML's claim against SpaceX is predicated on the

28 Court's ability to reach the Contracts.  If NML cannot execute upon the Contracts,

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

106978139 v2/NAACTIVE

1.

SPACEX'S MOTION TO DISMISS
CV 14-02262-SVW (Ex)

ER 53

1   then there can be no creditor's claim against SpaceX. Cal. Code Civ. Proc. §

2   708.210 (creditor's claims only available as to "property interest[s] or debt[s]" that

3   can be "applied to the satisfaction of [a] money judgment.")  For the reasons set

4   forth herein, and in Argentina's motion to dismiss, the Court should dismiss NML's

5   complaint with prejudice.

6         This motion is made following the conference of counsel pursuant to L.R.

7   7-3 which took place on May 8, and May 12, 2014.

8

9   Dated:        May 15, 2014              COOLEY LLP

10

11                                         /s/ William P. Donovan, Jr.
                                           _____
12                                         William P. Donovan, Jr.

13                                         Attorneys for Defendant
                                           Space Exploration Technologies Corp.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FILED

2014 MAR 25 AM 11:49

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY: _____

1 | QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Harold A. Barza (Bar No. 80888)
2 |   halbarza@quinnemanuel.com
  Bruce E. Van Dalsem (Bar No. 124128)
3 |   brucevandalsem@quinnemanuel.com
  Matthew S. Hosen (Bar No. 291631)
4 |   matthosen@quinnemanuel.com
865 South Figueroa Street, 10th Floor
5 | Los Angeles, California 90017-2543
Telephone: (213) 443-3000
6 | Facsimile: (213) 443-3100

7 | *Of Counsel:*

8 | DECHERT LLP
  Robert A. Cohen (*pro hac vice* to be filed)
9 |   robert.cohen@dechert.com
1095 Avenue of the Americas
10 | New York, NY 10036
Telephone: (212) 698-3500
11 | Facsimile: (212) 698-3599

12 | Attorneys for Plaintiff NML Capital, Ltd.

13 |

14 |              **UNITED STATES DISTRICT COURT**

15 |              **CENTRAL DISTRICT OF CALIFORNIA**

16 | NML CAPITAL, LTD.,                CASE NO. CV14-02262 - SVW (Ex)

17 |              Plaintiff,            **COMPLAINT FOR CREDITOR'S SUIT**

18 |     vs.

19 | SPACE EXPLORATION
TECHNOLOGIES CORP., aka
20 | SPACEX, a Delaware corporation; THE
REPUBLIC OF ARGENTINA, a
21 | foreign state, including its *COMISIÓN
NACIONAL DE ACTIVIDADES
22 | ESPACIALES*, aka CONAE, a political
subdivision of the Argentine State; and
23 | DOES 1-10,

24 |              Defendants.

25 |

26 |

27 |

28 |

J1998.23618/5832776.1

ER 55

COPY

1  Plaintiff NML Capital, Ltd. ("NML"), for its complaint herein, alleges as
2  follows:

3  ## NATURE OF THE ACTION

4  1.  NML is a judgment creditor of Defendant the Republic of Argentina
5  ("Argentina"), against which it holds final and non-appealable judgments issued by
6  a Federal Court in New York totaling, with interest through March 24, 2014, more
7  than $1.7 billion.  The judgments arise out of Argentina's default on billions of
8  dollars of bonds which it issued to the public and then repudiated.

9  2.  Argentina has not paid the judgments, and has done everything in its
10 power to obstruct NML's efforts to enforce them.  As the United States Court of
11 Appeals for the Second Circuit recently stated: "Argentina will simply refuse to pay
12 any judgments." *NML Capital, Ltd. v. Republic of Argentina*, 699 F.3d 246, 262
13 (2d Cir. 2012).  Indeed, that Court subsequently noted: "Argentina's officials have
14 publicly and repeatedly announced their intention to defy any rulings of this Court
15 and the district court with which they disagree." *NML Capital, Ltd. v. Republic of*
16 *Argentina*, 727 F.3d 230, 238 (2d Cir. 2013).

17 3.  Accordingly, NML brings this creditor's suit pursuant to Rule 69 of the
18 Federal Rules of Civil Procedure and Section 708.210 *et seq.* of the California Code
19 of Civil Procedure, to enforce two of the judgments that have been registered in this
20 District by executing against property of Argentina used for commercial activity in
21 this District, namely, Argentina's valuable contractual rights under its launch
22 services contracts (the "Launch Services Contracts") with Los Angeles County-
23 based defendant Space Exploration Technologies Corp., aka SpaceX ("SpaceX"),
24 and any related property of Argentina in the United States that is also being used for
25 a commercial activity in the United States (collectively, "the Property").

26 4.  By serving this complaint on SpaceX pursuant to C.C.P. § 708.210, *et*
27 *seq.*, NML seeks to execute on the Property, have it sold, and apply the proceeds
28 towards the satisfaction of the Judgments (as defined below).  In connection with

1  these efforts, NML may request the appointment of a receiver, as well as injunctive

2  and/or other equitable relief, in order to maximize the value of the Property and to

3  apply the proceeds of the sale of the Property to the Judgments in an orderly

4  manner.

5  **THE PARTIES**

6  5.    NML is a limited liability corporation organized under the laws of the

7  Cayman Islands with its registered office at Huntlaw Corporate Services, the

8  Huntlaw Building, 75 Fort Street, P.O. Box 1350, Grand Cayman, Cayman Islands.

9  NML is managed by Elliott Management Corp., a New York-based hedge fund that

10 manages money for a wide range of institutional investors, including university

11 endowments, foundations and pension funds.

12 6.    Defendant SpaceX is a Delaware corporation with a principal place of

13 business at 1 Rocket Road, Hawthorne, California 90250.   It is in the business of

14 providing satellite launch services pursuant to contractual arrangements with its

15 customers in exchange for a fee.

16 7.    Defendant Argentina is a foreign state as defined under 28 U.S.C.

17 § 1603(a).   Under the Foreign Sovereign Immunities Act ("FSIA") political

18 subdivisions are integral parts of the state itself.   The *Comisión Nacional de*

19 *Actividades Espaciales* ("CONAE") (the English translation of which is National

20 Space Activities Commission), is the Argentine political subdivision through which

21 Argentina has contracted with SpaceX for at least two satellite launches on

22 SpaceX's Falcon 9 launch vehicle (the "Launch Services Contracts" or the

23 "Contracts").   NML is informed and believes and alleges thereon that such launches

24 are currently scheduled for 2015 and 2016.

25 8.    The true names and capacities, whether individual, corporate, associate

26 or otherwise, of defendants Does 1 through 10, inclusive, and each of them, are not

27 known to NML at this time.   NML alleges on information and belief that such

28 defendants may have legal, possessory and/or other interests in the Property,

01998.23618/5836110.1

-2-

COMPLAINT FOR CREDITOR'S SUIT

1   including in the Launch Services Contracts.   Plaintiff will amend this complaint to

2   set forth the true names and capacities of such defendants when they have been

3   ascertained.

4                    **JURISDICTION AND VENUE**

5           9.      Original federal subject matter jurisdiction over this action exists

6   pursuant to 28 U.S.C. § 1330(a) because this is an action against a foreign state with

7   respect to which the foreign state is not entitled to immunity under either the FSIA,

8   28 U.S.C. §§ 1605 *et seq.*, or under any applicable international agreement, as set

9   forth in greater detail at paragraphs 15-26 below.   This Court has supplemental

10  jurisdiction over the claims asserted herein against all defendants other than

11  Argentina, pursuant to 28 U.S.C. § 1367(a), because such claims are related to those

12  asserted against Argentina.

13          10.     Venue is proper in this judicial district pursuant to 28 U.S.C.

14  §1391(b)(2) because the Property is located in this District.

15                    **NML'S MONEY JUDGMENTS AGAINST ARGENTINA**

16          11.     NML has brought eleven actions against Argentina seeking money

17  judgments based upon Argentina's default on its bonds.   As of the filing of this

18  complaint, final judgments for which no appeals are pending have been entered in

19  five of those actions.   Two of the judgments are the subject of this action.   To wit:

20          12.     On December 18, 2006, NML was awarded a money judgment in Case

21  No. 03 Civ. 8845 (TPG) (S.D.N.Y.) in the amount of $284,184,632.30 (the "8845

22  Judgment").   A true and correct copy of the Judgment is attached as Exhibit A.   As

23  of March 24, 2014, the 8845 Judgment had accrued post-judgment interest in the

24  amount of $117,608,603.34, bringing the principal and interest on the 8845

25  Judgment to $401,793,235.64, plus per diem interest of $53,789.47 after March 24,

26  2014.   The 8845 Judgment was registered in this District pursuant to 28 U.S.C.

27  § 1963 on May 5, 2011 and assigned Case No. 13-MC-193, reassigned as

28  11-CV-3970-SJO (RZx).

13.     On June 15, 2009, NML was awarded a money judgment in Case No. 06 Civ. 6466 (TPG) (S.D.N.Y.) in the amount of $533,378,361 (the "6466 Judgment" and together with the 8845 Judgment, the "Judgments").   A true and correct copy of the 6466 Judgment is attached as Exhibit B.  As of March 24, 2014, the 6466 Judgment had accrued post-judgment interest in the amount of $12,692,638.77, bringing the principal and interest on the 6466 Judgment to $546,070,999.77, plus per diem interest of $7,301.80 after March 24, 2014.  The 6466 Judgment is being registered in this District concurrently with the filing of this complaint.

14.     NML has been awarded three other judgments, which when combined with the 8845 Judgment and the 6466 Judgment at issue in this action and interest due as of March 24, 2014, total over $1.7 billion.   Argentina refuses voluntarily to pay any portion of these judgments.

### THE FSIA AUTHORIZES THIS ACTION TO LEVY AGAINST THE PROPERTY

15.     This action is authorized by the FSIA, 28 U.S.C. §§ 1602-1610.

16.     Pursuant to § 1605(a)(1) of the FSIA, an action can be brought against a foreign state if the foreign state has waived its immunity.   In this case, Argentina has waived such immunity, including in Section 22 of the October 19, 1994 Fiscal Agency Agreement ("FAA") that governs the Argentine bonds on which NML's Judgments are based.   Specifically, in the FAA, Argentina "irrevocably waive[d] and agree[d] not to plead any immunity from the jurisdiction of any [] court to which it might otherwise be entitled" in connection with any action to enforce a judgment based on the bonds – including this action.   The terms and conditions of these bonds extend this waiver to any action to enforce such a judgment against any of Argentina's "revenues, assets or properties."

17.     Further, under the FSIA, CONAE is part of the Argentine state, such that a judgment against Argentina is a judgment against CONAE.

18. Under the FSIA, as interpreted by the courts, a distinction is made between entities that are "agencies and instrumentalities" of a foreign state, on the one hand, and political subdivisions of the foreign state, on the other hand. As articulated by the United States Court of Appeals for the Second Circuit, the determination of whether an entity is an "agency and instrumentality" of a foreign state or, instead, is a political subdivision of that state, depends on whether the "core function" of the entity is commercial or governmental. If the entity's core functions are commercial, then it is an "agency or instrumentality" of the state for purposes of the FSIA. But if its core functions are governmental, then it is a political subdivision of the state, and not an "agency or instrumentality" under the FSIA. *See Garb v. Republic of Poland*, 440 F.3d 579, 594-95 (2d Cir. 2006) (adopting and applying the "core function" test and holding that the Ministry of the Treasury of Poland was a political subdivision and not an "agency or instrumentality" of the Republic of Poland because its "core function" is governmental rather than commercial); *see also Transaero, Inc. v. La Fuerza Aerea Boliviana*, 30 F.3d 148, 151-53 (D.C. Cir. 1994) (adopting the "core function" test); *Ministry of Defense & Support for the Armed Forces of the Islamic Republic of Iran v. Cubic Defense Systems, Inc.*, 495 F.3d 1024, 1035 (9th Cir. 2007) (same), *reversed on other grounds*, *Ministry of Defense & Support for the Armed Forces of the Islamic Republic of Iran v. Elahi*, 556 U.S. 366 (2009).

19. The core functions of CONAE are governmental. As a result, it is a political subdivision of Argentina and the Judgments are judgments not only against Argentina, but also against CONAE.

20. CONAE was established in 1991 by Argentine National Decree 995/91 ("Decree 995/91"). A true and correct copy of a certified translation of Decree 995/91 is annexed hereto as Exhibit C. The decree declared that the "advance of space science and technology are of great interest for the National State, because of the numerous public-policy derivations created by their practical applications."

1  The decree further stated that CONAE is a "national authority" "established to

2  centralize, organize, manage, and execute an overall space policy" because "[t]he

3  technical complexity of space activities makes essential an appropriate organization

4  and coordination of all national entities, both private and public, related to said

5  activities, to prevent scattering and overlapping of efforts."   The CONAE website,

6  www.conae.gov.ar, has an Argentine government domain name and describes

7  CONAE as a "specialized agency of the Argentine State" with a mission "to plan,

8  execute and evaluate a **National Space Program** for peaceful use of space science

9  and technology."   (http://www.conae.gov.ar/index.php/en/institutional/about-conae

10  (emphasis in original)).

11       21.    CONAE has two functions under Argentine law: (a) proposing a

12  National Space Program, which it did in 1994, and (b) centralizing, organizing,

13  managing, and executing the National Space Program.   CONAE also has a number

14  of duties, such as channeling the transfer of space technology; coordinating all

15  activities of the National Space Program, including all public and private

16  institutions; promoting and developing agreements for cooperation with public and

17  private entities of other countries; and executing and contributing to the complete

18  development of national space projects.

19       22.    CONAE also is charged with implementing at least two treaties to

20  which Argentina is a party: the Convention on the Registration of Objects Launched

21  into Outer Space, and the Basic Agreement for Cooperation in Peaceful

22  Applications of Space Science and Technology, by and between the Government of

23  the Argentine Republic and the Government of the Federative Republic of Brazil.

24       23.    CONAE does not have financial independence and is funded annually

25  by the Argentine National Congress.   Decree 995/91, Article 6 provides, in

26  translation:

27

28

The resources of [CONAE] are as follows:

(a) The items assigned to it in the national budget, parliamentary approval for which shall be managed by the Executive Branch in conformity with the following procedure:

(I) Before each fiscal year, the Commission shall prepare an annual program containing a detailed analysis of all the projects scheduled for that period, together with an annual report of its activities;

(II) The application for approval of the budget items shall be formulated with respect to each individual project in particular and the annual program in general.

24. CONAE is also under the direct control of the Argentine government. Eight of the nine members of its Board of Directors are governmental appointments. The Minister of Foreign Trade, International Relations and Religion is the Chairperson. The Secretary of Foreign Relations is the Vice-Chairperson and six members of the Board are selected by the Argentine president. Decree 995/91, Article 5. "The Chairperson must present to the President of the Nation an annual report on the activities performed by the agency." *Id.*

25. Because CONAE's core functions are governmental in nature, CONAE is an integral part of the Argentine state – a political subdivision in FSIA parlance – and liable for the Judgments.

26. Under 28 U.S.C. § 1610, CONAE's property in the United States used for a commercial activity in the United States is not immune and is available for the satisfaction of Argentina's debts.

1    **THE ARGENTINE LAUNCH SERVICES CONTRACTS**

2    **AND RELATED PROPERTY ARE SUBJECT TO**

3    **EXECUTION TO SATISFY NML'S JUDGMENTS**

4      27.    When a foreign state has waived sovereign immunity, as Argentina has

5 done here, the FSIA provides that "[t]he property in the United States of [that]

6 foreign state . . . used for a commercial activity in the United States, shall not be

7 immune from … execution, upon a judgment entered by a court of the United States

8 … if the foreign state has waived its immunity … from execution either explicitly or

9 by implication . . .." (28 U.S.C. § 1610(a)(1)).

10      28.    In determining whether the property of a foreign state is used for a

11 "commercial activity," the FSIA provides that "[t]he commercial character of an

12 activity shall be determined by reference to the nature of the course of conduct or

13 particular transaction or act, ***rather than by reference to its purpose***." (28 U.S.C.

14 § 1603(d) (emphasis added)).

15      29.    The Property, which includes CONAE's valuable rights under the

16 Launch Services Contracts with SpaceX, falls squarely within Section 1610(a) of the

17 FSIA.

18      30.    Through CONAE, Argentina has acquired rights of a commercial

19 nature by contracting with SpaceX for at least two satellite launches aboard SpaceX

20 Falcon 9 launch vehicles. According to the launch manifest maintained on

21 SpaceX's website, Argentina contracted for two Falcon 9 launches from SpaceX's

22 launch facility at Vandenberg Air Force Base in 2014 and 2015. (*See*

23 www.spacex.com/missions, attached as Exhibit D). According to the October 2013

24 edition of *Aerospace America*, those launch dates have now moved to 2015 and

25 2016. (*Aerospace America*, October 2013, attached hereto as Exhibit E, at page

26 15).

27

28

1    31.    NML is informed and believes, and alleges thereon, that CONAE has

2    made substantial payments to SpaceX under the Launch Services Contracts and is

3    not in default thereunder.

4    32.    CONAE's purchase of private launch services from SpaceX, as well as

5    the launch services to be provided to CONAE by SpaceX, are plainly "commercial

6    activity" within the meaning of the FSIA.   As SpaceX has stated, it is in the

7    business of providing private, commercial space transport.   It is the commercial

8    nature of those launch services and the commercial negotiation of them by CONAE

9    that governs under the FSIA, not the purpose for which Argentina will use those

10   launch services.   The following statement from a recent press release explains the

11   commercial nature of the launch services offered by SpaceX: "SpaceX has nearly 50

12   launches on manifest, of which over 60% are for commercial customers."[1]

13   33.    Private companies such as Thaicom, ORBCOMM, Iridium and

14   Bigelow Aerospace have contracted with SpaceX for commercial launch services,

15   just as Argentina has done.   By entering into the Launch Services Contracts,

16   Argentina has acquired Property in the United States and is thereby engaging in a

17   commercial activity for purposes of the FSIA.   *Republic of Argentina v. Weltover,*

18   *Inc.*, 504 U.S. 607, 614-15 (1992) ("a contract [to which a sovereign is a party] to

19   buy army boots or even bullets is a 'commercial' activity, because private

20   companies can similarly use sales contracts to acquire goods.").   Because the nature

21   of the Launch Services Contracts is commercial, any Property of Argentina in the

22   United States that it acquired or maintains in connection with those contracts is used

23   for commercial activity in the United States.

24   34.    Because Argentina has waived sovereign immunity, and because the

25   Launch Services Contracts are used for a commercial activity in the United States,

26

27   ───────────────
     [1]  Available at http://www.spacex.com/press/2013/12/03/spacex-successfully-
28   completes-first-mission-geostationary-transfer-orbit.

1  Argentina's property interest in the Property may be executed upon in satisfaction of
2  NML's Judgments.

### CLAIM FOR RELIEF

4  (Against All Defendants for Application of the
5  Launch Services Contracts to NML's Judgments)

6       35.     NML repeats and realleges each and every allegation of Paragraphs 1 to
7  34 of this complaint as set forth herein.

8       36.     As a political subdivision of Argentina, CONAE is liable for judgments
9  entered against Argentina, including NML's Judgments.

10       37.     Argentina's rights in the Launch Services Contracts are property owned
11  by CONAE within this District and subject to a creditor's suit under the FSIA.   Any
12  related Property of Argentina that is in the possession or control of defendants and
13  located in this District is subject to a creditor's suit under the FSIA.

14       38.     Therefore, pursuant to Rule 69 of the Federal Rules of Civil Procedure,
15  Section 708.210 *et seq.* of the California Code of Civil Procedure, and 28 U.S.C.
16  § 1610, NML is entitled to an order applying the Property, including the Launch
17  Services Contracts, to the satisfaction of NML's Judgments.

18       39.     Given the nature of the Property, including the Launch Services
19  Contracts, and in light of the interests of both NML and Argentina, the appointment
20  of a receiver may be a reasonable method to effect the fair and orderly application of
21  the proceeds of the sale of the Property to the satisfaction of the Judgments, and
22  NML therefore may seek the appointment of a receiver pursuant to C.C.P. § 708.620
23  for the purpose of marshalling, maintaining, selling or otherwise monetizing the
24  Property, including the Launch Services Contracts, and applying the cash to the
25  satisfaction of NML's Judgments.

26       40.     Should defendants threaten to take any action, or fail to take any action,
27  that would jeopardize Argentina's property interest in the Property, NML would
28  suffer irreparable harm for which money damages would be inadequate.   In such

1    event, NML will seek and be entitled to a temporary restraining order, preliminary

2    injunction and permanent injunction enjoining defendants from jeopardizing such

3    property interest.

4            WHEREFORE, for its prayer for relief, NML seeks:

5        1.      A judgment applying the Property, including the Argentine Launch

6    Services Contracts, to the satisfaction of NML's Judgments against Argentina;

7        2.      If and when requested by NML, the appointment of a receiver pursuant

8    to C.C.P. § 708.620 for the purpose of marshalling, maintaining, selling or otherwise

9    monetizing the Launch Services Contracts in satisfaction of NML's Judgments;

10       3.      If and when requested by NML, a temporary restraining order,

11   preliminary injunction and permanent injunction enjoining defendants from

12   jeopardizing Argentina's property interest in the Property, including the Launch

13   Services Contracts;

14       4.      Attorneys' fees and costs; and

15

16   DATED:   March 24, 2014            QUINN EMANUEL URQUHART &
                                        SULLIVAN, LLP
17                                         Harold A. Barza
18                                         Bruce E. Van Dalsem
                                           Matthew S. Hosen
19

20

21                                  By
22                                     _____
                                          Harold A. Barza
23

24                                  DECHERT LLP
                                       Robert A. Cohen (of counsel)
25                                     robert.cohen@dechert.com
                                    1095 Avenue of the Americas
26                                  New York, NY 10036
                                    Telephone:   (212) 698-3500
27                                  Facsimile:   (212) 698-3599

28                                  Attorneys for Plaintiff NML Capital, Ltd.

# EXHIBIT A

AO 451 (Rev. 01/09) Clerk's Certification of a Judgment to be Registered in Another District

FILED
CLERK, U.S. DISTRICT COURT

MAY – 5 2011

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT
### for the
### Southern District of New York

| | |
|---|---|
| NML CAPITAL. LTD | ) |
| *Plaintiff* | ) |
| v. | ) |
| THE REPUBLIC OF ARGNETINA | ) |
| *Defendant* | ) |

11-mc-193

Civil Action No. ~~03 Civ. 8845(TPG)~~

## CLERK'S CERTIFICATION OF A JUDGMENT TO BE REGISTERED IN ANOTHER DISTRICT

I certify that the attached judgment is a copy of a judgment entered by this court on *(date)* _____12/18/2006_____ .

I also certify that, as appears from this court's records, no motion listed in Fed. R. App. P. 4(a)(4)(A) is pending before this court and that no appeal has been filed or, if one was filed, that it is no longer pending.

Date: _____04/12/2011_____

CLERK OF COURT

_____
*Signature of Clerk or Deputy Clerk*

#86

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------ X
                                     :
NML CAPITAL, LTD.,                   :
                                     :
              Plaintiff,             :       11-mc-193
                                     :       03 Civ. 8845 (TPG)
      -against-                      :
                                     :
THE REPUBLIC OF ARGENTINA,           :       **JUDGMENT**
                                     :
              Defendant.             :       # 06,2728
                                     :
------------------------------------ X

Plaintiff NML Capital, Ltd., having moved this court for summary judgment and

the matter having come before the Honorable Thomas P. Griesa, United States District Court,

and the Court, in its Opinion dated May 11, 2006, having granted summary judgment to plaintiff

and directed that judgment be entered for the principal amount of the bonds described below,

plus accrued interest,

NOW, it is hereby

**ORDERED, ADJUDGED AND DECREED** that plaintiff shall recover from

defendant The Republic of Argentina ("Argentina") $284,184,632.30, calculated as follows:

1.      With respect to the 10.25% Global Bonds due July 21, 2030, CUSIP No.

040114GBO, plaintiff shall recover from Argentina $180,652,105.58, comprised of:  (i)

$111,909,000.00 (unpaid principal amount of the bonds;  (ii) $60,157,304.74 (unpaid interest on

the principal amount of the bonds, at the contract rate of 10.25%);  and (iii)  $8,585,800.84

(interest on the unpaid interest, calculated at the statutory rate of 9%).

2. With respect to the 12% Global Bonds due February 1, 2020, CUSIP No. 040114FB1, plaintiff shall recover from Argentina $103,532,526.72, comprised of: (i) $60,244,000.00 (unpaid principal amount of the bonds); (ii) $37,913,557.04 (unpaid interest on the principal amount of the bonds, at the contract rate of 12%); (iii) $5,374,969.68 (interest on the unpaid interest, calculated at the statutory rate of 9%).

It is further **ORDERED** that, until further notice from the Court, plaintiff must refrain from selling or otherwise transferring the bonds involved in this action, without advising the Court in advance and obtaining the permission of the Court.

Dated: New York, New York
December 18, 2006

ENTER

_Thomas P. Griesa_
United States District Judge

_J. Michael Morales_
Clerk of the Court

By: _____
Deputy Clerk

**THIS DOCUMENT WAS ENTERED
ON THE DOCKET ON** _12/18/06_

A CERTIFIED COPY
RUBY J. KRAJICK, CLERK

BY _____
Deputy Clerk





PAID

MAY 5 2011

Clerk, US District Court
CO.FIT 4512

# EXHIBIT B

AO 451 (Rev. 01/09)  Clerk's Certification of a Judgment to be Registered in Another District

# UNITED STATES DISTRICT COURT
for the

Southern District of New York

| | |
|---|---|
| NML CAPITAL, Ltd. | ) |
| *Plaintiff* | ) |
| v. | )     Civil Action No. 1:06-cv-06466-TPG |
| The Republic of Argentina, et al. | ) |
| *Defendant* | ) |

## CLERK'S CERTIFICATION OF A JUDGMENT TO BE REGISTERED IN ANOTHER DISTRICT

I certify that the attached judgment is a copy of a judgment entered by this court on *(date)*    06/15/2009   .

I also certify that, as appears from this court's records, no motion listed in Fed. R. App. P. 4(a)(4)(A) is pending before this court and that no appeal has been filed or, if one was filed, that it is no longer pending.

Date:   *December 20, 2013*

CLERK OF COURT

_____
*Signature of Clerk or Deputy Clerk*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

NML CAPITAL, LTD.,

            Plaintiff,

   -against-

THE REPUBLIC OF ARGENTINA,

            Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

06 Civ. 6466 (TPG)

**AMENDED JUDGMENT**

DATE FILED: 6/15/09

       Plaintiff NML Capital, Ltd. ("NML"), having moved this court for summary judgment, and the matter having come before the Honorable Thomas P. Griesa, United States District Court, and the Court, in its Order dated March 28, 2008, having granted summary judgment to NML and directed that judgment be entered for the principal amount of the Floating Rate Accrual Notes ("FRANs") at issue in this action, as described below, plus accrued interest, and the Court, in its Opinion dated March 18, 2009, having granted NML's motion for partial summary judgment as to the amount of interest owed on the FRANs at issue in this action, and for entry of judgment,

       NOW, it is hereby

       **ORDERED, ADJUDGED AND DECREED** that NML shall recover from defendant The Republic of Argentina the amount of $533,378,361, which comprises: (i) $54,850,000 (the unpaid principal amount of NML's holding of FRANs at issue in this action); (ii) $370,123,536 (accrued and unpaid contractual interest as of May 22, 2009, on the principal amount of NML's holding of the FRANs at issue in this action, excluding statutory interest on

13419637

ER 74

unpaid contractual interest); (iii) $105,993,485 (statutory interest as of May 22, 2009 calculated at a rate of 9% per annum on accrued and unpaid contractual interest); and (iv) an additional $241,134.00 for each of the ten calendar days following May 22, 2009 up to and including June 1, 2009, the date on which the original version of this judgment was entered on the docket of the District Court.

It is further **ORDERED** that, until further notice from the Court, NML must refrain from selling or otherwise transferring the FRANs at issue in this action, without advising the Court in advance and obtaining the permission of the Court.

Dated: New York, New York
        June 12, 2009

ENTER:

_____
United States District Judge
Part I

_____
Clerk of the Court

By:_____
    Deputy Clerk

A CERTIFIED COPY
RUBY J. KRAJICK, CLERK

BY _____ Deputy Clerk

13419637

# EXHIBIT C

NATIONAL DECREE 995/1991
ESTABLISHMENT OF THE NATIONAL SPACE ACTIVITIES COMMISSION
BUENOS AIRES, 28 May 1991
*BOLETIN OFICIAL*, 03 June 1991
In general force and effect

ACTIVE EFFECT
ABROGATES National Decree 1.164/60
BY ART. 8 (*B.O.* 03 June 1991)

PASSIVE EFFECT
AMENDED BY National Decree 1.435/91 Art. 1
AMENDS SUB-PARAGRAPH A) OF ART. 5 (*B.O.* 05 August 1991)

AMENDED BY National Decree 2.239/91 Art. 1
RECTIFIES ART. 8 (*B.O.* 04 November 1991)

NOTED BY Text Established Law 11.672 Art. 32
RATIFIES DECREE (*B.O.* 22 July 1996)

AMENDED BY National Decree 1.615/99 Art. 15
REPLACES ART. 5 (*B.O.* 21 December 1999)

Amended by National Decree 157/03 Art. 1
SUB-PARA. A) ART. 5 SUBST. (*B.O.* 31 January 2003)


GENERALITIES
Summary:
ESTABLISHMENT OF THE NATIONAL SPACE ACTIVITIES COMMISSION.
ESTABLISHMENT OF ITS DUTIES.

RELATED NOTES: Decrees 995/91 and 1435/19 are ratified by Art. 32 of Law 11.672.
PRIOR HISTORY: ART. 5 REPLACED BY ART. 1 OF DECREE 1662/90 (*B.O.* 15 January 1997)

SUBJECT
SCIENCE AND TECHNOLOGY – NATIONAL SPACE ACTIVITIES COMMISSION:
ESTABLISHMENT: DUTIES – NATIONAL SPACE PLAN

WHEREAS
The advance of space science and technology are of great interest for the National State, because of the numerous public-policy derivations created by their practical applications;
Our country preserves its right to technological and scientific development for peaceful purposes;
The experience achieved by our country in the space field has to be exploited;

EXHIBIT C
ER 77

The technical complexity of space activities makes essential an appropriate organization and coordination of all national entities, both private and public, related to said activities, to prevent scattering and overlapping of efforts;

A national authority has to be established to centralize, organize, manage, and execute an overall space policy;

The ARGENTINE REPUBLIC rejects any and all offensive military use of space activities, and acknowledges its intention to work in this field with a strong sense of peace, responsibility, and transparency;

It is appropriate to increase the participation of the National Congress in the scheduling and control of national space policy,

THE PRESIDENT OF THE ARGENTINE NATION
DECREES:

Article 1:
Art. 1. The COMISION NACIONAL DE ACTIVIDADES ESPACIALES (CONAE) [National Space Activities Commission] is established, with power to act publicly and privately in the scientific, technical, industrial, commercial, management, and financial fields, with full management and financial independence, reporting directly and exclusively to the President of the Nation.

Article 2:
Art. 2. The NATIONAL SPACE ACTIVITIES COMMISSION is the only National Government agency competent to undertake, design, execute, control, manage and administer space projects and undertakings, and it has the following functions:

a) Propose the National Space Plan for the Use and Exploitation of Space Science and Technology for peaceful purposes, as well as its financing mechanism, which must be approved by the NATIONAL EXECUTIVE BRANCH;

b) Centralize, organize, manage, and execute the National Space Plan.

Article 3:
Art. 3. The duties of the NATIONAL SPACE ACTIVITIES COMMISSION are:

a) Perform research activities leading to the formation of groups having the knowledge and technology necessary in order to access space technology and its applications;
b) Engage in development of advanced engineering, in the fields necessary in order to achieve an appropriate national space technology;
c) Execute and contribute to complete development of national space projects;
d) Provide initial and continuing training of researchers, professionals, technicians, and appropriate personnel, by means of courses, scholarships, and interaction with universities, government agencies, and other institutions in the country or in other countries;
e) Channel the transfer of space technology to government entities and especially, under license, to the private sector,  for use in agronomy, cartography, mining prospection, meteorology,

EXHIBIT C

ER 78

geology, environment protection, medicine, communications, defense, industry, and other areas, providing technical assistance to achieve the quality guidelines established;

f) Enter into agreements with other domestic private entities or agencies, for the purpose of transferring or cooperating in the development of space activities;

g) Provide technical assistance to the National Government for participation in conferences, conventions, seminars, meetings, and international agencies engaged in space matters;

h) Coordinate all activities of the National Space System, including all public and private institutions directly or indirectly engaged in space activities;

i) Obtain the financial resources necessary for performance of its activities;

j) Promote and develop agreements for cooperation with public and private entities of other countries, in conformity with the foreign policy of the republic and with proper intervention by the MINISTRY OF FOREIGN RELATIONS AND RELIGION.

Article 4:

Art. 4. Without prejudice of the provisions of the preceding articles, CONAE, acting with public and private capacity, may:

a) Appoint and remove scientific, technical, and administrative personnel, temporarily or permanently;

b) Issue its internal regulations and establish its organic structure;

c) Enter into agreements with public or private entities, and sign the contracts necessary for the achievement of its goals;

d) Engage in acts of trade, consequent upon the contracts it signs, inherent in the purposes established in this decree;

e) Perform all the legal acts necessary for its normal operation;

f) Propose a system for control of any transfer outside the country of space technology and equipment and for control of weapons, in conformity with the non-proliferation criteria and parameters; said system requires prior authorization by a commission to be established and consisting of the MINISTRIES OF DEFENSE, ECONOMY AND LABOR AND PUBLIC SERVICES and FOREIGN RELATIONS AND RELIGION.

Article 5:

*Art. 5. THE NATIONAL SPACE ACTIVITIES COMMISSION (CONAE) shall have the following organic structure:

a) A Board of Directors composed of NINE (9) members: EIGHT (8) political members and ONE (1) executive/technical member. The Board shall be composed as follows:

Political members:

-A Chairperson. The position of Chairperson shall be held by the Minister of Foreign Relations, International Trade, and Religion.

The Chairperson must present to the President of the Nation an annual report on the activities performed by the agency;

-A Vice-Chairperson. The position of Vice-Chairperson shall be held by the Secretary of Foreign Relations of the MINISTRY OF FOREIGN RELATIONS, INTERNATIONAL TRADE, AND RELIGION;

EXHIBIT C

-A representative, appointed by the NATIONAL EXECUTIVE BRANCH upon proposal by each of the following areas of the National Public Administration:
MINISTRY OF FOREIGN RELATIONS, INTERNAL TRADE, AND RELIGION
MINISTRY OF EDUCATION, SCIENCE, AND TECHNOLOGY
MINISTRY OF DEFENSE
MINISTRY OF ECONOMY
DEPARTMENT OF SCIENCE, TECHNOLOGY, AND PRODUCTION INNOVATION of the MINISTRY OF EDUCATION, SCIENCE, AND TECHNOLOGY;
DEPARTMENT OF COMMUNICATIONS of the MINISTRY OF ECONOMY

These officials shall remain in their positions for FOUR (4) years. The political members of the Board shall receive only the agency expenses resulting from application of Decree N 411 of 06 March 1992.

Executive/technical member:
A permanent plan professional who shall be appointed by the Board members to perform the duties of Executive and Technical Manager.
The Executive and Technical Manager may be removed for serious cause. While in the position, he shall receive a total gross compensation at the maximum scale level of the Agency.

b) Same as in Decree 1662/96
c) Same as in Decree 1662/96
d) Same as in Decree 1662/96

Normative references: National Decree 1.662/96

Article 6:
Art. 6. The resources of the NATIONAL SPACE ACTIVITIES COMMISSION are as follows:

a) The items assigned to it in the national budget, parliamentary approval for which shall be managed by the Executive Branch in conformity with the following procedure:
I) Before each fiscal year, the Commission shall prepare an annual program containing a detailed analysis of all the projects scheduled for that period, together with an annual report of its activities;
II) The application for approval of the budget items shall be formulated with respect to each individual project in particular and the annual program in general;
b) Income from the economic and commercial exploitation of patents, license, consulting, providing of services, and any other income originating in the activity that it performs;
c) Funds originating in or assigned to it pursuant to special laws;
d) Income from performance of research and studies;
e) Gifts and bequests.

Article 7:
Art. 7. The assets of the NATIONAL SPACE ACTIVITIES COMMISSION shall be composed of the following:

EXHIBIT C
ER 80

a) The properties and installations of the Comisión Nacional de Investigaciones Espaciales (CNIE) [National Space Research Commission] located at Avenida Dorrego 4010 in the Federal Capital; the Falda del Carmen industrial facility in the Province of Córdoba; and the San Miguel Space Research Laboratory in the Province of Buenos Aires, which shall be transferred to CONAE as administrative and technical offices;

b) The properties that as of this date are substantially allocated by the Armed Forces and other government agencies to space activities; for this purpose the MINISTRY OF DEFENSE must provide a list within thirty days, together with the corresponding inventory, for their transfer;

c) The actions, rights, and obligations owned by the National Space Research Commission (CNIE) in or with respect to the companies D.E.A., I.A.S.A., IFAT Corporation, Consultec, Desintec, and Consen, and with respect to any other legal entity, to be retained and exercised to the extent that their purpose is compatible with the purpose and the goals of the National Space Activities Commission (CONAE);

d) The assets that it may acquire later in conformity with the provisions of the within decree or other laws that may be applicable to it.

Article 8:

*Art. 8. Decree N. 1.164 of 28 January 1960 is repealed, and the National Space Research Commission (CNIA) is dissolved. All elements, parts, and components of the Condor II missile, in all its versions and stages of development existing as of this date, shall be de-activated, dismantled, reconverted, and/or disabled, depending on their possibilities of use for peaceful purposes and applications, in order conclusively and definitively to effectuate complete and irreversible cancellation of the project in question, with transfer of the scientific personnel, installations, and materials involved to the new National Space Activities Commission (CONAE).

Article 9:

Art. 9. Serve, publish, send to the National Official Register Office, and File.

SIGNATORIES

MENEM – GONZALEZ – DI TELLA - CAVALLO

EXHIBIT C

Juris Services International
Translation Studio
23 Normandy Terrace
Bronxville, NY 10708
Tel: 212 759-5400 Fax: 212 401-8125

CERTIFICATE OF ACCURACY

State of New York          )
Village of Bronxville     : ss.:
County of Westchester    )

This is to certify that the attached translation from SPANISH into ENGLISH of the
document entitled/described below is a true and accurate rendition of the original Spanish
document:

Decreto Nacional 995/1991

BUENOS AIRES, 28 de Mayo de 1991

John E. Considine
President

Sworn to before me on this
7TH day of april 2011

[signature and stamp of notary public]

MARY V. MINSTRELL
Notary Public, State of New York
No. 60-4634910
Qualified in Westchester County
Certificate Filed in New York County
Commission Expires September 30,

EXHIBIT C

ER 82

DECRETO NACIONAL 995/1991
CREACION DE LA COMISION NACIONAL DE ACTIVIDADES ESPACIALES
BUENOS AIRES, 28 de Mayo de 1991
BOLETIN OFICIAL, 03 de Junio de 1991
Vigente de alcance general

EFECTO ACTIVO
ABROGA A Decreto Nacional 1.164/60
POR ART. 8 (B.O. 91-06-03)


EFECTO PASIVO
MODIFICADO POR Decreto Nacional 1.435/91 Art.1
MODIFICA INC. A) DEL ART 5 (B.O. 91-08-05)

MODIFICADO POR Decreto Nacional 2.239/91 Art.1
RECTIFICA ART. 8 (B.O. 91-11-04)

OBSERVADO POR Texto Ordenado Ley 11.672 Art.32
RATIFICA DECRETO (B.O. 96-07-22)

MODIFICADO POR Decreto Nacional 1.615/99 Art.15
SUSTITUYE ART. 5 (B.O. 21-12-99)

MODIFICADO POR Decreto Nacional 157/03 Art.1
INC. A) ART. 5 SUST. (B.O. 31-01-2003)


GENERALIDADES
Síntesis :
SE CREA LA COMISION NACIONAL DE ACTIVIDADES ESPACIALES. SE ESTABLECEN
SUS FUNCIONES.

NOTICIAS ACCESORIAS:
OBSERVACION: Por art. 32 de la Ley 11.672 se ratifican los
Decretos 995/91 y 1435/91.
ANTECEDENTES: ART. 5 SUSTITUIDO POR ART. 1 DEL DEC. 1662/96 (B.O. 15-1-97)


 TEMA
 CIENCIA Y TECNOLOGIA-COMISION NACIONAL DE ACTIVIDADES ESPACIALES:
CREACION; FUNCIONES-PLAN ESPACIAL NACIONAL

VISTO  y  CONSIDERANDO
Que el progreso de la ciencia y tecnología espaciales reviste gran interés para el Estado Nacional,
en razón de las múltiples derivaciones de orden público que sus aplicaciones prácticas
determinan.
Que nuestro país preserva su derecho al desarrollo tecnológico y científico con fines pacíficos.
Que es necesario aprovechar la experiencia alcanzada por nuestro país en el campo espacial.
Que la complejidad técnica de las actividades espaciales hace imprescindible una adecuada
organización y coordinación de todas las entidades nacionales, tanto privadas como públicas,
relacionadas con las mismas, evitando dispersión y superposición de esfuerzos.

EXHIBIT C

Que es menester el establecimiento de una autoridad nacional que centralice, organice, administre y ejecute una política global en materia espacial.

Que la REPUBLICA ARGENTINA rechaza toda utilización militar ofensiva de las actividades espaciales, y reconoce su voluntad de trabajar en este campo con un elevado sentido de paz, responsabilidad y transparencia.

Que resulta conveniente incrementar la participación del Congreso de la Nación en la programación y contralor de la política espacial nacional.

EL PRESIDENTE DE LA NACION ARGENTINA

DECRETA:

artículo 1:

Art. 1.- Créase la COMISION NACIONAL DE ACTIVIDADES ESPACIALES (CONAE), con capacidad para actuar pública y privadamente, en los órdenes científico, técnico, industrial, comercial, administrativo y financiero, con plena autarquía administrativa y financiera, y con dependencia directa y exclusiva del Presidente de la Nación.

artículo 2:

Art. 2.- La COMISION NACIONAL DE ACTIVIDADES ESPACIALES es el único organismo del Estado Nacional competente para entender, diseñar, ejecutar, controlar, gestionar y administrar proyectos y emprendimientos en materia espacial, y posee las siguientes funciones:

a) proponer el Plan Nacional Espacial para la Utilización y Aprovechamiento de la Ciencia y Tecnología Espacial con fines pacíficos, así como su mecanismo de financiación, los cuales deben ser aprobados por el PODER EJECUTIVO NACIONAL.

b) centralizar, organizar, administrar y ejecutar el Plan Nacional Espacial.

artículo 3:

Art. 3.- Son funciones de la COMISION NACIONAL DE ACTIVIDADES ESPACIALES:

a) realizar tareas de investigación conducentes a la formación de grupos, que posean disciplinas y técnicas necesarias para el acceso a la tecnología espacial y sus aplicaciones.

b) realizar tareas de desarrollo en ingeniería de avanzada, abarcando los campos necesarios para alcanzar una adecuada tecnología espacial nacional.

c) ejecutar y coadyuvar al desarrollo integral de los proyectos espaciales nacionales.

d) asegurar la capacitación y el permanente perfeccionamiento de investigadores, profesionales, técnicos y personal idóneo, a través de cursos, becas e interacción con universidades, organismos estatales y otras instituciones del país o del exterior.

e) encauzar la transferencia de tecnología espacial para usos en agronomía, cartografía, prospección minera, meteorología, geología, medio ambiente, medicina, comunicaciones, defensa, industriales u otras áreas, a entes estatales, y especialmente, bajo licencia, al sector privado, brindando asistencia técnica para alcanzar las pautas de calidad que determine.

f) concertar convenios con otros organismos o entidades privadas del país, a fin de transferir o cooperar en el desarrollo de las actividades espaciales.

g) prestar asistencia técnica al Estado Nacional para la participación en congresos, convenciones, jornadas, reuniones y organismos internacionales dedicados a la temática espacial.

h) coordinar todas las actividades del Sistema Espacial Nacional, incluyendo todas las instituciones públicas y privadas que realicen, directa o indirectamente, actividades espaciales.

i) obtención de los recursos financieros necesarios para realizar sus actividades.

j) promover y desarrollar acuerdos de cooperación con entidades públicas y privadas de otros países, de conformidad con la política exterior de la República y con la debida intervención del MINISTERIO DE RELACIONES EXTERIORES Y CULTO.

artículo 4:

EXHIBIT C

Art. 4.- Sin perjuicio de lo establecido en los artículos anteriores, la CONAE, actuando con capacidad pública y privada podrá:

a) designar y remover el personal científico, técnico y administrativo, en forma transitoria o definitiva.

b) dictar su reglamento interno y establecer su estructura orgánica.

c) concertar acuerdos con entidades públicas o privadas, y celebrar los contratos necesarios para el cumplimiento de sus finalidades.

d) realizar actos de comercio, como consecuencia de los contratos que celebre, inherentes a los fines establecidos en este decreto.

e) realizar todos los actos jurídicos necesarios para su normal funcionamiento.

f) proponer un régimen de control de toda transferencia al exterior de equipos y tecnología espacial y de control de armamentos, de conformidad con los criterios y parámetros de no proliferación; dicho régimen requiere la autorización previa de una comisión que se establecerá, integrada por los MINISTERIOS DE DEFENSA, ECONOMIA Y OBRAS Y SERVICIOS PUBLICOS y RELACIONES EXTERIORES Y CULTO.

artículo 5:

*Art. 5: LA COMISION NACIONAL DE ACTIVIDADES ESPACIALES (CONAE), tendrá la siguiente estructura orgánica:

a) Un Directorio integrado por NUEVE (9) miembros, OCHO (8) de carácter político y UNO (1) de carácter ejecutivo-técnico. El Directorio estará compuesto de la siguiente forma:

De carácter político.

- Un Presidente. El cargo de Presidente será desempeñado por el Ministro de Relaciones Exteriores, Comercio Internacional y Culto.

Dicho funcionario deberá presentar al Presidente de la Nación, un informe anual de las actividades desarrolladas por el Organismo.

- Un Vicepresidente. El cargo de Vicepresidente será desempeñado por el Secretario de Relaciones Exteriores, del MINISTERIO DE RELACIONES EXTERIORES, COMERCIO NTERNACIONAL Y CULTO.

- Un representante, designado por el PODER EJECUTIVO NACIONAL, a propuesta de cada una de las siguientes áreas de la Administración Pública Nacional: MINISTERIO DE RELACIONES EXTERIORES, COMERCIO INTERNACIONAL Y CULTO.

MINISTERIO DE EDUCACION, CIENCIA Y TECNOLOGIA.

MINISTERIO DE DEFENSA.

MINISTERIO DE ECONOMIA SECRETARIA DE CIENCIA, TECNOLOGIA E INNOVACION PRODUCTIVA del MINISTERIO DE EDUCACION, CIENCIA Y TECNOLOGIA.

SECRETARIA DE COMUNICACIONES del MINISTERIO DE ECONOMIA.

Dichos funcionarios durarán CUATRO (4) años en sus funciones. Los miembros del Directorio de carácter político sólo percibirán los gastos de representación que surjan de la aplicación del Decreto N 411 del 6 de marzo de 1992.

De carácter ejecutivo-técnico - Un Profesional de Planta Permanente que será designado por los miembros del Directorio para ejercer las funciones de Director Ejecutivo y Técnico.

El Director Ejecutivo y Técnico podrá ser removido con causa fundada y mientras ejerza el cargo, recibirá la remuneración bruta total correspondiente al máximo nivel escalafonario del Organismo.

b) Idem que el decreto 1662/96.

c) Idem que en el decreto 1662/96.

d) Idem que en el decreto 1662/96.

Ref. Normativas:  Decreto Nacional 1.662/96

EXHIBIT C

ER 85

artículo 6:

Art. 6.- Son recursos de la COMISION NACIONAL DE ACTIVIDADES ESPACIALES:

a) las partidas que se le asignen en el presupuesto de la Nación, cuya aprobación parlamentaria será gestionada a través del Poder Ejecutivo de conformidad con el siguiente procedimiento:

I) antes de cada ejercicio, la Comisión elevará un programa anual que contenga un análisis detallado de todos los proyectos previstos para ese período, junto con una memoria anual de sus actividades.

II) la solicitud de aprobación de las partidas presupuestarias se formulará con respecto a cada uno de los proyectos en particular, y al programa anual en general.

b) los ingresos provenientes de la explotación económica y comercial de patentes, licencias, asesoramiento, prestación de servicios y cualquier otro originado en la actividad que desarrolle.

c) los fondos que provengan o se le asignen por la aplicación de leyes especiales.

d) los ingresos que se le adjudiquen para realizar investigaciones y estudios.

e) las donaciones y legados.

artículo 7:

Art. 7.- El patrimonio de la COMISION NACIONAL DE ACTIVIDADES ESPACIALES estará integrado con los siguientes bienes:

a) los inmuebles e instalaciones de la Comisión Nacional de Investigaciones Espaciales (CNIE) sitos en Avenida Dorrego 4010 de la Capital Federal, la planta industrial de Falda del Carmen en la Provincia de Córdoba y el laboratorio de Investigaciones Espaciales de San Miguel en la Provincia de Buenos Aires, que serán transferidos a la CONAE como sedes administrativa y técnica.

b) los que a la fecha estuvieren sustancialmente afectados por las Fuerzas Armadas y otros organismos del Estado a las actividades espaciales; a tal efecto el MINISTERIO DE DEFENSA deberá realizar en el término de treinta días un relevamiento y el correspondiente inventario para su transferencia.

c) las acciones, derechos y obligaciones de que la Comisión Nacional de Investigaciones Espaciales (CNIE) fuere titular en o con respecto a las empresas, D.E.A.; I.A.S.A.; IFAT Corporation; Consultec; Desintec; Consen; y con respecto de cualquier otro ente jurídico, a conservarse y ejercerse en la medida en que su propósito resultare compatible con el objeto y los fines de la COMISION NACIONAL DE ACTIVIDADES ESPACIALES (CONAE).

d) los que adquiera posteriormente conforme a las disposiciones del presente decreto o de las demás leyes que le fueran aplicables

artículo 8:

*Art. 8.- Derógase el Decreto N. 1.164 del 28 de enero de 1960, y

disuélvese la Comisión Nacional de Investigaciones Espaciales, (CNIA), disponiéndose que todos los elementos, partes y componentes del misil Cóndor II, en todas sus versiones y etapas de desarrollo, que existan a la fecha, serán desactivados, desmantelados, reconvertidos y/o inutilizados según sus posibilidades de uso en aplicaciones y destinos pacíficos, de manera de efectivizar en forma fehaciente y definitiva la cancelación completa e irreversible del proyecto respectivo, transfiriéndose el personal científico, instalaciones y materiales involucrados a la nueva COMISION NACIONAL DE ACTIVIDADES ESPACIALES, (CONAE).

artículo 9:

Art. 9.- Comuníquese, publíquese, dése a la Dirección Nacional del Registro Oficial y archívese.

FIRMANTES

MENEM - GONZALEZ - DI TELLA - CAVALLO

EXHIBIT C

# EXHIBIT D

SPACEX NEWS          MULTIMEDIA GALLERY (/MEDIA)          LAUNCH MANIFEST

# LAUNCH MANIFEST

Our launch manifest is populated by a diverse customer base, including space station resupply missions, commercial satellite launch missions, and US government science and national security missions.

FUTURE MISSIONS

COMPLETED MISSIONS

(HT
TP:/
/W
WW
.FA
CEB
OO
K.C
OM
/SH
AR
ER/
SH
AR
ER.
PH
P?
U=
HTT
P%3
A%2
F%2
FW
WW
.SP
AC
EX.
CO
M%
2F
MIS
SIO
NS
&T=
LAU
NC
H
MA
NIF
I
SPA
CEX
)

(HT
TPS
://T
WIT
TER
.CO
M/I
NTE
NT/
TW
EET
?
URL
=HT
TP%
3A
%2F
%2F
WW
W.S
PA
CEX
.CO
M%
2F
MIS
SIO
NS)

(HT
TPS
://P
LUS
.GO
OG
LE.
CO
M/S
HA
RE?
URL
=HT
TP%
3A
%2F
%2F
WW
W.S
PA
CEX
.CO
M%
2F
MIS
SIO
NS)

## FUTURE MISSIONS

| YEAR* | CUSTOMER | LAUNCH | VEHICLE |
|---|---|---|---|
| **2014** | | | |
| 2014 | NASA RESUPPLY TO ISS – FLIGHT 3 | CAPE CANAVERAL | DRAGON (/DRAGON) & FALCON 9 (/FALCON9) |
| **2014** | | | |
| 2014 | ORBCOMM | CAPE CANAVERAL | FALCON 9 (/FALCON9) |
| 2014 | FALCON HEAVY DEMO FLIGHT | VANDENBERG | FALCON HEAVY (/FALCON-HEAVY) |
| 2014 | ASIASAT | CAPE CANAVERAL | FALCON 9 (/FALCON9) |
| 2014 | ASIASAT | CAPE CANAVERAL | FALCON 9 (/FALCON9) |
| 2014 | NASA RESUPPLY TO ISS – FLIGHT 4 | CAPE CANAVERAL | DRAGON (/DRAGON) & FALCON 9 (/FALCON9) |
| 2014 | ORBCOMM | CAPE CANAVERAL | FALCON 9 (/FALCON9) |
| 2014 | NASA RESUPPLY TO ISS – FLIGHT 5 | CAPE CANAVERAL | DRAGON (/DRAGON) & FALCON 9 (/FALCON9) |
| 2014 | NASA RESUPPLY TO ISS – FLIGHT 6 | CAPE CANAVERAL | DRAGON (/DRAGON) & FALCON 9 (/FALCON9) |
| 2014 | SPACE SYSTEMS/LORAL | CAPE CANAVERAL | FALCON 9 (/FALCON9) |
| 2014 | THALES ALENIA SPACE (TURKMENISTAN) | CAPE CANAVERAL | FALCON 9 (/FALCON9) |
| 2014 | DSCOVR (USAF) | CAPE CANAVERAL | FALCON 9 (/FALCON9) |
| 2014 | CONAE (ARGENTINA) | VANDENBERG | FALCON 9 (/FALCON9) |
| 2014 | ASIA BROADCAST SATELLITE/SATMEX | CAPE CANAVERAL | FALCON 9 (/FALCON9) |
| **2015** | | | |

| | | | |
|---|---|---|---|
| 2015 | JASON-3 FOR NASA | VANDENBERG | FALCON 9 (/FALCON9) |
| 2015 | NASA RESUPPLY TO ISS – FLIGHT 7 | CAPE CANAVERAL | FALCON 9 (/FALCON9) |
| 2015 | NSPO (TAIWAN) | VANDENBERG | FALCON 9 (/FALCON9) |
| 2015 | SPACECOM (ISRAEL) | CAPE CANAVERAL | FALCON 9 (/FALCON9) |
| 2015 | NASA RESUPPLY TO ISS – FLIGHT 8 | CAPE CANAVERAL | DRAGON (/DRAGON) & FALCON 9 (/FALCON9) |
| 2015 | NASA RESUPPLY TO ISS – FLIGHT 9 | CAPE CANAVERAL | DRAGON (/DRAGON) & FALCON 9 (/FALCON9) |
| 2015 | NASA RESUPPLY TO ISS – FLIGHT 10 | CAPE CANAVERAL | DRAGON (/DRAGON) & FALCON 9 (/FALCON9) |
| 2015 | BIGELOW AEROSPACE | CAPE CANAVERAL | FALCON 9 (/FALCON9) |
| 2015 | SES (EUROPE) | CAPE CANAVERAL | FALCON 9 (/FALCON9) |
| 2015 | CONAE (ARGENTINA) | VANDENBERG | FALCON 9 (/FALCON9) |
| 2015 | IRIDIUM – FLIGHT 1 | VANDENBERG | FALCON 9 (/FALCON9) |
| 2015 | IRIDIUM – FLIGHT 2 | VANDENBERG | FALCON 9 (/FALCON9) |
| 2015 | STP-2 US AIR FORCE | CAPE CANAVERAL | FALCON HEAVY (/FALCON-HEAVY) |
| 2015 | ASIA BROADCAST SATELLITE/SATMEX | CAPE CANAVERAL | FALCON 9 (/FALCON9) |
| **2016** | | | |
| 2016 | NASA RESUPPLY TO ISS – FLIGHT 11 | CAPE CANAVERAL | DRAGON (/DRAGON) & FALCON 9 (/FALCON9) |
| 2016 | NASA RESUPPLY TO ISS – FLIGHT 12 | CAPE CANAVERAL | DRAGON (/DRAGON) & FALCON 9 (/FALCON9) |
| 2016 | IRIDIUM – FLIGHT 3 | VANDENBERG | FALCON 9 (/FALCON9) |
| 2016 | DRAGONLAB MISSION 1 | CAPE CANAVERAL | DRAGON (/DRAGON) & FALCON 9 (/FALCON9) |
| 2016 | IRIDIUM – FLIGHT 4 | VANDENBERG | FALCON 9 (/FALCON9) |
| 2016 | IRIDIUM – FLIGHT 5 | VANDENBERG | FALCON 9 (/FALCON9) |

ER 89

**2017**

| 2017 | IRIDIUM – FLIGHT 6 | VANDENBERG | FALCON 9 (/FALCON9) |
| 2017 | IRIDIUM – FLIGHT 7 | VANDENBERG | FALCON 9 (/FALCON9) |
| 2017 | INTELSAT | CAPE CANAVERAL | FALCON HEAVY (/FALCON-HEAVY) |

**2018**

| 2018 | DRAGONLAB MISSION 2 | CAPE CANAVERAL | DRAGON (/DRAGON) & FALCON 9 (/FALCON9) |

*Year indicates vehicle arrival at launch site.

# COMPLETED MISSIONS

| LAUNCH | CUSTOMER | LAUNCH SITE | VEHICLE |
|---|---|---|---|
| 2013 | THAICOM (THAILAND) | CAPE CANAVERAL | FALCON 9 (/FALCON9) |
| 2013 | SES (EUROPE) | CAPE CANAVERAL | FALCON 9 (/FALCON9) |
| 2013 | MDA CORP. (CANADA) | VANDENBERG | FALCON 9 (/FALCON9) |
| 2013 | NASA RESUPPLY TO ISS – FLIGHT 2 | CAPE CANAVERAL | DRAGON (/DRAGON) & FALCON 9 (/FALCON9) |
| 2012 | NASA RESUPPLY TO ISS - FLIGHT 1 | CAPE CANAVERAL | DRAGON (/DRAGON) & FALCON 9 (/FALCON9) |
| 2012 | NASA COTS - DEMO 2/3 | CAPE CANAVERAL | DRAGON (/DRAGON) & FALCON 9 (/FALCON9) |
| 2010 | NASA COTS - DEMO 1 | CAPE CANAVERAL | DRAGON (/DRAGON) & FALCON 9 (/FALCON9) |
| 2010 | FALCON 9 INAUGURAL TEST FLIGHT | CAPE CANAVERAL | FALCON 9 (/FALCON9) |
| 2009 | ATSB (MALAYSIA) | KWAJALEIN | FALCON 1 |
| 2008 | FALCON 1 FLIGHT 4 | KWAJALEIN | FALCON 1 |
| 2008 | US GOVERNMENT, ATSB AND NASA | KWAJALEIN | FALCON 1 |

| 2007 | DEMOFLIGHT 2 | KWAJALEIN | FALCON 1 |
| 2006 | DEMOFLIGHT 1 | KWAJALEIN | FALCON 1 |

FOLLOW SPACEX   |
FACEBOOK (HTTPS://WWW.FACEBOOK.COM/SPACEX)
GOOGLE+ (HTTPS://PLUS.GOOGLE.COM/+SPACEX)
TWITTER (HTTPS://TWITTER.COM/SPACEX)
YOUTUBE (HTTP://WWW.YOUTUBE.COM/SPACEX)

© 2013 SPACE EXPLORATION TECHNOLOGIES CORP.

ER 91

# EXHIBIT E

October 2013

# AEROSPACE

## A M E R I C A

## SpaceX's expanding launch manifest

China's growing military might
Servicing satellites in space

A PUBLICATION OF THE AMERICAN INSTITUTE OF AERONAUTICS AND ASTRONAUTICS

ER 93



**AEROSPACE** A M E R I C A

*October 2013*

## DEPARTMENTS

**COMMENTARY** 3
Russian rocket engines forever?

**INTERNATIONAL BEAT** 4
Business aviation: Contraction, then recovery.

**WASHINGTON WATCH** 6
Governing in spite of gridlock.

**CONVERSATIONS** 8
With Loren Thompson.

**SPACE UPDATE** 12
Space station repair: How it's done.

**ENGINEERING NOTEBOOK** 16
Space science GOLD: A payload trend?

**OUT OF THE PAST** 42

**CAREER OPPORTUNITIES** 44

## FEATURES

**CHINA'S GROWING MILITARY MIGHT** 20
China's continuing military modernization is strengthening its ability to wage war in new and expanding areas including cyberspace.
*by James W. Canan*

**NEO THREATS: HOMELAND SECURITY FOR PLANET EARTH** 28
Detecting celestial bodies and deflecting them from orbits that cross ours will take technology and international cooperation.
*by Leonard David*

**SERVICING SATELLITES IN SPACE** 36
Despite complex challenges, the U.S. and several other countries are pursuing the use of robots for on-orbit satellite servicing.
*by Marc Selinger*

## BULLETIN

AIAA Meeting Schedule B2
AIAA Courses and Training Program B4
AIAA News B5

## COVER
A Falcon 9 rocket leaves the hangar at Cape Canaveral, prior to lofting a Dragon capsule toward the ISS. Read all about the Falcon's remarkable record by turning to page 12. Photo courtesy SpaceX.



Page 6

Page 16

Page 20

**Page 28**

Page 36

Aerospace America (ISSN 0740-722X) is published monthly, except August, by the American Institute of Aeronautics and Astronautics, Inc. at 1801 Alexander Bell Drive, Reston, Va. 20191-4344 [703/264-7500]. Subscription rate is 50% of dues for AIAA members (and is not deductible therefrom). Nonmember subscription price: U.S. and Canada, $163, foreign, $200. Single copies $20 each. **Postmaster: Send address changes and subscription orders to address above, attention AIAA Customer Service, 703/264-7500.** Periodical postage paid at Herndon, VA, and at additional mailing offices. Copyright ©2013 by the American Institute of Aeronautics and Astronautics, Inc., all rights reserved. The name Aerospace America is registered by the AIAA in the U.S. Patent and Trademark Office. 40,000 copies of this issue printed. This is Volume 51, No. 9.



# SpaceX's expanding launch manifest

IT IS HARD TO FIND ANOTHER SPACE launch services company with as diverse a customer base as Space Exploration Technologies (SpaceX), because there simply is none. No other company even comes close. Founded only a dozen years ago by Elon Musk, SpaceX has managed to win launch contracts from agencies, companies, consortiums, laboratories, and universities in the U.S., Argentina, Brazil, Canada, China, Germany, Malaysia, Mexico, Peru, Taiwan, Thailand, Turkmenistan, and the Netherlands in a relatively short period. Moreover, it has done so within four completely different markets—civil, commercial, military, and university/nonprofit.

SpaceX has used two different rocket models thus far—Falcon 1 and Falcon 9 v.1.0—and at press time was preparing for the maiden launch of its Falcon 9 v.1.1 in September. That mission is for the Canadian Space Agency and several universities in the U.S., including Cornell, Drexel, Stanford, the University of Colorado at Boulder, and Utah State.

The company is also completing development of Falcon Heavy, which may become the nation's most powerful rocket since Apollo's Saturn V when it is ready for its first launch, sometime in 2015.

So far the company has launched satellites only to LEO. However, it was planning to send its first commercial communications spacecraft, the SES-8 for SES World Skies, to geostationary orbit in September, and its second to GEO, the Thaicom 6 for Shin Satellite, aboard a Falcon 9 v.1.1 this month.

At least seven more GEO comsats are scheduled to go up on v.1.1s during the next two years, including ABS 2A and 3A for Asia Broadcast Satellite of China, Asiasat 6 and 8 for Asia Satellite Telecommunications of China, Satmex 7 and 9 for Satelites Mexicanos of Mexico, the Star One C5 for Star One of Brazil, and the Turkmensat 1 for the Ministry of Communications of Turkmenistan.

## A new market

The move to begin launching to GEO is significant, because it opens up an entirely new and potentially lucrative market for SpaceX. It also puts the company into direct competition with commercial launch heavy hitters Arianespace of Europe with its Ariane 5ECA, U.S.-Russian joint venture International Launch Services with its Proton M, and Sea Launch of Russia with its Zenit 3SL and 3SLB.

Still, SpaceX does not seem to be giving up its LEO market. If anything, it is expanding it. Its manifest is packed with more than two dozen micro, nano, pico, and femto (under 1 kg) satellites, but it is also filled with over 100 small spacecraft, including 16 Orbcomm-NG mobile comsats for Orbcomm of Rochelle Park, New Jersey, and 70 Iridium-NEXT mobile comsats for Iridium Communications.

Most launch companies would be ecstatic with just the Iridium and Orbcomm business, or either. These programs not only contain an awful lot of satellites but are also the kind that just keep on giving, because of the need for replacement spacecraft every few years. But keep in mind that this is in *addition* to an already healthy number of GEO comsat launch orders.

## Ending the myth

Perhaps the most intriguing thing about SpaceX's satellite launch activities is that they are not even its 'core' business. The company has made a name for itself not primarily for launching satellites, but rather for being the first private company to launch resupply capsules to the ISS. Before SpaceX's unmanned Dragon capsule maneuvered in LEO and successfully linked up with the ISS on May 25, 2012, the space docking feat had been performed only by governments—the U.S., Russia, and China.

The SpaceX docking debunked the myth that has prevailed since the launch of Sputnik in 1957, that space travel can be undertaken only by national governments because of the prohibitive costs and technological challenges involved.

Teal Group believes it is that mythology that has helped discourage more private investment in commercial spaceflight and the more robust growth and development of the space market. We sense this is now changing.

SpaceX has hauled supplies—food, water, equipment, and experiments—to ISS twice since the initial docking, and its next resupply mission is scheduled for January 15, 2014. It has created a new commercial space resupply service that could eventually evolve to become an industry. For now, the company is merely providing a little competition for the Russians and their Soyuz and Progress capsules, fulfilling its obligations under its commercial resupply services (CRS) contract to NASA.

Soon SpaceX will be joined by Orbital Sciences and its Cygnus capsule, which it has been developing under a commercial orbital transportation services contract to NASA. Orbital is preparing to start launching Cygnus aboard Antares rockets in December under an eight-mission CRS contract.

SpaceX has 10 more Dragon ISS resupply missions remaining on its CRS contract with NASA. It is proceeding with development of a human-rated capsule known as DragonRider, capable of transporting a crew of up to seven astronauts. Plans call for launching the first crewed Dragon-Rider by 2015, although we suspect it will be closer to 2017. This work is being done under NASA's Commercial Crew Development 2 program.

SpaceX envisions eventually mating an unmanned Dragon with its Falcon Heavy and sending missions to orbit the Moon. It then hopes ultimately to launch a manned Dragon-Rider to land on the lunar surface by 2020. The company would like to send a series of relatively low-cost Red Dragon landers (based on the Dragon capsule) to Mars, launching them on Falcon Heavies. Yes, the ultimate goal is to send humans to Mars—not astronauts to plant the flag, but settlers to establish a colony.

### Against all odds

It sounds like pie in the sky. But this has been heard so often when it comes to SpaceX, and consistently the company has overcome tremendous obstacles and proven the mainstream space establishment wrong. SpaceX failed on its first three launch attempts with its Falcon 1, and it simply persisted until it got it right. After the third

failure on August 2, 2008, there was strong speculation that the company would have to call it quits. Musk had deep pockets, but he could not endlessly keep financing what appeared to be a losing venture. It was thought that in six months to a year he would



SpaceX became the first private company to launch resupply capsules to the ISS, with its unmanned Dragon capsule.

either try another launch or announce that he was closing shop.

What was not expected was that SpaceX would attempt another launch within less than two months. On September 28, 2008, the company completed its first successful Falcon 1 mission, carrying the 165-kg Ratsat demonstration satellite.

In many ways, SpaceX is reminiscent of the U.S. government during the late 1950s and the early 1960s, when so many of its rockets kept blowing up, and it just kept trying until it managed to launch its astronauts to the Moon. The Russians still operate that way. Whenever one of their Proton rockets fails, they launch again within a few months. It is an aggressiveness that some in the space industry may feel is irresponsible. However, it is an attitude that is probably required if you plan to be doing things like sending humans to the Moon and Mars in timeframes of 10 years or less.



Falcon 9 was scheduled to begin launches to GEO in September.

*Space* Update

## SPACEX MANIFEST (to LEO unless noted)

| Date Launched | Launcher | Customer | Country | Payload | Mass (kg) |
|---|---|---|---|---|---|
| 03/24/06 | Falcon 1* | Air Force Academy | U.S. | FalconSat 2 | 19.5 |
| 03/20/07 | Falcon 1* | NASA/DARPA | U.S. | LCT2/AFSS | 150 |
| 08/02/08 | Falcon 1* | MDA | U.S. | Trailblazer | 83.5 |
| | | NASA ARC | U.S. | Nanosail-D | 4 |
| | | NASA ARC | U.S. | PREsat | 4 |
| | | Space Services | U.S. | Celestis 7 | 1 |
| 09/28/08 | Falcon 1 | SpaceX | U.S. | Ratsat | 165 |
| 07/14/09 | Falcon 1 | Astronautic Technology | Malaysia | RazakSAT | 180 |
| 06/04/10 | Falcon 9 v.1.0 | SpaceX | U.S. | Dragon (qual) | < 4,200 |
| 08/12/10 | Falcon 9 v.1.0 | SpaceX | U.S. | Dragon C1 | < 4,900 |
| | | Northrop Grumman/USC | U.S. | Mayflower-Caerus | 5 |
| | | NRO | U.S. | QbX 1, 2 | 5 |
| | | Army SMDC | U.S. | SMDC-ONE 1 | 5 |
| | | Los Alamos National Lab | U.S. | Perseus 000 - 003 | 1.5 |
| 05/22/12 | Falcon 9 v.1.0 | SpaceX | U.S. | Dragon C2 | 6,650 |
| 08/10/12 | Falcon 9 v.1.0 | NASA | U.S. | Dragon CRS-1 | 6,650 |
| | | Orbcomm | U.S. | Orbcomm-NG 1 | 142 |
| 01/13/13 | Falcon 9 v.1.0 | NASA | U.S. | Dragon CRS-2 | 6,650 |
| **Planned** | | | | | |
| 09/13 | Falcon 9 v.1.1 | SES World Skies | Netherlands | SES-8** | 3,200 |
| 09/13 | Falcon 9 v.1.1 | Canadian Space Agency | Canada | Cassiope 1*** | 375 |
| | | University of Colorado | U.S. | DANDE | 50 |
| | | Cornell University | U.S. | CUSat 1, 2 | 1 |
| | | Drexel (and other univs.) | U.S. | POPACS 1 | 1 |
| | | Drexel (and other univs.) | U.S. | POPACS 2 | 1.5 |
| | | Drexel (and other univs.) | U.S. | POPACS 3 | 2 |
| | | Stanford University | U.S. | SNAPS | 0.5 |
| 10/13 | Falcon 9 v.1.1 | Shin Satellite | Thailand | Thaicom 6** | 3,325 |
| 11/13 | Falcon 9 v.1.1 | Orbcomm | U.S. | Orbcomm-NG 2 - 9 | 142 |
| 01/15/14 | Falcon 9 v.1.1 | NASA | U.S. | Dragon CRS-3 | – |
| | | University of Hawaii | U.S. | Ho'oponopono 2 | 3.5 |
| | | NASA Goddard | U.S. | TechCube 1 | 3 |
| | | Montana Space Grant Consortium | U.S. | FIREBIRD A | 2 |
| | | California Inst. of Technology | U.S. | LMRSat | 2 |
| | | Colorado Space Grant Consortium | U.S. | ALL-STAR/THEIA | 1 |
| | | Colorado Space Grant Consortium | U.S. | Hermes 2 | 1 |
| | | City University of New York | U.S. | CUNYSAT 1 | 1 |
| 04/06/14 | Falcon 9 v.1.1 | NASA | U.S. | Dragon CRS-4 | – |
| | | NRL | U.S. | Spinsat | 55 |
| 2014 | Falcon 9 v.1.1 | Asia Satellite Telecommunications | China | Asiasat 6** | 3,813 |
| 2014 | Falcon 9 v.1.1 | Asia Satellite Telecommunications | China | Asiasat 8** | 3,813 |
| 2014 | Falcon 9 v.1.1 | NASA | U.S. | Dragon CRS-5 | – |
| 2014 | Falcon 9 v.1.1 | Army SMDC | U.S. | Kestrel Eye 1 | 14 |
| | | NASA JPL | U.S. | IPEX | 1 |

Otherwise, people and investors lose interest, and the costs of such programs grow out of control, thereby decreasing their odds of completion.

In spite of Musk's bold, seemingly outrageous ideas and predictions, it is getting harder and harder to bet against SpaceX. Just look at the company's launch manifest. It is impressive in terms of both length and diversity, not to mention that it was built up within a few short years. The company has not been around very long. Founded in 2002, it has been launch-ing since only 2006. Its first successful launch did not occur until late 2008, yet it has something on the order of 30-40 flights scheduled over the next five years—depending on how payloads are configured. It certainly sounds like a serious business venture.

The only mildly weak area in SpaceX's manifest is the military side. Falcon rockets have launched only six satellites for the Dept. of Defense, including two for the NRO; one for the Air Force Academy; one for the Army Space and Missile Defense Command (SMDC); one for DARPA; and one for the Missile Defense Agency. All of these spacecraft have been small or tiny, and none could be called critical to national security. They were all technology development satellites—the Pentagon was searching for a cheap ride to space, and SpaceX was glad to provide it.

There are only nine military satellites in the manifest. They include the DSCOVR Earth observation STP-2 ISAT technology satellites for the Air Force, the DSX technology satellite for the

Case: 15-52449 05/26/2015 ID: 9550880 DktEntry: 12-4 Page: 88 of 106 #:46

| Date Launched | Launcher | Customer | Country | Payload | Mass (kg) |
|---|---|---|---|---|---|
| 2014 | Falcon 9 v.1.1 | Orbcomm | U.S. | Orbcomm-NG 10 - 18 | 142 |
| 2014 | Falcon 9 v.1.1 | Satelites Mexicanos | Mexico | Satmex 7** | 5,600 |
| | | Asia Broadcast Satellite | China | ABS 3A** | 1,800 |
| 10/20/14 | Falcon 9 v.1.1 | Ministry of Communications | Turkmenistan | Turkmensat 1** | 4,500 |
| 11/15/14 | Falcon 9 v.1.1 | Air Force | U.S. | DSCOVR | 440**** |
| | | SpaceX | U.S. | SHERPA (demo) | – |
| | | NASA | U.S. | Sunjammer | < 50 |
| 12/05/14 | Falcon 9 v.1.1 | NASA | U.S. | Dragon CRS-6 | – |
| | | NASA | U.S. | SAGE III | 76 |
| 12/30/14 | Falcon 9 v.1.1 | Star One | Brazil | Star One C5** | 4,680 |
| 03/01/15 | | NASA | U.S. | Jason 3 | 553 |
| 03/03/15 | Falcon 9 v.1.1 | NASA | U.S. | Dragon CRS-7 | – |
| 06/01/15 | Falcon 9 v.1.1 | NASA | U.S. | Dragon CRS-8 | – |
| | | Bigelow Aerospace | U.S. | BEAM | 1,360 |
| 2015 | Falcon 9 v.1.1 | Satelites Mexicanos | Mexico | Satmex 9** | 5,600 |
| | | Asia Broadcast Satellite | China | ABS 2A** | 1,800 |
| 2015 | Falcon 9 v.1.1 | CONAE | Argentina | SAOCOM 1A | 900 |
| | | Astronautic Technology | Malaysia | D-Sat | < 25 |
| | | Alas Peruanas University | Peru | UAPSat | 1 |
| 2015 | Falcon 9 v.1.1 | NASA | U.S. | Dragon CRS-9 | – |
| | | | U.S. | IDA 2 | – |
| 2015 | Falcon Heavy | AFRL | U.S. | DSX | 600 |
| | | NRO | Taiwan | Formosat-7A – 7L | 217 |
| 2015 | Falcon 9 v.1.1 | Iridium Satellite | U.S. | Iridium-NEXT 3 - 22 | 800 |
| 2015 | Falcon 9 v.1.1 | Air Force | U.S. | STP-2 ISAT | 5,000 |
| 2015 | Falcon 1e | NRL | U.S. | TacSat-1A | 110 |
| 12/15 | Falcon 9 v.1.1 | SpaceX | U.S. | SHERPA 1 | – |
| 01/05/16 | Falcon 9 v.1.1 | NASA | U.S. | Dragon CRS-10 | – |
| 04/05/16 | Falcon 9 v.1.1 | NASA | U.S. | Dragon CRS-11 | – |
| | | | U.S. | OCO 3 | 550 |
| 2016 | Falcon 1e | GeoOptics | U.S. | Cicero 1 - 6 | 30 |
| 2016 | Falcon 9 v.1.1 | SpaceX | U.S. | DragonLab 1 | – |
| 2016 | Falcon 9 v.1.1 | Iridium Satellite | U.S. | Iridium-NEXT 23 - 62 | 800 |
| 08/08/16 | Falcon 9 v.1.1 | NASA | U.S. | Dragon CRS-12 | – |
| 2016 | Falcon 9 v.1.1 | SpaceX | U.S. | DragonLab 2 | – |
| 2016 | Falcon 9 v.1.1 | CONAE | Argentina | SAOCOM 1B | 900 |
| 2016 | Falcon 9 v.1.1 | SpaceX | U.S. | SHERPA 2 | – |
| 2017 | Falcon 9 v.1.1 | SpaceX | U.S. | DragonRider | – |
| 2017 | Falcon 9 v.1.1 | Iridium Satellite | U.S. | Iridium-NEXT 63 - 72 | 800 |
| 2017 | Falcon 9 v.1.1 | SpaceX | U.S. | SHERPA 3 | – |
| 2018 | Falcon 9 v.1.1 | CSA | Canada | RCM 1 - 3 | 1,300 |
| 2018 | Falcon 9 v.1.1 | Bundeswehr | Germany | SARah Aktiv 1 | 2,200 |
| 2018 | Falcon 9 v.1.1 | B612 Foundation | U.S. | Sentinel Telescope | 1,500 |
| 2019 | Falcon 9 v.1.1 | Bundeswehr | Germany | SARah Passiv 1, 2 | 1,800 |

*Launch failure.  **GEO.  ***Elliptical.  ****Lagrange point 1 ($L_1$).

AFRL, the Kestrel Eye 1 tactical imaging satellite for the Army SMDC, three SARah radar imaging satellites for the German Armed Forces (Bundeswehr), and the Spinsat technology demonstration and TacSat-1A maritime surveillance experimental satellites for the Naval Research Laboratory.

Within a few years, though, SpaceX may be winning its share of launches under the Air Force's Evolved Expendable Launch Vehicle program, which has been the exclusive domain of United Launch Alliance, a Boeing/Lockheed Martin joint venture, for several years. Once SpaceX's Falcon Heavy is certified by the Air Force, it is likely to be selected for at least 14 of the next 50 EELV missions contracted. The prices for Falcon 9 v.1.1 and Falcon Heavy, estimated at nearly half the price of the Atlas Vs and Delta IVs, are going to be attractive to the Air Force, which has long been seeking to reduce its launch costs dramatically—ever since the days of the $350-million-per-mission Titan IV rocket.

Next to cargo resupply work for NASA, Musk views competing head to head with Boeing and Lockheed Martin for EELV contracts as his top priority. Last year the Air Force awarded SpaceX two EELV-class payloads—DSCOVR and STP-2 ISAT. That was the first time a company besides Boeing or Lockheed Martin was allowed into EELV. SpaceX has opened another door for itself, and one that is sure to add noticeably to its manifest.

**Marco Cáceres**
Teal Group
mcaceres@tealgroup.com

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES JUDGES

This case has been assigned to District Judge _____Stephen V. Wilson_____ and the assigned Magistrate Judge is _____Charles F. Eick_____ .

The case number on all documents filed with the Court should read as follows:

### 2:14-cv-02262-SVW(Ex)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge.

Clerk, U. S. District Court

_____March 25, 2014_____

Date

By  APEDRO

Deputy Clerk

---

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

**Subsequent documents must be filed at the following location:**

[x] Western Division
312 N. Spring Street, G-8
Los Angeles, CA 90012

[ ] Southern Division
411 West Fourth St., Ste 1053
Santa Ana, CA 92701

[ ] Eastern Division
3470 Twelfth Street, Room 134
Riverside, CA 92501

**Failure to file at the proper location will result in your documents being returned to you.**

---

CV-18 (08/13)       NOTICE OF ASSIGNMENT TO UNITED STATES JUDGES

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
### for the

| | |
|---|---|
| NML CAPITAL, LTD., | ) |
| | ) |
| | ) |
| | ) |
| _____ | ) |
| *Plaintiff(s)* | ) |
| v. | ) Civil Action No. |
| SPACE EXPLORATION TECHNOLOGIES CORP., aka SPACEX, a | ) |
| Delaware corporation; THE REPUBLIC OF ARGENTINA, a foreign | ) **CV14-02262 - SVW (Ex)** |
| state, including its Comisión Nacional de Actividades Espaciales, | ) |
| aka CONAE, a political subdivision of the Argentine State; and | ) |
| DOES 1-10 | ) |
| _____ | ) |
| *Defendant(s)* | ) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)* SPACE EXPLORATION TECHNOLOGIES CORP. aka SPACEX
1 Rocket Road
Hawthorne, California 90250

THE REPUBLIC OF ARGENTINA, a foreign state, including its
Comisión Nacional de Actividades Espaciales, aka CONAE
Buenos Aires, Argentina

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are: QUINN EMANUEL URQUHART & SULLIVAN, LLP
Harold A. Barza (SB# 80888)
Bruce E. Van Dalsem (SB# 124128)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Tel: (213) 443-3000; Fax: (213) 443-3100

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

CLERK OF COURT

ANDRES PEDRO

Date: MAR 2 5 2014 _____

Signature of Clerk or Deputy Clerk

1202

COPY

AO 440 (Rev. 06/12) Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

☐ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

☐ I returned the summons unexecuted because _____ ; or

☐ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $ ____0.00____ .

I declare under penalty of perjury that this information is true.

Date: _____          _____
                                                 *Server's signature*

                                        _____
                                                 *Printed name and title*

                                        _____
                                                 *Server's address*

Additional information regarding attempted service, etc:

COPY

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

| I. (a) PLAINTIFFS ( Check box if you are representing yourself ☐ ) | DEFENDANTS ( Check box if you are representing yourself ☐ ) |
|---|---|
| NML CAPITAL, LTD. | SPACE EXPLORATION TECHNOLOGIES CORP., aka SPACEX, a Delaware corporation; THE REPUBLIC OF ARGENTINA, a foreign state, including its COMISIÓN NACIONAL DE ACTIVIDADES ESPACIALES, aka CONAE, a political subdivision of the Argentine State; and DOES 1-10 |

| (b) County of Residence of First Listed Plaintiff | County of Residence of First Listed Defendant  Los Angeles |
|---|---|
| (EXCEPT IN U.S. PLAINTIFF CASES) | (IN U.S. PLAINTIFF CASES ONLY) |

| (c) Attorneys (Firm Name, Address and Telephone Number) If you are representing yourself, provide the same information. | Attorneys (Firm Name, Address and Telephone Number) If you are representing yourself, provide the same information. |
|---|---|
| Quinn Emanuel Urquhart & Sullivan, LLP<br>865 South Figueroa Street, 10th Floor<br>Los Angeles, California 90017-2543<br>(213) 443-3000 | |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1. U.S. Government Plaintiff

☒ 3. Federal Question (U.S. Government Not a Party)

☐ 2. U.S. Government Defendant

☐ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1. Original Proceeding
☐ 2. Removed from State Court
☐ 3. Remanded from Appellate Court
☐ 4. Reinstated or Reopened
☐ 5. Transferred from Another District (Specify)
☐ 6. Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☐ Yes ☒ No (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☐ Yes ☒ No  ☐ **MONEY DEMANDED IN COMPLAINT: $**

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.) Creditor's Suit: F.R.C.P., Rule 69, Execution and Cal. C.C.P., Section 708.210. This action is to have certain property in possession of defendant, Space Exploration Technologies Corp., applied to the satisfaction of two money judgments that NML has obtained against defendant Republic of Argentina.

**VII. NATURE OF SUIT** (Place an X in one box only).

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☐ 820 Copyrights |
| ☐ 400 State Reapportionment | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☐ 410 Antitrust | ☐ 130 Miller Act | ☐ 290 All Other Real Property | | ☐ 510 Motions to Vacate Sentence | ☐ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 140 Negotiable Instrument | **TORTS** | **TORTS** | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 450 Commerce/ICC Rates/Etc. | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL INJURY** | **PERSONAL PROPERTY** | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 460 Deportation | | ☐ 310 Airplane | ☐ 370 Other Fraud | **Other:** | ☐ 862 Black Lung (923) |
| ☐ 470 Racketeer Influenced & Corrupt Org. | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 490 Cable/Sat TV | | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☐ 850 Securities/Commodities/Exchange | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | **BANKRUPTCY** | ☐ 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| ☒ 890 Other Statutory Actions | ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | **FORFEITURE/PENALTY** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 891 Agricultural Acts | | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 893 Environmental Matters | ☐ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 690 Other | |
| ☐ 895 Freedom of Info. Act | ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | ☐ 440 Other Civil Rights | **LABOR** | |
| ☐ 896 Arbitration | ☐ 196 Franchise | ☐ 362 Personal Injury-Med Malpractice | ☐ 441 Voting | ☐ 710 Fair Labor Standards Act | |
| | **REAL PROPERTY** | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment | ☐ 720 Labor/Mgmt. Relations | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | ☐ 210 Land Condemnation | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | ☐ 443 Housing/ Accommodations | ☐ 740 Railway Labor Act | |
| | ☐ 220 Foreclosure | | ☐ 445 American with Disabilities-Employment | ☐ 751 Family and Medical Leave Act | |
| ☐ 950 Constitutionality of State Statutes | ☐ 230 Rent Lease & Ejectment | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 446 American with Disabilities-Other | ☐ 790 Other Labor Litigation | |
| | | | ☐ 448 Education | ☐ 791 Employee Ret. Inc. Security Act | |

| FOR OFFICE USE ONLY: | Case Number: | CV14-02262 |
|---|---|---|

| CV-71 (11/13) | | CIVIL COVER SHEET | Page 1 of 3 |
|---|---|---|---|

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**VIII. VENUE:** Your answers to the questions below will determine the division of the Court to which this case will most likely be initially assigned. This initial assignment is subject to change, in accordance with the Court's General Orders, upon review by the Court of your Complaint or Notice of Removal.

| Question A: Was this case removed from state court? ☐ Yes ☒ No  If "no," go to Question B. If "yes," check the box to the right that applies, enter the corresponding division in response to Question D, below, and skip to Section IX. | STATE CASE WAS PENDING IN THE COUNTY OF: | INITIAL DIVISION IN CACD IS: |
|---|---|---|
| | ☐ Los Angeles | Western |
| | ☐ Ventura, Santa Barbara, or San Luis Obispo | Western |
| | ☐ Orange | Southern |
| | ☐ Riverside or San Bernardino | Eastern |

| Question B: Is the United States, or one of its agencies or employees, a party to this action? ☐ Yes ☒ No  If "no," go to Question C. If "yes," check the box to the right that applies, enter the corresponding division in response to Question D, below, and skip to Section IX. | If the United States, or one of its agencies or employees, is a party, is it: | | INITIAL DIVISION IN CACD IS: |
|---|---|---|---|
| | A PLAINTIFF?  Then check the box below for the county in which the majority of DEFENDANTS reside. | A DEFENDANT?  Then check the box below for the county in which the majority of PLAINTIFFS reside. | |
| | ☐ Los Angeles | ☐ Los Angeles | Western |
| | ☐ Ventura, Santa Barbara, or San Luis Obispo | ☐ Ventura, Santa Barbara, or San Luis Obispo | Western |
| | ☐ Orange | ☐ Orange | Southern |
| | ☐ Riverside or San Bernardino | ☐ Riverside or San Bernardino | Eastern |
| | ☐ Other | ☐ Other | Western |

| Question C: Location of plaintiffs, defendants, and claims? (Make only one selection per row) | A. Los Angeles County | B. Ventura, Santa Barbara, or San Luis Obispo Counties | C. Orange County | D. Riverside or San Bernardino Counties | E. Outside the Central District of California | F. Other |
|---|---|---|---|---|---|---|
| Indicate the location in which a majority of plaintiffs reside: | ☐ | ☐ | ☐ | ☐ | ☐ | ☒ |
| Indicate the location in which a majority of defendants reside: | ☐ | ☐ | ☐ | ☐ | ☐ | ☒ |
| Indicate the location in which a majority of claims arose: | ☐ | ☐ | ☐ | ☐ | ☐ | ☒ |

| C.1. Is either of the following true? If so, check the one that applies: | C.2. Is either of the following true? If so, check the one that applies: |
|---|---|
| ☐ 2 or more answers in Column C | ☐ 2 or more answers in Column D |
| ☐ only 1 answer in Column C and no answers in Column D | ☐ only 1 answer in Column D and no answers in Column C |
| Your case will initially be assigned to the SOUTHERN DIVISION. Enter "Southern" in response to Question D, below.  If none applies, answer question C2 to the right. ➡ | Your case will initially be assigned to the EASTERN DIVISION. Enter "Eastern" in response to Question D, below.  If none applies, go to the box below. ⬇ |

Your case will initially be assigned to the
WESTERN DIVISION.
Enter "Western" in response to Question D below.

| Question D: Initial Division? | INITIAL DIVISION IN CACD |
|---|---|
| Enter the initial division determined by Question A, B, or C above: ➡ | WESTERN DIVISION |

ER 103

### UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**IX(a). IDENTICAL CASES:** Has this action been previously filed **in this court** and dismissed, remanded or closed?  ☒ NO  ☐ YES

If yes, list case number(s):

**IX(b). RELATED CASES:** Have any cases been previously filed **in this court** that are related to the present case?  ☒* NO  ☐ YES

*Plaintiff does not believe this case is related to two prior dismissed cases, but in an abundance of caution, Plaintiff has filed

If yes, list case number(s): a notice of related case herewith identifying Case Nos. CV-11-03507-SJO (RZx) and CV-11-3970-SJO (RZx).

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)  ☐  A. Arise from the same or closely related transactions, happenings, or events; or

☐  B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐  C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐  D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**X. SIGNATURE OF ATTORNEY**
**(OR SELF-REPRESENTED LITIGANT):**   _[signature]_   DATE: 3/25/14

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |

ER 104

Case: 15-55449, 05/26/2015, ID: 9550383, DktEntry: 19-2, Page 95 of 106

(Ex),APPEAL,CLOSED,DISCOVERY

# UNITED STATES DISTRICT COURT for the CENTRAL DISTRICT OF CALIFORNIA (Western Division - Los Angeles)
## CIVIL DOCKET FOR CASE #: 2:14-cv-02262-SVW-E

| | |
|---|---|
| NML Capital Ltd v. Space Exploration Technologies Corp. et al | Date Filed: 03/25/2014 |
| Assigned to: Judge Stephen V. Wilson | Date Terminated: 05/01/2015 |
| Referred to: Magistrate Judge Charles F. Eick | Jury Demand: None |
| Case in other court: 9th Circuit, 15-55449 | Nature of Suit: 890 Other Statutory Actions |
| Cause: 28:1331 Fed. Question | Jurisdiction: Federal Question |

**Plaintiff**

**NML Capital Ltd**                    represented by  **Bruce E Van Dalsem**
Quinn Emanuel Urquhart and Sullivan LLP
865 South Figueroa Street 10th Floor
Los Angeles, CA 90017-2543
213-443-3000
Fax: 213-443-3100
Email: brucevandalsem@quinnemanuel.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Harold A Barza**
Quinn Emanuel Urquhart and Sullivan LLP
865 South Figueroa Street 10th Floor
Los Angeles, CA 90017-2543
213-443-3211
Fax: 213-443-3100
Email: halbarza@quinnemanuel.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Matthew S Hosen**
Quinn Emanuel Urquhart and Sullivan LLP
865 South Figueroa Street 10th Floor
Los Angeles, CA 90017
213-443-3164
Fax: 213-454-3164
Email: matthosen@quinnemanuel.com
*LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*

**Ian Scott Shelton**
Quinn Emanuel Urquhart and Sullivan
LLP
865 South Figueroa Street 10th Floor
Los Angeles, CA 90017-2543
213-443-3000
Fax: 213-443-3100
Email: ianshelton@quinnemanuel.com
*ATTORNEY TO BE NOTICED*

**Robert Allen Cohen**
Dechert LLP
1095 Avenue of the Americas
New York, NY 10036
212-698-3501
Fax: 212-314-0001
Email: robert.cohen@dechert.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Steven A Engel**
Dechert LLP
1900 K Street NW
Washington, DC 20006
202-261-3000
Fax: 202-261-3143
Email: Steven.Engel@dechert.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Space Exploration Technologies
Corp.**
*a Delaware corporation*
*also known as*
Spaces

represented by **William P Donovan , Jr**
Cooley LLP
1333 2nd Avenue Suite 400
Santa Monica, CA 90401
310-883-6435
Fax: 310-883-6500
Email: wdonovan@cooley.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**The Republic of Argentina**
*a foreign state, including its Comision
Nacional De Actividades Espaciales, a*

represented by **Carmine D Boccuzzi**
Cleary Gottlieb Steen and Hamilton
LLP

*political subdivision of the Argentine*
*State*
*also known as*
Conae

One Liberty Plaza
New York, NY 10006
212-225-2508
Fax: 212-225-3999
Email: cboccuzzi@cgsh.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Donald R Brown**
Manatt Phelps and Phillips LLP
11355 West Olympic Boulevard
Los Angeles, CA 90064-1614
310-312-4000
Fax: 310-312-4224
Email: dbrown@manatt.com
*ATTORNEY TO BE NOTICED*

**Jonathan I Blackman**
Cleary Gottlieb Steen and Hamilton
LLP
One Liberty Plaza
New York, NY 10006
212-225-2490
Fax: 212-225-3999
Email: jblackman@cgsh.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Matthew D Slater**
Cleary Gottlieb Steen and Hamilton
LLP
2000 Pennsylvania Avenue NW 9th
Floor
Washington, DC 20006
202-974-1930
Fax: 202-971-1999
Email: mslater@cgsh.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Michael M Brennan**
Cleary Gottlieb Steen and Hamilton
LLP
One Liberty Plaza
New York, NY 10006
212-225-2117
Fax: 212-225-3999
Email: mbrennan@cgsh.com

*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Does**
*1-10*

| Date Filed | # | Docket Text |
|---|---|---|
| 03/25/2014 | 1 | COMPLAINT against Defendants Space Exploration Technologies Corp., The Republic of Argentina, Does 1-10. Case assigned to Judge Stephen V. Wilson for all further proceedings. Discovery referred to Magistrate Judge Charles F. Eick.(Filing fee $ 400 PAID.), filed by Plaintiff NML Capital Ltd.(et) (mg). (Entered: 03/28/2014) |
| 03/25/2014 | 2 | 21 DAY Summons Issued re Complaint - (Discovery) 1 as to Defendants Space Exploration Technologies Corp., The Republic of Argentina. (et) (Entered: 03/28/2014) |
| 03/25/2014 | 3 | CERTIFICATION AND NOTICE of Interested Parties filed by Plaintiff NML Capital Ltd. (et) (mg). (Entered: 03/28/2014) |
| 03/25/2014 | 4 | NOTICE of Related Case(s) filed by Plaintiff NML Capital Ltd. Related Case (s): CV 11-03507-SJO (RZx); CV 11-3970 SJO (RZx). (et) (mg). (Entered: 03/28/2014) |
| 03/28/2014 | 5 | NOTICE OF FILING FEE DUE on Pro Hac Vice Application mailed to attorney Robert Allen Cohen for Plaintiff NML Capital Ltd. Pro Hac Vice application has not been received by the court. Please return your completed Application of Non-Resident Attorney to Appear in a Specific Case, form G-64, or a copy of the Notice of Electronic Filing of your application and the $325.00 fee and this notice immediately. Out-of-state federal government attorneys who are not employed by the U.S. Department of Justice are required to file a Pro Hac Vice application;no filing fee is required. You have been removed as counsel of record from this case for failure to submit this filing fee. (et) (Entered: 03/28/2014) |
| 04/01/2014 | 6 | PROOF OF SERVICE Executed by Plaintiff NML Capital Ltd, upon Defendant Space Exploration Technologies Corp. served on 3/25/2014, answer due 4/15/2014. Service of the Summons and Complaint were executed upon Sharon Brough, In-house counsel in compliance with Federal Rules of Civil Procedure by service on a domestic corporation, unincorporated association, or public entity. Original Summons returned. (Barza, Harold) (Entered: 04/01/2014) |
| 04/02/2014 | 7 | RESPONSE filed by Pro Hac Vice attorney *Robert Allen Cohen;* Harold A Barza on behalf of Plaintiff NML Capital Ltd. RE: Docket # 5. PHV fee To be Paid. (Attachments: # 1 Proposed Order)(Barza, Harold) (Entered: 04/02/2014) |
| 04/03/2014 | 8 | PROOF OF SERVICE Executed by Plaintiff NML Capital Ltd, upon Defendant The Republic of Argentina served on 4/1/2014, answer due 4/22/2014. Service of the Summons and Complaint were executed upon Roberto H. Barrientos; |

| | | |
|---|---|---|
| | | Vice President Banco de la Nacion Argentina in compliance with Federal Rules of Civil Procedure by service on a domestic corporation, unincorporated association, or public entity. Original Summons NOT returned. *Answer due 60 days after service under FSIA, 5/30/2014.* (Barza, Harold) (Entered: 04/03/2014) |
| 04/03/2014 | 9 | PROOF OF SERVICE Executed by Plaintiff NML Capital Ltd, upon Defendant Service of the Summons and Complaint were executed upon Roberto H. Barrientos; Vice President - Banco de la Nacion Argentina in compliance with Federal Rules of Civil Procedure by service on a domestic corporation, unincorporated association, or public entity. Original Summons NOT returned. *Party Served: Comision Nacional de Actividades Espaciales, aka CONAE, a political subdivision of the Argentine State, c/o Banco de la Nacion Argentina. Answer due 60 days after service under FSIA, 5/30/2014.* (Barza, Harold) (Entered: 04/03/2014) |
| 04/04/2014 | 10 | ORDER by Judge Stephen V. Wilson Granting Application of Non Resident Attorney to Appear 7 by Robert Allen Cohen to appear on behalf of Plaintiff NML Capital Ltd. Harold A. Barza is designated as local counsel. Fee PAID. (lt) (Entered: 04/07/2014) |
| 04/07/2014 | 11 | NOTICE TO FILER OF DEFICIENCIES in Electronically Filed Documents RE: Response to Notice of Fee Due on Pro Hac Vice Application 7 . The following error(s) was found: Incorrect event selected. The correct event is: Motions and Related Filings -->> Applications -->> Appear Pro Hac Vice. Note: Wrong event does not provide relief or changes sought.. In response to this notice the court may order (1) an amended or correct document to be filed (2) the document stricken or (3) take other action as the court deems appropriate. You need not take any action in response to this notice unless and until the court directs you to do so. (lt) (Entered: 04/07/2014) |
| 04/09/2014 | 12 | STIPULATION Extending Time to Answer the complaint as to Space Exploration Technologies Corp. answer now due 5/15/2014, re Complaint - (Discovery), 1 filed by defendant Space Exploration Technologies Corp.. (Attorney William P Donovan, Jr added to party Space Exploration Technologies Corp.(pty:dft))(Donovan, William) (Entered: 04/09/2014) |
| 04/09/2014 | 13 | NOTICE of Interested Parties filed by defendant Space Exploration Technologies Corp., (Donovan, William) (Entered: 04/09/2014) |
| 04/09/2014 | 14 | CORPORATE DISCLOSURE STATEMENT filed by Defendant Space Exploration Technologies Corp. (Donovan, William) (Entered: 04/09/2014) |
| 04/11/2014 | 15 | ORDER RE TRANSFER PURSUANT TO GENERAL ORDER 08-05 (Related Case) filed. Transfer of case declined by Judge S. James Otero, for the reasons set forth on this order. Related Case No. CV 11-03507 SJO(RZx) (rn) (Entered: 04/11/2014) |
| 04/14/2014 | 16 | NEW CASE ORDER upon filing of the complaint by Judge Stephen V. Wilson. (pc) (Entered: 04/14/2014) |
| 05/15/2014 | 17 | NOTICE OF MOTION AND MOTION to Dismiss defendant Space Exploration Technologies Corp. *and Notice of Joinder in the Republic of Argentina's Motion to Dismiss* filed by defendant Space Exploration |

|  |  | Technologies Corp.. Motion set for hearing on 6/30/2014 at 01:30 PM before Judge Stephen V. Wilson. (Attachments: # 1 Proposed Order)(Donovan, William) (Entered: 05/15/2014) |
|---|---|---|
| 05/15/2014 | 18 | NOTICE OF MOTION AND MOTION to Dismiss *Complaint Under F.R.C.P. 12(b)(1) and (6)* The Republic of Argentina. Motion set for hearing on 6/30/2014 at 01:30 PM before Judge Stephen V. Wilson. (Attachments: # 1 Memorandum of Points and Authorities in Support of Motion by the Republic of Argentina to Dismiss Complaint Under F.R.C.P. 12(b)(1) and (6), # 2 Declaration of Donald R. Brown, # 3 Exhibit A to Declaration of Donald R. Brown, # 4 Declaration of Conrado F. Varotto, # 5 Exhibit A to Declaration of Conrado F. Varotto, # 6 Exhibit B to Declaration of Conrado F. Varotto, # 7 Proposed Order Granting Motion by the Republic of Argentina to Dismiss Complaint Under F.R.C.P. 12(b)(1) and (6))(Attorney Donald R Brown added to party The Republic of Argentina(pty:dft))(Brown, Donald) (Entered: 05/15/2014) |
| 05/16/2014 | 19 | Joint STIPULATION for Hearing re MOTION to Dismiss *Complaint Under F.R.C.P. 12(b)(1) and (6)* 18 , MOTION to Dismiss defendant Space Exploration Technologies Corp. *and Notice of Joinder in the Republic of Argentina's Motion to Dismiss* 17 filed by plaintiff NML Capital Ltd. (Attachments: # 1 Proposed Order re Briefing Schedule and Hearing Date) (Barza, Harold) (Entered: 05/16/2014) |
| 05/20/2014 | 20 | NOTICE OF MOTION AND MOTION for attorney Carmine D. Boccuzzi to Appear Pro Hac Vice(PHV Fee of $325 receipt number 0973-13838225 paid.) filed by Defendant The Republic of Argentina. (Brown, Donald) (Entered: 05/20/2014) |
| 05/20/2014 | 21 | NOTICE TO FILER OF DEFICIENCIES in Electronically Filed Documents RE: MOTION for attorney Carmine D. Boccuzzi to Appear Pro Hac Vice(PHV Fee of $325 receipt number 0973-13838225 paid.) 20 . The following error(s) was found: Incorrect event selected.Proposed Document was not submitted as a separate attachment.Other error(s) with document(s) are specified below. The correct event is: Applications >> Appear Pro Hac Vice. Other error(s) with document(s): No signature on Application. Local counsel did not sign the application. See LR 11-1. See Instructions for Applicants (1) (G-64). In response to this notice the court may order (1) an amended or correct document to be filed (2) the document stricken or (3) take other action as the court deems appropriate. You need not take any action in response to this notice unless and until the court directs you to do so. (lt) (Entered: 05/20/2014) |
| 05/20/2014 | 22 | APPLICATION for attorney Carmine D. Boccuzzi to Appear Pro Hac Vice (PHV FEE NOT PAID.) filed by Defendant The Republic of Argentina. (Attachments: # 1 Proposed Order on Application of Non-Resident Attorney to Appear in a Specific Case Pro Hac Vice, # 2 Exhibit A (Receipt for Payment of $325 PHV fee))(Brown, Donald) (Entered: 05/20/2014) |
| 05/20/2014 | 23 | APPLICATION for attorney Michael M. Brennan to Appear Pro Hac Vice(PHV Fee of $325 receipt number 0973-13841558 paid.) filed by Defendant The Republic of Argentina. (Attachments: # 1 Proposed Order on Application of |

| | | Non-Resident Attorney to Appear in a Specific Case Pro Hac Vice)(Brown, Donald) (Entered: 05/20/2014) |
|---|---|---|
| 05/20/2014 | 24 | APPLICATION for attorney Jonathan I. Blackman to Appear Pro Hac Vice (PHV Fee of $325 receipt number 0973-13841710 paid.) filed by Defendant The Republic of Argentina. (Attachments: # 1 Proposed Order on Application of Non-Resident Attorney to Appearl in a Specific Case Pro Hac Vice)(Brown, Donald) (Entered: 05/20/2014) |
| 05/20/2014 | 25 | ORDER GRANTING THESTIPULATION REGARDING THEBRIEFING SCHEDULE ONDEFENDANTS MOTIONS TO DISMISSTHE COMPLAINT by Judge Stephen V. Wilson, re Stipulation for Hearing, 19 ,1) Plaintiffs opposition brief to Defendants motions to dismiss shall be filed on or before June 5, 2014;(2) Defendants reply briefs in support of their motions to dismiss shall be filed on orbefore June 16, 2014; and(3) the hearing on Defendants motions to dismiss shall be scheduled for June 30,2014. (pj) (Entered: 05/20/2014) |
| 05/21/2014 | 26 | ORDER by Judge Stephen V. Wilson: granting 22 Application to Appear Pro Hac Vice by Attorney Carmine D. Boccuzzi on behalf of Defendant The Republic of Argentina, designating Donald R. Brown as local counsel. (lt) (Entered: 05/22/2014) |
| 05/21/2014 | 27 | ORDER by Judge Stephen V. Wilson: granting 23 Application to Appear Pro Hac Vice by Attorney Michael M. Brennan on behalf of Defendant The Republic of Argentina, designating Donald R. Brown as local counsel. (lt) (Entered: 05/22/2014) |
| 05/21/2014 | 28 | ORDER by Judge Stephen V. Wilson: granting 24 Application to Appear Pro Hac Vice by Attorney Jonathan I. Blackman on behalf of Defendant The Republic of Argentina, designating Donald R. Brown as local counsel. (lt) (Entered: 05/22/2014) |
| 06/04/2014 | 29 | Notice of Appearance or Withdrawal of Counsel: for attorney Ian Scott Shelton counsel for Plaintiff NML Capital Ltd. Adding Ian S. Shelton as attorney as counsel of record for Plaintiff NML Capital, Ltd. for the reason indicated in the G-123 Notice. Filed by Plaintiff NML Capital, Ltd.. (Attorney Ian Scott Shelton added to party NML Capital Ltd(pty:pla))(Shelton, Ian) (Entered: 06/04/2014) |
| 06/05/2014 | 30 | MEMORANDUM in Opposition to MOTION to Dismiss *Complaint Under F.R.C.P. 12(b)(1) and (6)* 18 , MOTION to Dismiss defendant Space Exploration Technologies Corp. *and Notice of Joinder in the Republic of Argentina's Motion to Dismiss* 17 *Memorandum of Points and Authorities in Opposition to Motions by the Republic of Argentina and SpaceX to Dismiss Complaint Under F.R.C.P. 12(b)(1) and (6)* filed by Plaintiff NML Capital Ltd. (Barza, Harold) (Entered: 06/05/2014) |
| 06/16/2014 | 31 | REPLY in support of MOTION to Dismiss *Complaint Under F.R.C.P. 12(b)(1) and (6)* 18 filed by Defendant The Republic of Argentina. (Brown, Donald) (Entered: 06/16/2014) |
| 06/27/2014 | 32 | |

|  |  |  |
|---|---|---|
|  |  | APPLICATION for attorney Steven A. Engel to Appear Pro Hac Vice(PHV Fee of $325 receipt number 0973-14037058 paid.) filed by Plaintiff NML Capital Ltd. (Attachments: # 1 Proposed Order)(Barza, Harold) (Entered: 06/27/2014) |
| 06/27/2014 | 33 | APPLICATION for attorney Matthew D. Slater to Appear Pro Hac Vice(PHV Fee of $325 receipt number 0973-14039115 paid.) filed by Defendant The Republic of Argentina. (Attachments: # 1 Proposed Order)(Brown, Donald) (Entered: 06/27/2014) |
| 06/30/2014 | 34 | Amended APPLICATION for attorney Matthew D. Slater to Appear Pro Hac Vice (PHV FEE NOT PAID.) filed by Defendant The Republic of Argentina. (Attachments: # 1 Proposed Order on Application of Non-Resident Attorney to Appear in a Specific Case Pro Hac Vice, # 2 Receipt for payment of fees re Pro Hac Vice Application)(Brown, Donald) (Entered: 06/30/2014) |
| 06/30/2014 | 35 | TRANSCRIPT ORDER as to plaintiff NML Capital Ltd Court Reporter. Court will contact Albert Villamil at albertvillamil@quinnemanuel.com with any questions regarding this order. Transcript portion requested: Other: Hearing Transcript re Motions to Dismiss 6/30/2014. Transcript preparation will not begin until payment has been satisfied with the court reporter/recorder. (Barza, Harold) (Entered: 06/30/2014) |
| 06/30/2014 | 39 | MINUTES OF 17 MOTION to Dismiss defendant Space Exploration Technologies Corp.and Notice of Joinder in the Republic of Argentina's Motion to Dismiss filedby defendant Space Exploration Technologies Corp 18 MOTION to Dismiss Complaint Under F.R.C.P. 12(b)(1) and (6) TheRepublic of Argentina Motion Hearing held before Judge Stephen V. Wilson: Hearing held. The motions are submitted. Order to issue. Court Reporter: Deborah Gackle. (pj) (Entered: 07/03/2014) |
| 07/01/2014 | 36 | ORDER by Judge Stephen V. Wilson: granting 32 Application to Appear Pro Hac Vice by Attorney Steven A. Engel on behalf of Plaintiff, designating Harold A. Barza as local counsel. (lt) (Entered: 07/02/2014) |
| 07/01/2014 | 37 | ORDER by Judge Stephen V. Wilson: granting 33 Application to Appear Pro Hac Vice by Attorney Matthew D. Slater on behalf of Defendant The Republic of Argentina, designating Donald R. Brown as local counsel. (lt) (Entered: 07/02/2014) |
| 07/01/2014 | 38 | ORDER by Judge Stephen V. Wilson: granting 34 Application to Appear Pro Hac Vice by Attorney Matthew D. Slater on behalf of Defendant The Republic of Argentina, designating Donald R. Brown as local counsel. (lt) (Entered: 07/02/2014) |
| 07/25/2014 | 40 | TRANSCRIPT ORDER re: Motion to Dismiss (cause or other),,, 18 , Motion to Dismiss Party, 17 , The Republic of Argentina Court Smart (CS). Court will contact Donald R. Brown at dbrown@manatt.com with any questions regarding this order. Transcript portion requested: Other: 6/30/2014. Transcript preparation will not begin until payment has been satisfied with the court reporter/recorder. (Brown, Donald) (Entered: 07/25/2014) |
| 08/19/2014 | 41 | TRANSCRIPT for proceedings held on 6/30/14 PM Session. Court Reporter/Electronic Court Recorder: Deborah K. Gackle, phone number (213) |

| | | |
|---|---|---|
| | | 620-1140. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Electronic Court Recorder before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Notice of Intent to Redact due within 7 days of this date. Redaction Request due 9/9/2014. Redacted Transcript Deadline set for 9/19/2014. Release of Transcript Restriction set for 11/17/2014. (Gackle, Deborah) (Entered: 08/19/2014) |
| 08/19/2014 | 42 | NOTICE OF FILING TRANSCRIPT filed for proceedings 6/30/14 PM session re Transcript 41 THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY. (Gackle, Deborah) TEXT ONLY ENTRY (Entered: 08/19/2014) |
| 02/09/2015 | 43 | NOTICE OF MOTION AND MOTION for Leave to Serve Discovery Prior to Conducting a Rule 26(f) Conference filed by plaintiff NML Capital Ltd. Motion set for hearing on 3/9/2015 at 01:30 PM before Judge Stephen V. Wilson. (Attachments: # 1 Declaration of Harold Barza, # 2 Declaration of Keith Volkert, # 3 Exhibit 1 of Harold Barza Declaration, # 4 Exhibit 2 of Harold Barza Declaration, # 5 Exhibit 3 of Harold Barza Declaration, # 6 Exhibit 4 of Harold Barza Declaration, # 7 Exhibit 5 of Harold Barza Declaration, # 8 Exhibit 6 of Harold Barza Declaration, # 9 Exhibit 7 of Harold Barza Declaration, # 10 Exhibit 8 of Harold Barza Declaration, # 11 Exhibit 9 of Harold Barza Declaration, # 12 Proposed Order Granting Plaintiff's Motion) (Barza, Harold) (Entered: 02/09/2015) |
| 02/11/2015 | 44 | STIPULATION for Extension of Time to File Response in Opposition as to MOTION for Leave to Serve Discovery Prior to Conducting a Rule 26(f) Conference 43 filed by Defendant The Republic of Argentina. (Attachments: # 1 Proposed Order)(Brown, Donald) (Entered: 02/11/2015) |
| 02/13/2015 | 45 | ORDER GRANTING STIPULATION REGARDING BRIEFING SCHEDULE FOR PLAINTIFF'S MOTION FOR LEAVE TO SERVE DISCOVERY PRIOR TO RULE 26(f) CONFERENCE by Judge Stephen V. Wilson 44 . Defendants' Oppositions to NMLs Motion shall be filed on or before February 17, 2015. The modification to the briefing schedule does not affect the deadline for NML's reply or the hearing date for the Motion. (im) (Entered: 02/13/2015) |
| 02/17/2015 | 46 | Opposition of the Republic of Argentina re: MOTION for Leave to Serve Discovery Prior to Conducting a Rule 26(f) Conference 43 filed by Defendant The Republic of Argentina. (Brown, Donald) (Entered: 02/17/2015) |
| 02/17/2015 | 47 | OPPOSITION in opposition to re: MOTION for Leave to Serve Discovery Prior to Conducting a Rule 26(f) Conference 43 filed by Defendant Space Exploration Technologies Corp.. (Donovan, William) (Entered: 02/17/2015) |
| 02/23/2015 | 48 | REPLY in support of MOTION for Leave to Serve Discovery Prior to Conducting a Rule 26(f) Conference 43 filed by Plaintiff NML Capital Ltd. (Hosen, Matthew) (Entered: 02/23/2015) |
| 03/05/2015 | 49 | ORDER GRANTING DEFENDANTS' MOTION TO DISMISS 17 ][18]. Because the Launch Service Rights are immune from attachment and execution under the FSIA, the Court GRANTS Defendants motion to dismiss the complaint by Judge Stephen V. Wilson (pj) (Entered: 03/05/2015) |

| 03/05/2015 | 50 | IN CHAMBERS ORDER-TEXT ONLY ENTRY by Judge Stephen V. Wilson re 43 MOTION for Leave to Serve Discovery Prior to Conducting a Rule 26(f) Conference filed by plaintiff NML Capital Ltd.: Hearing on the motion is vacated and off-calendar. The motion is denied as moot. THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY. (pc) TEXT ONLY ENTRY (Entered: 03/05/2015) |
|---|---|---|
| 03/06/2015 | 51 | AMENDED AND CORRECTED ORDER GRANTING DEFENDANTS' MOTION TO DISMISS by Judge Stephen V. Wilson, 49 Because the Launch Service Rights are immune from attachment and execution under the FSIA, the Court GRANTS Defendants motion to dismiss the complaint and DISMISSES the case WITHOUT PREJUDICE. (pj) (Entered: 03/06/2015) |
| 03/24/2015 | 52 | NOTICE OF APPEAL to the 9th CCA filed by Plaintiff NML Capital Ltd. Appeal of Order, 51 (Appeal fee of $505 receipt number 0973-15430425 paid.) (Barza, Harold) (Entered: 03/24/2015) |
| 03/25/2015 | 53 | NOTIFICATION by Circuit Court of Appellate Docket Number 15-55449, 9th Circuit regarding Notice of Appeal to 9th Circuit Court of Appeals 52 as to Plaintiff NML Capital Ltd. (mat) (Entered: 03/27/2015) |
| 04/27/2015 | 54 | ORDER from Ninth Circuit Court of Appeals filed re: Notice of Appeal to 9th Circuit Court of Appeals 52 filed by NML Capital Ltd. CCA # 15-55449. Appellant's motion for reconsideration is granted. Brief schedules have been set. [See document for details] (mat) (Entered: 04/28/2015) |
| 05/01/2015 | 55 | MINUTES OF IN CHAMBERS ORDER MOVING CASE TO INACTIVE CALENDAR by Judge Stephen V. Wilson: In light of the appeal, the Court moves this case to the inactive calendar. The parties shall notify the Court, in writing, when the matter should be restored to the active calendar. (Made JS-6. Case Terminated.) Court Reporter: N/A. (gk) (Entered: 05/04/2015) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 05/19/2015 10:08:45 | | |
| **PACER Login:** gi0002:2554876:4036719 | **Client Code:** 26520-00021 | |
| **Description:** Docket Report | **Search Criteria:** 2:14-cv-02262-SVW-E End date: 5/19/2015 | |
| **Billable Pages:** 8 | **Cost:** 0.80 | |

Dated: May 26, 2015                    Respectfully submitted,


HAROLD A. BARZA                        /s/ Matthew D. McGill
BRUCE E. VAN DALSEM                    THEODORE B. OLSON
IAN S. SHELTON                         MATTHEW D. MCGILL
QUINN EMANUEL URQUHART &               CHRISTOPHER B. LEACH
SULLIVAN, LLP                          GIBSON, DUNN & CRUTCHER LLP
865 South Figueroa Street, 10th Floor  1050 Connecticut Avenue, N.W.
Los Angeles, CA 90017                  Washington, DC  20036-5306
Telephone: 213.443.3000                Telephone: 202.955.8500
Facsimile: 213.443.3100                Facsimile: 202.467.0539


STEVEN A. ENGEL                        ALEXANDER K. MIRCHEFF
DECHERT LLP                            GIBSON, DUNN & CRUTCHER LLP
1095 Avenue of the Americas            333 South Grand Avenue
New York, NY 10036                     Los Angeles, CA 90071-3197
Telephone: 212.698.3500                Telephone: 213.229.7307
Facsimile: 212.698.3599                Facsimile: 213.229.6307


*Attorneys for Plaintiff-Appellant NML Capital, Ltd.*

## CERTIFICATE OF SERVICE

I hereby certify that I caused the foregoing Appellant's Excerpts of Record to be electronically filed with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on May 26, 2015.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Date:  May 26, 2015

/s/ Matthew D. McGill
Matthew D. McGill
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC  20036-5306
Telephone: 202.955.8500
Facsimile: 202.467.0539

*Attorney for Plaintiff-Appellant NML Capital, Ltd.*